Attorney Grievance Commission of Maryland v. Mark T. Mixter, Misc. Docket AG No. 7, Sept. Term 2013, Opinion by Battaglia, J.

**ATTORNEY DISCIPLINE – SANCTIONS – DISBARMENT**

Disbarment is the appropriate sanction when an attorney makes copious knowing and intentional representations to courts, parties and witnesses. Such intentional misrepresentation demonstrates a lack of truthfulness and honesty which is prejudicial to the administration of justice and brings disrepute to the legal profession. MLRPC 3.1, 3.2, 3.3(a)(1) and (a)(4), 3.4(a), (c) and (d), 4.1(a)(1), 4.4(a) and 8.4(a), (c) and (d).

Circuit Court for Baltimore City, Maryland
Case No. 24-C-13-001939
Argued: November 6, 2014

IN THE COURT OF APPEALS
OF MARYLAND

Misc. Docket AG No. 7
September Term, 2013

ATTORNEY GRIEVANCE
COMMISSION OF MARYLAND

v.

MARK T. MIXTER

Barbera, C.J.
Harrell
Battaglia
Greene
Adkins
McDonald,

JJ.

Opinion by Battaglia, J.
Harrell, J., joins in judgment only.

Filed: February 2, 2015

# Table of Contents

I.   Introduction ...........................................................................................................1

II.  Judge Doory's Findings of Fact......................................................................26

III. Judge Doory's Conclusions of Law...............................................................52

IV.  Discussion ..............................................................................................................57

   A.  Mixter's Exceptions to Judge Doory's Findings of Fact....................................58

   B.  Mixter's Exceptions to Judge Doory's Conclusions of Law ..............................95

   C.  Sanction.................................................................................................................115

V.   Appendices ..........................................................................................................131

**I. Introduction**

Mark T. Mixter, Respondent, was admitted to the Bar of this Court on November 20, 1980. On March 26, 2013, the Attorney Grievance Commission, ("Petitioner" or "Bar Counsel"), acting pursuant to Maryland Rule 16-751(a),[1] filed a "Petition For Disciplinary or Remedial Action" against Respondent, alleging that Mixter engaged in a "pattern and practice that is outside the bounds of zealous representation, in direct defiance of the Discovery Guidelines of the State Bar, contrary to the Rules of Civil Procedure and in violation of the Maryland Lawyers' Rules of Professional Conduct." Violations were alleged of the following Maryland Lawyers' Rules of Professional Conduct ("Rule"): 3.1 (Meritorious Claims and Contentions),[2] 3.2 (Expediting litigation),[3] 3.3 (Candor Toward

---

[1] Maryland Rule 16-751(a) provides, in relevant part:

> (a) **Commencement of disciplinary or remedial action.** (1) Upon approval or direction of Commission. Upon approval or direction of the Commission, Bar Counsel shall file a Petition for Disciplinary or Remedial Action in the Court of Appeals.

[2] Rule 3.1 provides:

> A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis for doing so that is not frivolous, which includes, for example, a good faith argument for an extension, modification or reversal of existing law. A lawyer may nevertheless so defend the proceeding as to require that every element of the moving party's case be established.

[3] Rule 3.2 provides:

> A lawyer shall make reasonable efforts to expedite litigation consistent with the interests of the client.

the Tribunal),[4] 3.4 (Fairness to Opposing Party and Counsel),[5]

---

[4] Rule 3.3 provides:

(a) A lawyer shall not knowingly:

(1) make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer;

(2) fail to disclose a material fact to a tribunal when disclosure is necessary to avoid assisting a criminal or fraudulent act by the client;

(3) fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel; or

(4) offer evidence that the lawyer knows to be false. If a lawyer has offered material evidence and comes to know of its falsity, the lawyer shall take reasonable remedial measures.

(b) The duties stated in paragraph (a) continue to the conclusion of the proceeding, and apply even if compliance requires disclosure of information otherwise protected by Rule 1.6.

(c) A lawyer may refuse to offer evidence that the lawyer reasonably believes is false.

(d) In an ex parte proceeding, a lawyer shall inform the tribunal of all material facts known to the lawyer which will enable the tribunal to make an informed decision, whether or not the facts are adverse.

(e) Notwithstanding paragraphs (a) through (d), a lawyer for an accused in a criminal case need not disclose that the accused intends to testify falsely or has testified falsely if the lawyer reasonably believes that the disclosure would jeopardize any constitutional right of the accused.

[5] Rule 3.4 provides:

A lawyer shall not:

(a) unlawfully obstruct another party's access to evidence or unlawfully alter, destroy or conceal a document or other material having potential evidentiary value. A lawyer shall not counsel or assist another person to do any such act;

(b) falsify evidence, counsel or assist a witness to testify falsely, or offer an inducement to a witness that is prohibited by law;

(c) knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists;

(d) in pretrial procedure, make a frivolous discovery request or fail to make reasonably diligent effort to comply with a legally proper discovery request by an opposing party;

(continued . . . )

4.1 (Truthfulness in Statements to Others),[6] 4.4 (Respect for Rights of Third Persons),[7]

---

( . . . continued)

(e) in trial, allude to any matter that the lawyer does not reasonably believe is relevant or that will not be supported by admissible evidence, assert personal knowledge of facts in issue except when testifying as a witness, or state a personal opinion as to the justness of a cause, the credibility of a witness, the culpability of a civil litigant or the guilt or innocence of an accused; or

(f) request a person other than a client to refrain from voluntarily giving relevant information to another party unless: (1) the person is a relative or an employee or other agent of a client; and (2) the lawyer reasonably believes that the person's interests will not be adversely affected by refraining from giving such information.

[6] Rule 4.1 provides:

(a) In the course of representing a client a lawyer shall not knowingly: (1) make a false statement of material fact or law to a third person; or (2) fail to disclose a material fact when disclosure is necessary to avoid assisting a criminal or fraudulent act by a client.

(b) The duties stated in this Rule apply even if compliance requires disclosure of information otherwise protected by Rule 1.6.

[7] Rule 4.4 provides:

(a) In representing a client, a lawyer shall not use means that have no substantial purpose other than to embarrass, delay, or burden a third person, or use methods of obtaining evidence that the lawyer knows violate the legal rights of such a person.

(b) In communicating with third persons, a lawyer representing a client in a matter shall not seek information relating to the matter that the lawyer knows or reasonably should know is protected from disclosure by statute or by an established evidentiary privilege, unless the protection has been waived. The lawyer who receives information that is protected from disclosure shall (1) terminate the communication immediately and (2) give notice of the disclosure to any tribunal in which the matter is pending and to the person entitled to enforce the protection against disclosure.

5.3 (Responsibilities Regarding Nonlawyer Assistants),[8]

---

[8] Rule 5.3 provides:

> With respect to a nonlawyer employed or retained by or associated with a lawyer:
>
> (a) a partner, and a lawyer who individually or together with other lawyers possesses comparable managerial authority in a law firm shall make reasonable efforts to ensure that the firm has in effect measures giving reasonable assurance that the person's conduct is compatible with the professional obligations of the lawyer;
>
> (b) a lawyer having direct supervisory authority over the nonlawyer shall make reasonable efforts to ensure that the person's conduct is compatible with the professional obligations of the lawyer;
>
> (c) a lawyer shall be responsible for conduct of such a person that would be a violation of the Maryland Lawyers' Rules of Professional Conduct if engaged in by a lawyer if: (1) the lawyer orders or, with the knowledge of the specific conduct, ratifies the conduct involved; or (2) the lawyer is a partner or has comparable managerial authority in the law firm in which the person is employed, or has direct supervisory authority over the person, and knows of the conduct at a time when its consequences can be avoided or mitigated but fails to take reasonable remedial action; and
>
> (d) a lawyer who employs or retains the services of a nonlawyer who (i) was formerly admitted to the practice of law in any jurisdiction and (ii) has been and remains disbarred, suspended, or placed on inactive status because of incapacity shall comply with the following requirements:
>
> (1) all law-related activities of the formerly admitted lawyer shall be (A) performed from an office that is staffed on a full-time basis by a supervising lawyer and (B) conducted under the direct supervision of the supervising lawyer, who shall be responsible for ensuring that the formerly admitted lawyer complies with the requirements of this Rule.
>
> (2) the lawyer shall take reasonable steps to ensure that the formerly admitted lawyer does not:
>
> (A) represent himself or herself to be a lawyer;
>
> (B) render legal consultation or advice to a client or prospective client;
>
> (C) appear on behalf of or represent a client in any judicial, administrative, legislative, or alternative dispute resolution proceeding;
>
> (D) appear on behalf of or represent a client at a deposition or in any other discovery matter;
>
> (E) negotiate or transact any matter on behalf of a client with third parties;
>
> (continued . . . )

8.1    (Bar    Admission    and    Disciplinary    Matters)[9]    and

---

( . . . continued)

(F) receive funds from or on behalf of a client or disperse funds to or on behalf of a client; or

(G) perform any law-related activity for (i) a law firm or lawyer with whom the formerly admitted lawyer was associated when the acts that resulted in the disbarment or suspension occurred or (ii) any client who was previously represented by the formerly admitted lawyer.

(3) the lawyer, the supervising lawyer, and the formerly admitted lawyer shall file jointly with Bar Counsel (A) a notice of employment identifying the supervising lawyer and the formerly admitted lawyer and listing each jurisdiction in which the formerly admitted lawyer has been disbarred, suspended, or placed on inactive status because of incapacity; and (B) a copy of an executed written agreement between the lawyer, the supervising lawyer, and the formerly admitted lawyer that sets forth the duties of the formerly admitted lawyer and includes an undertaking to comply with requests by Bar Counsel for proof of compliance with the terms of the agreement and this Rule. As to a formerly admitted lawyer employed as of July 1, 2006, the notice and agreement shall be filed no later than September 1, 2006. As to a formerly admitted lawyer hired after July 1, 2006, the notice and agreement shall be filed within 30 days after commencement of the employment. Immediately upon the termination of the employment of the formerly admitted lawyer, the lawyer and the supervising lawyer shall file with Bar Counsel a notice of the termination.

[9] Rule 8.1 provides:

An applicant for admission or reinstatement to the bar, or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not:

(a) knowingly make a false statement of material fact; or

(b) fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this Rule does not require disclosure of information otherwise protected by Rule 1.6.

8.4 (Misconduct).[10]

In an Order dated March 28, 2013, we referred the matter for a hearing to Judge Melissa Phinn of the Circuit Court for Baltimore City, pursuant to Maryland Rule 16-757.[11]

---

[10] Rule 8.4 provides:
> It is professional misconduct for a lawyer to:
> (a) violate or attempt to violate the Maryland Lawyers' Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;
> (b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;
> (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;
> (d) engage in conduct that is prejudicial to the administration of justice;
> (e) knowingly manifest by words or conduct when acting in a professional capacity bias or prejudice based upon race, sex, religion, national origin, disability, age, sexual orientation or socioeconomic status when such action is prejudicial to the administration of justice, provided, however, that legitimate advocacy is not a violation of this paragraph;
> (f) state or imply an ability to influence improperly a government agency or official or to achieve results by means that violate the Maryland Lawyers' Rules of Professional Conduct or other law; or
> (g) knowingly assist a judge or judicial officer in conduct that is a violation of applicable rules of judicial conduct or other law.

[11] Maryland Rule 16-757 provides:
> (a) **Generally.** The hearing of a disciplinary or remedial action is governed by the rules of evidence and procedure applicable to a court trial in a civil action tried in a circuit court. Unless extended by the Court of Appeals, the hearing shall be completed within 120 days after service on the respondent of the order designating a judge. Before the conclusion of the hearing, the judge may permit any complainant to testify, subject to cross-examination, regarding the effect of the alleged misconduct. A respondent attorney may offer, or the judge may inquire regarding, evidence otherwise admissible of any remedial action undertaken relevant to the allegations. Bar Counsel may respond to any evidence of remedial action.

(continued . . . )

On August 22, 2013, at the request of Judge Marcella Holland, Circuit Administrative Judge for the Eighth Judicial Circuit, this case was reassigned to Judge Timothy J. Doory.

On May 31, 2013, a copy of the Petition, our Order and a writ of summons was served on Mixter's counsel to which Mixter filed an Answer in which he denied all of Bar Counsel's allegations. A five-day hearing was held before Judge Doory, during which voluminous exhibits from both parties were admitted, the majority of which included Mixter's files from the various cases in which his actions occurred, as well as testimony from expert and lay witnesses; the latter included character witnesses called by Mixter. Judge Doory, on June 9, 2014, issued Findings of Fact and Conclusions of Law in which

---

( . . . continued)

(b) **Burdens of proof.** The petitioner has the burden of proving the averments of the petition by clear and convincing evidence. A respondent who asserts an affirmative defense or a matter of mitigation or extenuation has the burden of proving the defense or matter by a preponderance of the evidence.

(c) **Findings and conclusions.** The judge shall prepare and file or dictate into the record a statement of the judge's findings of fact, including findings as to any evidence regarding remedial action, and conclusions of law. If dictated into the record, the statement shall be promptly transcribed. Unless the time is extended by the Court of Appeals, the written or transcribed statement shall be filed with the clerk responsible for the record no later than 45 days after the conclusion of the hearing. The clerk shall mail a copy of the statement to each party.

(d) **Transcript.** The petitioner shall cause a transcript of the hearing to be prepared and included in the record.

(e) **Transmittal of record.** Unless a different time is ordered by the Court of Appeals, the clerk shall transmit the record to the Court of Appeals within 15 days after the statement of findings and conclusions is filed.

he found, by clear and convincing evidence, that Mixter had violated Rules 3.1, 3.2, 3.3, 3.4(a), (c), (d) and (f),[12] 4.1(a), 4.4(a) and 8.4(a), (c) and (d), but not Rules 5.3(c) and 8.1.[13]

For an understanding of the bases of Judge Doory's findings that Mixter had filed various frivolous motions and made misrepresentations in connection with unenforceable subpoenas, as well as that Mixter made misrepresentations to various courts in relation to Maryland Rule 2-431[14] certificates, we provide an overview of the applicable Maryland Rules.

Subpoenas, according to Maryland Rule 2-510(a),[15] may be issued "to compel a party over whom the court has acquired jurisdiction to attend, give testimony, and produce

---

[12] In his Findings of Fact and Conclusions of Law, Judge Doory identified that Respondent had violated "Rule 3.4(e)", although the language of 3.4(f) was quoted. Rule 3.4(f) is the applicable Rule.

[13] Mixter testified "in trial and at deposition that he takes complete responsibility for any and all product by his office"; as a result, Judge Doory concluded that Mixter had not violated Rule 5.3. Judge Doory concluded that Mixter had not violated Rule 8.1 in "view of extensive records and documents provided by Respondent and counsel". Petitioner has not excepted to these conclusions, so we will not address them further.

[14] Maryland Rule 2-431 provides:
> A dispute pertaining to discovery need not be considered by the court unless the attorney seeking action by the court has filed a certificate describing the good faith attempts to discuss with the opposing attorney the resolution of the dispute and certifying that they are unable to reach agreement on the disputed issues. The certificate shall include the date, time, and circumstances of each discussion or attempted discussion.

[15] Maryland Rule 2-510 provides, in pertinent part:
> (a) **Use.** A subpoena is required to compel the person to whom it is directed to attend, give testimony, and produce designated documents, electronically

(continued . . . )

8

and permit inspection [and] copying . . . of designated documents . . . or tangible things at

a deposition," the service of which is "permitted by Rule 2-121(a)(3)".[16]  Maryland Rule

( . . . continued)

> stored information, or tangible things at a court proceeding, including proceedings before a master, auditor, or examiner. A subpoena is also required to compel a nonparty and may be used to compel a party over whom the court has acquired jurisdiction to attend, give testimony, and produce and permit inspection, copying, testing, or sampling of designated documents, electronically stored information, or tangible things at a deposition. A subpoena shall not be used for any other purpose. If the court, on motion of a party alleging a violation of this section or on its own initiative, after affording the alleged violator a hearing, finds that a party or attorney used or attempted to use a subpoena for a purpose other than a purpose allowed under this section, the court may impose an appropriate sanction upon the party or attorney, including an award of a reasonable attorney's fee and costs, the exclusion of evidence obtained by the subpoena, and reimbursement of any person inconvenienced for time and expenses incurred.
>
> * * *
>
> (d) **Service.** A subpoena shall be served by delivering a copy to the person named or to an agent authorized by appointment or by law to receive service for the person named or as permitted by Rule 2-121 (a)(3). Service of a subpoena upon a party represented by an attorney may be made by service upon the attorney under Rule 1-321 (a). A subpoena may be served by a sheriff of any county or by any person who is not a party and who is not less than 18 years of age. Unless impracticable, a party shall make a good faith effort to cause a trial or hearing subpoena to be served at least five days before the trial or hearing.

[16] Maryland Rule 2-121(a) provides, in pertinent part:

> (a) **Generally.** Service of process may be made within this State or, when authorized by the law of this State, outside of this State . . . (3) by mailing to the person to be served a copy of the summons, complaint, and all other papers filed with it by certified mail requesting: "Restricted Delivery—show to whom, date, address of delivery." Service by certified mail under this Rule is complete upon delivery. Service outside of the State may also be made in the manner prescribed by the court or prescribed by the foreign jurisdiction if reasonably calculated to give actual notice.

2-121(a)(3) provides that service may be accomplished by mailing by certified mail, restricted delivery, and that service "by certified mail under this Rule is complete upon delivery." "If service is by certified mail, the proof shall include the original return receipt." Maryland Rule 2-126(a)(3). When a deposition subpoena is issued which calls for the production of documents, Maryland Rule 2-412(c) provides that, "the designation of the materials to be produced as set forth in the subpoena shall be attached to or included in the notice and the subpoena shall be served at least 30 days before the date of the deposition."[17]

Furthermore, according to Maryland Rule 2-413(a)(1),[18] a non-party witness only may be required to attend a deposition "in the county in which the person resides or is

---

[17] Maryland Rule 2-412 provides, in relevant part:
> (c) **Documents or other tangible things.** The notice to a party deponent may contain or be accompanied by a request for the production of documents or other tangible things at the taking of the deposition, in which case the provisions of Rule 2-422 shall apply to the request. A non-party deponent may be required to produce documents or other tangible things at the taking of the deposition by a subpoena. If a subpoena requiring the production of documents or other tangible things at the taking of the deposition is to be served on a party or nonparty deponent, the designation of the materials to be produced as set forth in the subpoena shall be attached to or included in the notice and the subpoena shall be served at least 30 days before the date of the deposition.

[18] Maryland Rule 2-413 provides:
> (a) **Nonparty**. (1) In this State. A resident of this State who is not a party may be required to attend a deposition in this State only in the county in which the person resides or is employed or engaged in business, or at any other convenient place fixed by order of court. A nonresident who is not a party may be required to attend a deposition in this State only in the county in which the nonresident is served with a subpoena or within 40 miles from

(continued . . . )

10

employed or engaged in business, or at any other convenient place fixed by order of court."

A party to an action, on the other hand, "may be required to attend a deposition wherever a nonparty could be required to attend or in the county in which the action is pending." Maryland Rule 2-413(b).

Because "the subpoena powers of the State of Maryland stop at the state line", (*Attorney Grievance v. Gallagher*, 371 Md. 673, 702, 810 A.2d 996, 1013 (2002), quoting *Bartell v. Bartell*, 278 Md. 12, 19, 357 A.2d 343, 347 (1976)), when the deposition of, and/or documents from, a non-party outside of Maryland is sought, the dictates "of the place where the deposition is held" must be followed. Maryland Rule 2-413(a)(2). The intersection of Maryland Rules 2-413(a)(1), (a)(2) and (b) has been described as:

> [Rule 2-413] is conceptually a venue rule providing for the place where a deposition is taken. It is limited by the judicial power of the courts to compel appearance or to sanction nonappearance. As a practical matter, a nonresident nonparty may be compelled to attend a deposition only to the extent he or she is subject to a body attachment, *i.e.*, is present in the state. *See* Rule 2-510(i). A party's deposition may be noticed for a location in the county where the action is pending, whether or not the party is a resident of that county. This is because the party has been subjected to the judicial power of the court when initially served with process in the action under Rule 2-121. The party who is a resident of the State may be deposed in the county in which the party resides or works as well.
> With respect to a nonparty, there are fewer appropriate locations. The nonparty who is a resident may be deposed in the county where he or she lives or works. A nonresident, on the other hand, cannot be forced to give a

(continued . . . )

the place of service, or at any other convenient place fixed by order of court.
(2) Out of State. A person who is not a party may be required to attend a deposition outside of this State in accordance with the law of the place where the deposition is held.
(b) **Party**. A party may be required to attend a deposition wherever a nonparty could be required to attend or in the county in which the action is pending.

deposition in this State at all unless served with a subpoena while in *this* State. If the nonresdience is served in this State, the deposition may be taken in the county of service or within 40 miles of the place of service. If not served with a subpoena while in this State, the nonresident will have to be deposed in his or her own state under its rules.

Neimeyer & Schuett, Rule 2-413, Maryland Rules Commentary 297 (3d ed. 2003, 2013 Supp.)

Subpoenas were issued, by Mixter, to non-party witnesses in various of the following states during the years specified, according to Judge Doory's findings of fact: Arizona (2012),[19] Florida (2008, 2009, 2011),[20] Iowa (2009, 2010),[21]

---

[19] In 2012, Rule 30(h) of the Arizona Rules of Civil Procedure provided that when "an action is pending in a jurisdiction foreign to the State of Arizona and a party or a party's attorney wishes to take a deposition in this state, it may be done and a subpoena or subpoena duces tecum may issue therefore from the Superior Court of this state."

[20] In Florida, for all relevant years, if a party to a pending action in a foreign jurisdiction sought the deposition of an individual within Florida, that party was required to obtain "a mandate, writ or commission" from the court in which the action was proceeding. Fla. Stat. Ann. § 92.251 (2014). Section 92.251 of the Florida Statutes has not been amended over the time period of the instant action.

[21] In Iowa, during the time period at issue, subpoenas from other states must have been issued and served pursuant to the requirements of the Iowa district courts. I.C.A. § 622.84 (2009, 2010). Service of a subpoena in Iowa, therefore, required a subpoena to be issued from the clerk of the Iowa District Court. Iowa R. Civ. P. 1.1701(2) (2009, 2010).

North Carolina (2010),[22] Pennsylvania (2008, 2009, 2010),[23] South Carolina (2009, 2010),[24]

---

[22] In 2010, Rule 25 of the North Carolina Rules of Civil Procedure required that, "A person desiring to take depositions in this State to be used in proceedings pending in the courts of any other state or country may present to a judge of the superior or district court a commission, order, notice, consent, or other authority under which the deposition is to be taken, whereupon it shall be the duty of the judge to issue the necessary subpoenas". N.C. Gen. Stat. § 1A-1, Rule 28 (2010).

[23] During the relevant time frame, Section 5326(a) of Title 42 of the Pennsylvania Consolidated Statutes provided that:

> A court of record of this Commonwealth may order a person who is domiciled or is found within this Commonwealth to give his testimony or statement or to produce documents or other things for use in a matter pending in a tribunal outside this Commonwealth. The order may be made upon the application of any interested person or in response to a letter rogatory and may prescribe the practice and procedure, which may be wholly or in part the practice and procedure of the tribunal outside this Commonwealth, for taking the testimony or statement or producing the documents or other things.

Since 2011, for a litigant outside of Pennsylvania to obtain a deposition from a party within Pennsylvania, "a party must submit a foreign subpoena to [the chief clerk] in the jurisdiction in which the person who is the subject of the order resides, is employed or regularly transacts business in person." 42 Pa. Cons. Stat. § 5335(a) (2011).

[24] In South Carolina, prior to April 1, 2010:

> When the deposition of a witness or production of documents or other things, is to be done in this State for use in an out-of-state action or proceeding, an attorney, licensed to practice law in this State, or the clerk of court, may issue a subpoena, including a subpoena duces tecum, compelling the attendance of such witness at that deposition, or the production of documents or other things pursuant to this rule and subject to all of the requirements of Rule 45 and Rule 11, only after payment of the filing fee set by Administrative Rule, and after filing with the Clerk of Court:
>
> (A) A certified copy of any mandate, writ, or commission issued by a court of record in any other state, territory, district, or foreign jurisdiction directing that such deposition be taken or documents or other things produced; or

(continued . . . )

13

Texas (2012),[25] Virginia (2007, 2009, 2010, 2011)[26] and Washington D.C. (2007, 2008, 2009, 2010, 2012).[27]  Several states have in the past required, or continue to require, the issuance of a "commission" to take a deposition pursuant to litigation in another state.  A "commission" is a court order that authorizes the judiciary of another state to issue a

---

(continued . . . )
       (B) a certified copy of a notice or written agreement filed in a court of
    record in any other state, territory, district, or foreign jurisdiction directing
    that such deposition be taken or documents or other things produced.
S.C. R. Civ. P. 28(d)(1) (2010).  On April 1, 2010, new legislation was enacted, which requires only that "a party must submit a foreign subpoena to the clerk of court of the county in which discovery is sought to be conducted in this State."  S.C. Code Ann. § 15-47-120(A) (2010).

[25] To obtain a deposition for a foreign cause of action in Texas, Section 20.002 of the Texas Civil Practice and Remedies Code requires that the court of record in the foreign jurisdiction issue "a mandate, writ, or commission" commanding the witness's testimony in Texas, before following additional procedures.

[26] In Virginia, prior to July 1, 2009, "a mandate, writ or commission" had to have been issued by the court of record in the foreign jurisdiction commanding the deposition.  Va. Code Ann. § 8.01-411 (2009).  Since July 1, 2009, Section 8.01-412.10(A) of the Civil Remedies and Procedure Title of the Virginia Code requires, to request issuance of a Virginia subpoena for foreign litigation, submission "to the clerk of court in the circuit in which discovery is sought to be conducted in the Commonwealth (i) a foreign subpoena and (ii) a written statement that the law of the foreign jurisdiction grants reciprocal privileges to citizens of the Commonwealth".

[27] In Washington D.C., prior to May 22, 2010, a commission as well as notice of the deposition sent to the deponent had to have been issued from the court outside of the District of Columbia, along with leave of a judge of the United States District Court or of the Superior Court of the District of Columbia, in order to obtain a deposition from a witness within the District.  D.C. Code § 14-103.  Since May 22, 2010, the statute requires that "the party seeking that testimony may file with [the Superior] Court a certified copy of the commission or notice." D.C. Super. Ct. R. Civ. P. 28-I(b).  The Clerk of the Superior Court will, with the "approval by the judge in chambers of the commission or notice . . . issue a subpoena compelling the designated witness to appear for deposition". *Id.*

subpoena to the witness who is located in that state. *See Forensic Advisors, Inc. v. Matrixx Initiatives, Inc.*, 170 Md. App. 520, 525, 907 A.2d 855, 857 (2006).

Securing medical records of an adverse party requires observance of one of a variety of additional protocols as provided by Section 4-306 of the Health-General Article of the Maryland Code, four of which are relevant.[28] First, the party requesting the records may submit written assurance to the health care provider that "a person in interest has not objected to the disclosure of the designated medical records within 30 days after the notice [that medical records had been requested] was sent" to the patient.[29] Section 4-306(b)(6)(i)(1)(B). In the event that there had been an objection to disclosure of the health

---

[28] Section 4-306(b) of the Health-General Article of the Maryland Code provides, in relevant part:

> (b) *Permitted disclosures.* – A health care provider shall disclose a medical record without the authorization of a person in interest:
>
> * * *
>
> (6) Subject to the additional limitations for a medical record developed primarily in connection with the provision of mental health services in § 4-307 of this subtitle and except as otherwise provided in items (2), (7), and (8) of this subsection, in accordance with compulsory process, if the health care provider receives:
>
> > (i) 1. A written assurance from the party or the attorney representing the party seeking the medical records that: . . . B. In all other proceedings, a person in interest has not objected to the disclosure of the designated medical records within 30 days after the notice was sent; or C. The objections of a person in interest have been resolved and the request for disclosure is in accordance with the resolution;
> > 2. Proof that service of the subpoena, summons, warrant, or court order has been waived by the court for good cause; or
> > 3. A copy of an order entered by a court expressly authorizing disclosure of the designated medical records;

[29] Section 4-306(b)(6)(iii) of the Health-General Article of the Maryland Code contains a form notice to be sent to the individual who is the subject of the requested records.

15

care records, the party seeking disclosure could provide written certification to the health care provider that the objection had been resolved and that the new request complies with the terms of the resolution to the objection. Section 4-306(b)(6)(i)(1)(C). The health care service provider also could be afforded proof that the court in which the litigation is pending has waived service of a subpoena for the production of documents to the provider for good cause. Section 4-306(b)(6)(i)(2). The fourth possibility is to submit to the health care provider a copy of a court order expressly authorizing disclosure of the designated medical records. Section 4-306(b)(6)(i)(3).

Maryland Rule 2-431 also creates a "certificate requirement" that is a prerequisite to the trial court's resolution of a discovery dispute. The Rule provides that a court need not consider a discovery dispute, "unless the attorney seeking action by the court has filed a certificate describing the good faith attempts" to resolve the dispute with opposing counsel. The attorney must certify that he or she had been unable to reach an agreement with the opposition on the disputed issues and must "include the date, time, and circumstances of each discussion or attempted discussion."

In *Rodriguez v. Clarke*, 400 Md. 39, 63, 926 A.2d 736, 750 (2007), we examined the history and purpose of the "certificate requirement" contained in Maryland Rule 2-431 and emphasized that making "sincere attempts" to resolve discovery disputes is "integral to the entire discovery process":

> The import of Maryland Rule 2-431's good faith requirement is highlighted by its history. Its language derives from former Rule 417(g), **"Discovery by Interrogatories to Party ... Gen'l,"** which provided:
> > No dispute relating to discovery by way of interrogatory need be heard by the court unless counsel requesting the hearing

shall first *certify to the court in writing that after personal consultation and sincere attempts to resolve the differences with opposing counsel*, they have been unable to reach agreement on the disputed issues. No such efforts or certification shall be required with respect to any other form of discovery procedure provided for in Chapter 400 of these Rules.

Maryland Rule 417(g) (adopted Dec. 17, 1975; effective Jan. 1, 1976) (emphasis added). In 1980, this Court, recognizing that the "sincere attempts" provision of Rule 417(g) was integral to the entire discovery process, directed the Rules Committee to relocate the "sincere attempts" certificate requirement to Rule 422, **"Failure to Make Discovery-Sanctions,"** thereby making it applicable to the entire discovery process and to require that the certificate also set forth the date, time and place of each attempt. *See* Minutes of Rules Committee, November 18-19, 1977, and June 20-21, 1980. This Court subsequently adopted subsection (d) of Rule 422, providing that:

> No dispute relating to discovery need be heard by the court unless counsel requesting the hearing shall first certify to the court in writing that after personal consultation and sincere attempts to resolve the differences with opposing counsel they have been unable to reach agreement on the disputed issues. This statement shall recite, in addition, the date, time, and place of each consultation, and the names of all persons participating therein.

Maryland Rule 422(d) (adopted Oct. 1, 1980: effective Jan. 1, 1981).

During the revisory process of the Maryland Rules undertaken in the early 1980's, the subcommittee tasked with recodifying Chapter 400 of the Maryland Rules submitted numerous revisions of Rule 422, the first of which modified the "personal consultation" and "sincere attempts" language and provided:

> No dispute pertaining to discovery need be considered by the court unless counsel seeking action by the court shall first file a certificate describing the *good faith attempts to communicate with opposing counsel for the purpose of resolving* the dispute and certifying that they are unable to reach agreement on the disputed issues. The certificate shall include the date, time, and place of each *attempt to communicate* with opposing counsel and of each communication with opposing counsel.

Maryland Rules Committee, Notes of Style Subcommittee (Nov. 3, 1981) (emphasis added). The rule was later modified so that the "good faith attempts to *communicate*" became a requirement to make "good faith attempts to *discuss*," and "the date, time and place of each *attempt to*

17

*communicate*" was changed to require the setting forth "the date, time and circumstances of each *discussion or attempted discussion.*" Maryland Rules Committee, Notes of Style Subcommittee (April 28, 1983). This Court adopted the Committee's second draft recommendations on April 6, 1984, and the new Rule 2-431 became effective July 1, 1984.

*Id.* at 63-65, 926 A.2d at 750-51.

Discovery disputes arise, generally, when parties cannot agree upon the propriety of a particular disclosure, request or response; although ignoring discovery requests altogether also generates issues:

> Two general sorts of discovery disputes arise in the pretrial discovery process. The first is when discovery has been requested and the opponent responds but refuses to provide discovery at all or to the extent requested. Often, such a dispute stems from a good faith difference of opinion as to whether the requested discovery is appropriate. The second situation, lamentably, is when the party from whom discovery has been sought has simply ignored the discovery request or intentionally refused even to respond to it.

John A. Lynch, Jr. & Richard W. Bourne, Modern Maryland Civil Procedure 7-127 (2d ed. 2004, 2014 supp.).[30] Maryland Rules

---

[30] Discovery disputes, however, have become symptomatic of a decline in professionalism. As the Maryland Judicial Task Force on Professionalism noted in its Report and Recommendations:

> In many jurisdictions, the group heard from lawyers with as many as fifty years experience at the bar. Without exception, these senior practitioners opined that professionalism has declined over the years. The decline is marked by rancorous discovery disputes; a loss of trust between lawyers (resulting in an increase in "defensive practices," for instance, the perceived need to memorialize every discussion with a confirmatory letter); a breakdown of the traditional mentoring of new lawyers; an increase in the unauthorized practice of law; a lack of civility in and out of the courtroom; the failure of courtroom attorneys to treat witnesses and each other with respect; and an increase in lawyer advertising.

(continued . . . )

Judge Gorsuch of the United States Court of Appeals for the Tenth Circuit recently echoed the sentiments of the Maryland Judicial Task Force, observing that trial judges regularly "live and breathe [discovery] problems; they have a strong situation sense about what is and isn't acceptable conduct", and when discovery disputes evolve into discovery abuses, the merits of the case are forgotten and the time and resources of the parties and attorneys are needlessly wasted:

> Back in 1937 the drafters of the Federal Rules promised that their project would help ensure "the just, speedy, and inexpensive determination of every action." Fed.R.Civ.P. 1. To date, that promise remains elusive, more aspirational than descriptive. But it is surely the case that if court orders can be repeatedly flouted we will only retreat further from the goal. When a party feels at liberty to disobey not just a discovery request but two court orders compelling production of the same material in its control, weeks or months (as in this case) pass without progress in the litigation. Hours, days, weeks or lawyers' time are consumed at great expense. Focus shifts from the merits to the collateral and needless. This is not speedy, inexpensive, or just. Just the opposite. And no doubt tolerating such behavior would encourage only more of it. But there is such thing as discovery karma. Discovery misconduct often may be seen as tactically advantageous at first. But just as our good and bad deeds eventually tend to catch up with us, so do discovery machinations.

*Lee v. Max Int'l, LLC*, 638 F.3d 1318, 1320, 1321 (10th Cir. 2011). Maryland Rule 1-201(a) contains an aspirational purpose as well when it states, "These rules shall be construed to secure simplicity in procedure, fairness in administration, and elimination of unjustifiable expense and delay."

2-403,[31] 2-415(j),[32]

---

[31] Maryland Rule 2-403 provides:

(a) **Motion.** On motion of a party, a person from whom discovery is sought, or a person named or depicted in an item sought to be discovered, and for good cause shown, the court may enter any order that justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: (1) that the discovery not be had, (2) that the discovery not be had until other designated discovery has been completed, a pretrial conference has taken place, or some other event or proceeding has occurred, (3) that the discovery may be had only on specified terms and conditions, including an allocation of the expenses or a designation of the time or place, (4) that the discovery may be had only by a method of discovery other than that selected by the party seeking discovery, (5) that certain matters not be inquired into or that the scope of the discovery be limited to certain matters, (6) that discovery be conducted with no one present except persons designated by the court, (7) that a deposition, after being sealed, be opened only by order of the court, (8) that a trade secret or other confidential research, development, or commercial information not be disclosed or be disclosed only in a designated way, (9) that the parties simultaneously file specified documents or information enclosed in sealed envelopes to be opened as directed by the court.

(b) **Order.** If the motion for a protective order is denied in whole or in part, the court may, on such terms and conditions as are just, order that any party or person provide or permit discovery.

[32] Maryland Rule 2-415(j) provides:

(j) **Motions to suppress.** An objection to the manner in which testimony is transcribed, videotaped, or audiotaped, or to the manner in which a transcript is prepared, signed, certified, sealed, endorsed, transmitted, filed, or otherwise dealt with by the officer is waived unless a motion to suppress all or part of the deposition is made promptly after the defect is or with due diligence might have been ascertained. In ruling on a motion to suppress, the court may grant leave to any party to depose the deponent further on terms and conditions the court deems appropriate.

2-424(c),[33] 2-432(b),[34]

---

[33] Maryland Rule 2-424(c) provides:

(c) **Determination of sufficiency of response.** The party who has requested the admission may file a motion challenging the timeliness of the response or the sufficiency of any answer or objection. A motion challenging the sufficiency of an answer or objection shall set forth (1) the request, (2) the answer or objection, and (3) the reasons why the answer or objection is insufficient. Unless the court determines that an objection is justified, it shall order that an answer be served. If the court determines that an answer does not comply with the requirements of this Rule, it may order either that the matter is admitted or that an amended answer be served. If the court determines that the response was served late, it may order the response stricken. The court may, in place of these orders, determine that final disposition of the request be made at a pretrial conference or at a designated time prior to trial.

[34] Maryland Rule 2-432(b) provides, in relevant part:

(b) **For order compelling discovery.** (1) When Available. A discovering party, upon reasonable notice to other parties and all persons affected, may move for an order compelling discovery if

(A) there is a failure of discovery as described in section (a) of this Rule,

(B) a deponent fails to answer a question asked in an oral or written deposition,

(C) a corporation or other entity fails to make a designation under Rule 2-412 (d),

(D) a party fails to answer an interrogatory submitted under Rule 2-421,

(E) a party fails to comply with a request for production or inspection under Rule 2-422,

(F) a party fails to supplement a response under Rule 2-401(e), or

(G) a nonparty deponent fails to produce tangible evidence without having filed written objection under Rule 2-510 (f).

2-433(a),[35] 2-434[36] and

---

[35] Maryland Rule 2-433(a) provides:

(a) **For certain failures of discovery**. Upon a motion filed under Rule 2-432 (a), the court, if it finds a failure of discovery, may enter such orders in regard to the failure as are just, including one or more of the following:

(1) An order that the matters sought to be discovered, or any other designated facts shall be taken to be established for the purpose of the action in accordance with the claim of the party obtaining the order;

(2) An order refusing to allow the failing party to support or oppose designated claims or defenses, or prohibiting that party from introducing designated matters in evidence; or

(3) An order striking out pleadings or parts thereof, or staying further proceeding until the discovery is provided, or dismissing the action or any part thereof, or entering a judgment by default that includes a determination as to liability and all relief sought by the moving party against the failing party if the court is satisfied that it has personal jurisdiction over that party. If, in order to enable the court to enter default judgment, it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence or to make an investigation of any matter, the court may rely on affidavits, conduct hearings or order references as appropriate, and, if requested, shall preserve to the plaintiff the right of trial by jury.

Instead of any of those orders or in addition thereto, the court, after opportunity for hearing, shall require the failing party or the attorney advising the failure to act or both of them to pay the reasonable costs and expenses, including attorney's fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of costs and expenses unjust.

[36] Maryland Rule 2-434 provides:

(a) **Failure of party giving notice to attend.** If the party giving notice of the taking of a deposition on oral examination fails to attend and proceed and another party attends pursuant to the notice, the court may order the party giving the notice to pay to the other party the reasonable expenses incurred in attending, including reasonable attorney's fees.

(b) **Failure to subpoena witness.** If the party giving notice of the taking of a deposition of a witness fails to serve a subpoena upon the witness who for

(continued . . . )

2-510(f)[37] provide means through which court involvement can be sought to determine whether there had been proper discovery requests or objections. *Id.*

Against this backdrop, this case arose out of "the Respondent's conduct in twenty-two (22) separate cases" that "span a period of approximately seven years and involve different parties, different opposing counsel, different judges and different courts", according to Judge Doory's findings of fact, as listed in Appendix 1.[38] In sixteen of the

---

(continued . . . )
> that reason does not attend and another party attends pursuant to the notice, the court may order the party giving the notice to pay to the other party the reasonable expenses incurred in attending, including reasonable attorney's fees.

[37] Maryland Rule 2-510(f) provides:
> (f) **Objection to subpoena for deposition.** A person served with a subpoena to attend a deposition may seek a protective order pursuant to Rule 2-403. If the subpoena also commands the production of documents, electronically stored information, or tangible things at the deposition, the person served or a person named or depicted in an item specified in the subpoena may seek a protective order pursuant to Rule 2-403 or may file, within ten days after service of the subpoena, an objection to production of any or all of the designated materials. The objection shall be in writing and shall state the reasons for the objection. If an objection is filed, the party serving the subpoena is not entitled to production of the materials except pursuant to an order of the court from which the subpoena was issued. At any time before or within 15 days after completion of the deposition and upon notice to the deponent, the party serving the subpoena may move for an order to compel the production.
>
> A claim that information is privileged or subject to protection as work product materials shall be supported by a description of each item that is sufficient to enable the demanding party to evaluate the claim.

[38] Judge Doory's Findings of Fact and Conclusions of Law encompassed seventy-six pages, as well as an additional twenty pages of appendices, which have been reprinted as appendices to this opinion.

(continued . . . )

twenty-two cases, Mixter represented the defendant(s), in five cases he represented the

plaintiff(s) and in one case he represented himself.[39]

---

(continued . . . )
Appendix 1 is a case list, describing each case and Respondent's role therein; Appendix 2 contains a list of all sixty-two motions directed at non-party witnesses Judge Doory found to be frivolous; Appendix 3 lists the twenty-four motions directed at out-of-state witnesses that Judge Doory determined to be frivolous; Appendix 4 is a list of thirty-five subpoenas Judge Doory determined had been improperly directed at out-of-state witnesses; Appendix 5 contains forty-two motions directed at an opposing party that Judge Doory determined had been frivolous; Appendix 6 lists fifty-three instances in which Judge Doory found that the Respondent had knowingly filed a false certification of good faith efforts to resolve a discovery dispute; and Appendix 7 contains twelve instances in which Judge Doory found Respondent had made misrepresentations to a court by omitting from his motions communications with opposing counsel or witnesses regarding discovery disputes.

[39] The violations charged involved only those occurring after March 7, 2008, the date upon which this Court had issued a public reprimand to Respondent for violation of Rules 3.2 and 8.4(d), arising out of complaints involving discovery abuses.
The twenty-two cases included 20 cases in the Maryland court system:
1. *Alemu v. Lawrence Street Industry, LLC* (hereinafter "*Alemu*")
2. *Byrne-Egan v. Empire Express, Inc.* (hereinafter "*Byrne-Egan*")
3. *Canby v. Yu* (hereinafter "*Canby*")
4. *Dunston v. Coldspring Associates, LLP* (hereinafter "*Dunston*")
5. *Fitzgerald v. MCT Charter Tours* (hereinafter "*Fitzgerald*")
6. *Garnett v. Elkton Manor Corp.* (hereinafter "*Garnett*")
7. *Gnip v. Annapolis Roads Apartments Co.* (hereinafter "*Gnip*")
8. *Gonzales v. Rubio Restaurant Management Corp.* (hereinafter "*Gonzales*")
9. *Green v. Council of Unit Owners of Rockland Condominium Inc.* (hereinafter "*Green*")
10. *Greenstein v. Council of Unit Owners of Avalon Court Six Condominium Inc.* (hereinafter "*Greenstein*")
11. *Johnson v. Central Transport, Inc.* (hereinafter "*Johnson*")
12. *King v. Abbott Enterprises, Inc.* (hereinafter "*King*")
13. *Koontz v. New Summer Place North Village Condominium* (hereinafter "*Koontz*")
14. *Mixter v. Farmer* (hereinafter "*Mixter*")

(continued . . . )

Judge Doory's findings of fact as to Respondent's actions fall into the following categories: Frivolous Motions Directed at Non-Party Witnesses; Frivolous Motions Directed at Out-of-State Witnesses; Subpoenas Issued to Out-of-State Witnesses; Subpoenas Issued in Violation of Rule 2-413; Additional Abuses of Subpoena Power; Frivolous Motions Directed at Opposing Party; False Certifications; Misrepresentations by Omissions; Misrepresentations and Disregard for Court Orders and Directives; Maintaining and Pursuing Litigation in Bad Faith; The *Varner* Opinion and Expert Witness Compensation; and Motions for Contempt: Harassment and Intimidation.[40]

Judge Doory found that in eleven of the twenty-two cases, Respondent had issued subpoenas to out-of-state witnesses compelling production of documents without having followed the proper protocol for doing so, listed in Appendices 3 and 4, and, further, that

---

(continued . . . )
15. *Pearson v. Lyles* (hereinafter "*Pearson*")
16. *Presbury v. Forest Hill Health & Rehabilitation Center, Inc.* (hereinafter "*Presbury*")
17. *Railey v. M.E. Burton, LLC* (hereinafter "*Railey*")
18. *Smith v. Chineme* (hereinafter "*Chineme*")
19. *Smith v. Keener* (hereinafter "*Keener*")
20. *Translucent Communications v. APC Wireless* (hereinafter "*Translucent*")

The two other cases were filed in the United States District Court for the District of Maryland:
1. *Davis v. Babcock & Brown, LP* (hereinafter "*Davis*")
2. *Fuselier v. Cary* (hereinafter "*Fuselier*")

The impact of Mixter's actions were felt in the Circuit Courts for Anne Arundel, Baltimore, Charles, Montgomery, Prince Georges and Washington Counties, as well as the Circuit Court for Baltimore City and the United States District Court for the District of Maryland.

[40] The portion of Judge Doory's findings of fact entitled "Lack of Civility" has been omitted, as well as Mixter's exceptions thereto, because it is "irrelevant to the ultimate finding" of Mixter's misrepresentations. *Attorney Grievance Comm'n v. Miller*, 301 Md. 592, 604, 483 A.2d 1281, 1288 (1984).

Mixter misrepresented to the recipients that they could be compelled to appear in Maryland. In seven of the eleven cases, Judge Doory found that Respondent had filed frivolous motions with the various courts to enforce the invalid subpoenas, listed in Appendix 3.

In fourteen cases, Judge Doory found that Respondent had filed various different frivolous motions, some to compel, some for sanctions or some seeking contempt, directed to non-party witnesses emanating from his issuance of subpoenas that lacked proof of service or intentionally did not provide sufficient time for production of documents, listed in Appendix 2.

In fifteen cases, according to the findings of fact, Mixter had also made false certifications to the various courts asserting that he had engaged in good faith efforts to resolve discovery disputes, listed in Appendix 6. Judge Doory found that, in eight of those fifteen cases, Mixter had made misrepresentations to the courts by omitting material information from his motions, listed in Appendix 7.

We recount below, for each of the categories of Judge Doory's findings, representative examples within the category.[41] The complete lists of Judge Doory's findings are included in the appendices attached to this opinion.

## II.    Judge Doory's Findings of Fact

In the first category of findings, entitled "Frivolous Motions Directed at Witnesses", Judge Doory found that sixty-two separate motions to compel or hold in contempt, listed

---

[41] Internal record citations within Judge Doory's Findings of Fact have been omitted.

in Appendix 2, filed by Respondent and directed at non-party witnesses, were frivolous, because the underlying subpoenas that had commanded the appearance of the non-party witness and the production of documents were unenforceable. Judge Doory determined that the subpoenas were invalid, because "there was either no proof of service of the subpoena, or . . . it did not provide the witness the requisite 30 days to produce documents as required by Maryland Rule 2-412(c)":

> The Court finds that each of the 62 motions in which the Respondent alleged that a witness had been properly served with a valid subpoena constitutes a misrepresentation to the court. The Respondent's pattern of practice in these cases is clear: in an attempt to mislead the Court, rather than represent the actual date of service, each of his motions states the witness in question was served "on or about" the date the subpoena was *issued*, not served.
> The Respondent knowingly, intentionally and/or recklessly attached to the motions false evidence that the witnesses had been properly served in an attempt to mislead the court.

One of Judge Doory's findings in his first category was that Mixter had misrepresented to the Circuit Court for Prince George's County, in a case entitled *Byrne-Egan*, the date of service of a subpoena on Dr. Stephen Rosenbaum, as well as that the subpoena had been accompanied by a 30-day assurance letter. Mixter had represented in his "Motion to Compel the Custodian of Records of Stephen Rosenbaum, M.D.", that the witness was served "on or about August 25, 2011" as well as "that on September 26, 2011, the 30-day assurance letter was sent." Judge Doory found that, in fact, there had not been proper proof of service presented in the record and that the 30-day assurance letter authorizing the release of the records under Section 4-306(b)(6)(i)(1) of the Health-General

27

Article of the Maryland Code had been sent on the same day the motion to compel was filed; therefore, the Motion, Judge Doory found, was frivolous:

> Another example is found in the Motion to Compel the Custodian of Records of Stephen Rosenbaum, M.D. filed in *Byrne-Egan*. To support his misrepresentation that the witness was served "on or about August 25, 2011" the Respondent attached to his motion a signed return receipt green card.[42] The green card is clearly from something else as it was dated August 16, 2011, more than a week before the relevant subpoena was issued. The Respondent additionally claims that on September 26, 2011, the 30-day assurance letter was sent. Conspicuously, the Motion was filed on the same day – September 26, 2011 – before the witness could have received the 30 day letter and could legally release the records.

Judge Doory found that, "On occasion, the Respondent was successful in misleading the court and the requested relief was granted", as in *Keener*, in which a judge with the Circuit Court for Charles County had granted an order compelling the production of documents based upon Mixter's misrepresentation that he had properly served a subpoena on Civista Medical Center for the production of documents, along with a 30-day assurance letter. Respondent, then, according to Judge Doory, had mailed a copy of the order to Civista and threatened to hold Civista in contempt if it failed to produce the requested documents:

> On November 16, 2009, the Respondent in *Keener*, filed a motion to compel the production of documents from various custodians of records, including Civista Medical Center (hereinafter Civista). In the motion, the Respondent misrepresented to the court that Civista had been properly served with a subpoena for medical records. The subpoena, issued on September 21, 2009, was defective on its face as it required production on October 19, 2009. The subpoena was served on September 22, 2009. On October 22, 2009, the Respondent sent a 30-day assurance letter and three weeks later filed the frivolous motion without any further attempts to resolve the

---

[42] A "green card" is the delivery receipt returned to the sender by the United States Postal Service.

"discovery dispute". No doubt in reliance on the Respondent's misrepresentations that a valid subpoena was properly served and good faith efforts were made to resolve the discovery dispute prior to the filing of the motion, on March 11, 2010 an order compelling Civista to produce the requested documents was entered. On April 12, 2010, the Respondent mailed a copy of the order to Civista demanding the records be produced within five (5) business days and threatening further court intervention. On May 27, 2010, the Respondent filed a Motion to Hold Civista in Contempt and a show cause order was issued. On June 17, 2010, the Respondent withdrew the motion.

In the second category, Frivolous Motions Directed at Out-of-State Witnesses, Judge Doory found that Mixter would "knowingly or recklessly, and in complete disregard for the Maryland Rules" issue "Maryland subpoenas to out-of-state witnesses over whom the Maryland courts have no jurisdiction and then filed frivolous motions to compel compliance with same."

Judge Doory determined that twenty-four motions filed by Mixter, directed at out-of-state witnesses, listed in Appendix 3, were frivolous, "because the court in which they were filed had no jurisdiction over the non-party witness and their failure to comply with a Maryland subpoena, as such, the grounds for each of the motions was without merit":

> The Respondent testified that on occasion he would mistakenly issue a Maryland subpoena to an out-of-state witness. The Court finds the Respondent's testimony not to be credible and finds that the Respondent, knowingly or recklessly, and in complete disregard for the Maryland Rules and directives from the court, issued Maryland subpoenas to out-of-state witnesses over whom the Maryland courts have no jurisdiction and then filed frivolous motions to compel compliance with same. The Court finds that the twenty-four (24) motions, identified in the attached Appendix Three (3), . . . were frivolous because the court in which they were filed had no jurisdiction over the non-party witness and their failure to comply with a Maryland subpoena, as such, the grounds for each of the motions was without merit. Additionally, the Court finds the Respondent's failure to include the location of the out-of-state witnesses in the body of each Motion to be intentionally and knowingly misleading.

Judge Doory singled out Respondent's actions in *Mixter*, a defamation case Mixter had filed against attorneys who had filed complaints against him with the Attorney Grievance Commission, as contradicting Respondent's assertion that Maryland subpoenas had been issued to out-of-state witnesses only by mistake. Judge Doory observed that a subpoena Mixter had issued to Dr. Michael Conte in Arizona for service in that state had been returned as unserved, and found that, after the subpoena was returned, Mixter mailed the subpoena again to Dr. Conte on the same day he filed a motion to compel Dr. Conte's appearance in Maryland:

> The subpoena directed to Michael Conte, Ph.D. by the Respondent in the *Mixter* case and the motions that follow belie the Respondent's testimony that Maryland subpoenas were issued to out-of-state witnesses only on occasion and only by mistake. On March 6, 2012, the Respondent issued a subpoena from the Circuit Court for Baltimore County to Dr. Conte, located in Phoenix, Arizona. He attempted to serve the subpoena by first class mail, return receipt, restricted delivery. The subpoena directed Dr. Conte to personally appear. On April 18, 2012, the Respondent filed a Motion to Compel, misrepresenting to the court that Dr. Conte had been served on March 6, 2012. No proof of service as to Dr. Conte was attached to the Motion. The documents attached to Dr. Conte's opposition reveal the truth: On March 8, 2012, the certified mail directed to Dr. Conte was returned to the Respondent. On April 18, 2012, after the date of the deposition had come and gone, the Respondent put the returned certified mail into a new envelope and mailed the new envelope, by first class mail only, to Dr. Conte who received the mail on April 20, 2012. Also on April 18, 2012, the Respondent filed his Motion to Compel, knowing that Dr. Conte had, as of that date, not received any subpoena. In his opposition, Dr. Conte, through counsel, raised various deficiencies with the subpoena including, *inter alia*, that the Respondent issued a Baltimore City subpoena to an Arizona resident. The Respondent, rather than acknowledge the error and withdraw his motion, filed a Reply in which he repeated his misrepresentation that Dr. Conte had been served on March 6, 2012 and advanced the impractical arguments that Maryland Rule 2-413 provides the Circuit Court for Baltimore City "the power to compel an out-of-state witness' attendance at a deposition in Maryland" and that somehow Dr. Conte is required to produce the requested

documents. Dr. Conte filed a Supplemental Memorandum in Support of his Response to the Motion to Compel requesting attorney's fees to which the Respondent filed a Response in which he again misrepresented to the court that Dr. Conte had been served on March 6, 2012 and advanced another frivolous argument: That Dr. Conte is subject to the jurisdiction of the court because he "previously lived and worked in the State of Maryland."

In the third category, Judge Doory found that Respondent had issued Maryland subpoenas, commanding the witnesses' appearance and production of documents, to thirty-five additional out-of-state witnesses, listed in Appendix 4, coupled with letters containing knowing and intentional misrepresentations to the witnesses that their appearance could be compelled in Maryland:

> In addition to the Maryland subpoenas issued to out-of-state witnesses underlying each of the frivolous motions itemized on Appendix Three (3), the Court finds that the Respondent, in violation of the Maryland Rules issued Maryland subpoenas to the thirty-five (35) out-of-state witnesses identified on the attached Appendix Four (4) which is incorporated by reference herein.
>
> Each of the subpoenas directed to an out-of-state witness included a cover letter from the Respondent which provided: "Enclosed please find a notice of deposition and subpoena *duces tecum* which is being served upon you via certified mail. If you would please forward copies of all documents requested by the date of the deposition it will not be necessary for you to testify or appear." The Court finds the Respondent knowingly and intentionally misrepresented to the non-party witnesses, most, if not all of whom were non-attorneys, that they could be compelled to appear in Maryland.

Some of the out-of-state witnesses, whom Judge Doory identified as having received subpoenas requesting their personal appearance and the production of documents that were improperly issued from Maryland courts, included: Bartley J. Eckhardt, P.E., of Robson Forensic, located in Lancaster, Pennsylvania; Amgolf, Inc., located in Fairfax, Virginia; the Hope for Life Wellness Center, Inc., located in Miami, Florida; Thomas F. Grogan,

31

C.F.E., of Victoria Business Center, located in Springfield, Pennsylvania; and Dr. Stephen Silibiger, located in Pawleys Island, South Carolina.

Judge Doory also found that Mixter, in his own case, had issued a subpoena to the Custodian of Records of TrialSmith, Inc., located in Austin, Texas, for the production of documents. Judge Doory noted that Mixter had accompanied the subpoena with an unsigned Commission to Take Foreign Deposition, which was a misrepresentation that he had requested and obtained such a commission:

> Accompanying the Maryland subpoena issued to TrialSmith, Inc., located in Austin, Texas, the Respondent provided an unsigned "Commission to Take Foreign Deposition." As of April 25, 2012, the docket entries reveal that no request for commission had been made and none granted. The Court finds the Respondent serving an unexecuted Commission to Take Foreign Deposition on an out-of-state witness was knowingly and intentionally deceitful.

In the fourth category, entitled "Subpoenas Issued in Violation of Rule 2-413", Judge Doory found that "Respondent had a pattern and practice of knowingly and intentionally noting depositions in the wrong venue in violation of Maryland Rule 2-413".

Mixter, according to the findings of fact, would subpoena non-party, fact witnesses for depositions and production of documents at his office in Baltimore City, when the witnesses were located outside of Baltimore City and the cases were not pending in Baltimore City:

> (1) Subpoenas issued to a fact witness located in Silver Spring and Laurel compelling their appearance at Respondent's office in Baltimore City where the case was pending in Montgomery County. (2) Subpoena issued to the plaintiff and fact witnesses located in Prince George's County compelling their appearance at Respondent's office in Baltimore City where their case was pending in Prince George's County. (3) Subpoenas issued to witnesses located in Baltimore County, compelling appearance at the Respondent's

office in Baltimore City. (4) Subpoenas issued to fact witnesses located in Montgomery County, compelling their appearance at the Respondent's office in Baltimore City. (5) Subpoena issued to the Custodian of Records of Maryland Association for Justice, located in Howard County compelling its appearance at the Respondent's Office in Baltimore City. (6) Subpoena issued to opposing counsel located in Washington County compelling his appearance at the Respondent's office in Baltimore City where the case at issue was pending in Washington County. (7) Subpoena to an elderly fact witness who resided in Kent County to appear for deposition in the Respondent's office in Baltimore City where the case was pending in Baltimore County.

In the instances where the venue was challenged by opposing counsel, the Respondent rather than withdraw the subpoenas and note them in the appropriate venue, clung to his position and threatened sanctions or court intervention if the deponent failed to appear.

In the section entitled "Additional Abuses of Subpoena Power", Judge Doory identified episodes in *Mixter*, *Alemu* and *Railey* as examples in which Respondent abused his authority as an officer of the court by issuing subpoenas in order to harass and intimidate witnesses and opposing counsel. Judge Doory found that Mixter, in his own case, had issued subpoenas to ten witnesses, compelling appearance and the production of documents, without having provided sufficient time for such production, simply to harass the recipients:

In the *Mixter* case, the Respondent issued numerous subpoenas aimed solely at harassing witnesses (most of whom were Respondent's opposing counsel in other non-related cases) and the defendant's. On March 6, 2012, the Respondent issued subpoenas to nine "custodians of records" for attorneys and one doctor: Irwin E. Weiss, Esquire, Daniel Sussman, Esquire, John Kazmierczak, Esquire, Steven Shechtel, Esquire, Howard Simcox, Esquire, Lee J. Eidleberg, Esquire, Henry Greenberg, Esquire, Stephen A. Markey, III, Esquire, Michael Conte, M.D. The subpoenas directed the witnesses to "appear and produce all documents or other forms of communications, including electronic either received from or forwarded to James Farmer or James E. Farmer, P.A. or Charles Bowie or Alison Heurich or Charles E. Farmer regarding Mark T. Mixter at any time whatsoever." Despite the fact that subpoenas issued from the Circuit Court for Baltimore

City have an option to allow the witnesses to "produce documents and or objects only", the Respondent instructed the witnesses to "personally appear and produce documents or objects." The subpoenas were accompanied by a cover letter that provided: "If you would please forward copies of all documents requested by the date of the deposition it will not be necessary for you to testify or appear. Please not that we are not authorizing the use of a record copy service. Additionally, we will not pay for any such services without written approval."

All of the subpoenas were issued on March 6, 2012 and required appearance on April 6, 2012. None of the subpoenas were timely served to allow the witnesses the requisite 30 days to produce documents. Many of the nine witnesses filed, or retained counsel to file motions to quash and/or limit the subpoenas, all of which were granted by the court.

In Mixter's own case, Judge Doory recounted, among others, the events surrounding the subpoena directed to an attorney named Daniel Sussman, one of the witnesses in the suit. Mr. Sussman had filed a motion to quash Mixter's deposition subpoena and production of documents. Judge Doory found that Mixter had misrepresented in his response to the motion the date upon which Mr. Sussman had been served, among other things:

> Mr. Sussman, upon receipt of the deficient subpoena, wrote to the Respondent. By letter dated March 12, 2012, Mr. Sussman stated that he had "searched the file of Daniel L. Sussman and there are no records relevant to this matter." Mr. Sussman further informed the Respondent that he would not be appearing on the date of deposition. On April 22, 2012, Mr. Sussman was served with a subpoena compelling his appearance at deposition on May 3, 2012 and directing him to produce documents. On May 1, 2012, Mr. Sussman, through counsel, filed a Motion to Quash. In response, the Respondent filed a response to Mr. Sussman's motion, a motion to compel Mr. Sussman's appearance at deposition, and a reply to Mr. Sussman's response thereto in which he misrepresented, among other things, the date that Mr. Sussman was served.

Finally, Judge Doory observed that Mixter also had subpoenaed the driving record of James Farmer, a *Mixter* defendant, and, in response to Mr. Farmer's motion for a

protective order as to his driving record, Mixter asserted "a multitude of disingenuous arguments", including "that the driving record may reveal impeachable evidence including criminal convictions for driving-related offenses and alcohol related charges or problems that 'may form the basis for evidence of habit/routine practice under Maryland Rule 5-406' or 'a common pattern of ongoing alcohol-related problems and/or alcohol-related criminal convictions.'" The Circuit Court for Baltimore City granted a protective order on the basis that Mr. Farmer's "driving record had absolutely nothing to do with the pending claim for defamation and that the subpoena was aimed solely at harassing the defendant":

> On June 14, 2012, the Respondent issued a subpoena and notice of deposition to the Custodian of Records for the Motor Vehicle Administration requesting "the entire driving record, including but not limited to any and all records, including, but not limited to, license tag applications and associated records, registration applications and associated records, driving records, handicapped tag applications and associated records, and any other records regarding James Farmer . . . from the date of issue of any driver's license." Mr. Farmer, through counsel, filed a motion for protective order on the basis that Mr. Farmer's driving record had absolutely nothing to do with the pending claim for defamation and that the subpoena was aimed solely at harassing the defendant. In response, the Respondent pursued a multitude of disingenuous arguments: that the driving record may reveal impeachable evidence including criminal convictions for driving-related offenses and alcohol related charges or problems that "may form the basis for evidence of habit/routine practice under Maryland Rule 5-406" or "a common pattern of ongoing alcohol-related problems and/or alcohol-related criminal convictions." By Order dated August 7, 2012, Mr. Farmer's Motion for Protective Order was granted.

Judge Doory found that Respondent also had misused subpoenas in *Railey* by attempting to compel the defendants' attorney to produce documents unrelated to the litigation at issue:

> In *Railey* the Respondent propounded written discovery on the defendants and requested production of documents related to other civil

35

matters in which the defendants had been involved. The unrelated matters involved garnishment of wages of some of the defendant's employees and did not implicate the defendant in any fault in those matters whatsoever. Counsel for the defendants invited the Respondent to defense counsel's office to review all of the files requested. Despite the offer, the Respondent issued a notice of deposition to defense counsel to appear in Baltimore City for deposition. The defendants were forced to file a motion for protective order and the court found, "[o]f course it is improper to compel a deposition of a party's counsel, especially in another county."

Finally, in *Alemu*, Judge Doory found that Mixter had abused the subpoena authority by attempting to secure the exhibits from Mixter's client's deposition, for which he was sanctioned:

> In *Alemu*, the Respondent issued a Maryland subpoena to the custodian of records of his opposing counsel located in the District of Columbia. The subpoena requested the custodian appear for a deposition and produce the exhibits from the Respondent's client's deposition. Plaintiff's counsel filed a Motion for Protective Order and requested sanctions. A hearing was held on March 8, 2010 during which the court found the Respondent abused his authority to issue subpoenas and issued sanctions in the amount of $250. The Respondent refused to pay the sanctions ordered and as a result, the Plaintiff filed a Motion for Sanctions. In response to the Motion, the Respondent argued that he "intends to appeal" the order issuing sanctions in the amount of $250. An order was negotiated whereby the Respondent paid the $250 but did not waive his right to appeal.

Judge Doory, in the section of his findings of fact entitled "Frivolous Motions Directed at Opposing Party", found forty-two instances, listed in Appendix 5, in which Mixter had filed frivolous motions, "because the Respondent either failed to make any good faith efforts to resolve the discovery disputes or the filings were filed prematurely or otherwise do not comply with the Maryland Rules."

Judge Doory put forth one example of Mixter having filed frivolous motions to compel and for sanctions directed at the opposing party in *Koontz*. Judge Doory noted that Respondent had propounded discovery on the *Koontz* plaintiffs for their medical and financial information, for which the plaintiffs had requested that Mixter agree to a

36

confidentiality agreement in order to limit disclosure. Mixter, according to Judge Doory, moved to compel production of the medical and financial information, rather than enter into a confidentiality agreement. Judge Doory found that a judge in the Circuit Court for Anne Arundel County denied Mixter's motion but ordered that the plaintiffs provide the requested discovery, once a confidentiality agreement was executed. Mixter then, according to Judge Doory, moved for the circuit court to reconsider its denial of his motion to compel; then, before the circuit court had ruled on the motion, he executed a confidentiality agreement and demanded production of the medical and financial information from the plaintiffs within five days. Judge Doory found that, once the five days had elapsed, Respondent filed a motion to dismiss and/or for sanctions based upon the plaintiffs' failure to provide their medical and financial information:

> The Respondent propounded discovery on the Plaintiffs, the discovery requested sensitive medical and financial information. The Plaintiffs asked the Respondent to enter into a confidentiality agreement which would not in any way preclude his receipt of discoverable information but rather limit the disclosure or redisclosure of sensitive information. The Respondent refused to enter into a confidentiality agreement and the Plaintiffs filed a Motion for Protective Order on August 11, 2009. On August 25, 2009, the Respondent filed a motion to compel discovery. By Order entered September 18, 2009, the court denied the Respondent's motion to compel and ordered that the Plaintiffs "shall provide the requested discovery upon execution of an appropriate protective order to maintain confidentiality of medical and financial records." On September 28, 2009, the Respondent filed a motion for reconsideration of the order. On October 8, 2009, the Respondent forwarded an executed Stipulation regarding confidentiality to the Plaintiffs and demanded that the outstanding discovery be provided "within 5 business days." Less than two weeks later, the instant motion [to dismiss and/or for sanctions for Plaintiffs' complete failure to provide discovery] was filed. In addition to being filed prematurely, without allowing the Plaintiffs time to produce the requested information, the motion was filed without any good faith efforts to resolve the discovery dispute and the relief sought, dismissal and sanctions, is not contemplated under the Maryland Rules. Where there

37

has been a response to discovery, albeit incomplete, the only remedy is a motion for an order compelling discovery. *See* Rule 2-432. In the Motion, the Respondent states that the Plaintiffs "refuse to produce the discovery." There is no evidence that, once the confidentiality agreement was signed, the Plaintiffs refused to produce the information and documentation requested.

In the "False Certifications" Section, Judge Doory found fifty-three instances in which "the Respondent falsely certified to the court that good faith efforts to resolve discovery disputes had been made," listed in Appendix 6. According to Judge Doory, Mixter's certifications contained misrepresentations which were intended to mislead the courts into believing that he had engaged in good faith attempts to resolve discovery disputes; in fact, the exhibits Mixter had attached to the certificates were the original letters accompanying the subpoenas sent before any discovery dispute could have existed:

> In each motion, in an attempt to mislead the court, the Respondent refers the court to attached exhibits "evidencing" his attempts to resolve the alleged discovery dispute. The exhibits attached to the motion are all the original cover letters accompanying the subpoena and/or the 30-day assurance letters, both of which were sent before any "discovery dispute" could have existed. The Court finds that the Respondent knowingly and intentionally falsely certified that he had complied with Rule 2-431. The Respondent testified at trial that in addition to the cover letters being sent, a phone call was always made in an attempt to resolve the discovery dispute before any motion was filed. No documentation was provided to support this claim and the Court finds the Respondent's testimony not credible. Rule 2-431 specifically states that the certificate "*shall* include the date, time, and circumstances of *each* discussion or attempted discussion." (emphasis added). The Respondent failed to produce any evidence of the alleged phone calls: he did not offer any telephone message slips, memorandum to the file or phone records evidencing any of the purported phone calls that were "always" made prior to filing a motion.

In the Section entitled "Misrepresentations by Omission", Judge Doory observed that Mixter had intentionally omitted from the twelve motions listed in Appendix 7 responses from the adverse parties or the witnesses, in an attempt to advance his position.

38

In the Maryland Rule 2-431 certificates, for example:

> As discussed above, Rule 2-431 requires the Respondent to provide the date, time and circumstances of each discussion or attempted discussion had in an effort to resolve a discovery dispute prior to filing a motion. The Respondent routinely omitted correspondence from the other party or the witnesses related to the discovery dispute from his [Rule 2-431] certificate. The Court finds that the Respondent's omission of material evidence was intentional and in an effort to advance his position. Each of the motions filed by the Respondent and itemized on the attached Appendix Seven (7), constitutes a misrepresentation by omission to the court as the Respondent knowingly and intentionally failed to include correspondence relating to the discovery dispute to the court for consideration.

In the ninth category of his findings of fact, entitled "Misrepresentations and Disregard for Court Orders and Directives", Judge Doory found that in the *Alemu*, *Byrne-Egan*, *Canby*, *Chineme*, *Davis*, *Fuselier*, *Green*, *Johnson*, *Keener*, *Koontz*, *Mixter*, *Pearson* and *Presbury* cases that Mixter had, in bad faith and without substantial justification, knowingly and intentionally made misrepresentations as to the contents of court orders or had disregarded court orders.

In *Byrne-Egan*, Judge Doory found that Mixter had knowingly and intentionally misrepresented to White Marsh Psychiatric Associates that no objection had been made to his subpoena for the third-party defendant's mental health records and failed to provide the protective order that had been entered related to those same records:

> On December 2, 2011, the Respondent filed a Motion to Compel directed at the third-party defendant/counter-plaintiff in *Byrne-Egan* based on her failure to provide answers to interrogatories and responses to requests for production of documents. On December 19, 2011, the third-party defendant filed a response to the motion stating: "This case was removed to Federal Court by Empire after it filed a Third Party Complaint against Seay in State Court and she filed a counterclaim. Seay avers that this court has no jurisdiction in this matter and she has filed a Motion to Remand to State Court which has yet to be ruled upon. In any event, Seay intends to respond to

39

Empire's discovery requests within ten days." On December 20, 2011, the Respondent wrote a letter to the Honorable J. Frederick Motz and stated, "The defendant's motion to compel discovery from the plaintiff . . . was filed on December 2, 2011. A response was filed yesterday and admits to the plaintiff's failure to timely answer my client's discovery requests. Therefore, please provide counsel with a ruling on that motion at your earliest convenience." The court finds that the Respondent knowingly and intentionally mischaracterized and misrepresented the content of the opposition.

On February 21, 2012, Ms. Seay sought a protective order to prevent the Respondent from obtaining her psychiatric records. On May 5, 2012, the Respondent filed his opposition. On May 16, 2012, the Respondent sent a letter to White Marsh Psychiatric Associates, knowingly and intentionally misrepresenting that no objection had been made to the subpoena issued and requested Ms. Seay's mental health records be provided. On May 18, 2012, Judge C. Philip Nichols, Jr., granted Ms. Seay's motion and ordered that her psychological or mental health records, if any, are not to be produced. In complete disregard for Judge Nichols' order, on July 13, 2012, the Respondent filed a motion to compel White Marsh Psychiatric Associates to produce Ms. Seay's treatment records. Despite withdrawing the motion to compel, Judge Nichols entered a Show Cause Order for Contempt directed at the Respondent. In response, the Respondent knowingly and purposefully skewed the facts of the case and his actions. While he admits that the subpoena directed to White Marsh was issued on April 16, 2012 before the protective order was granted, he omits from his response that the motion for a protective order was filed on February 21, 2012, and that while it was pending he knowingly and intentionally misrepresented to White Marsh on May 16, 2012 that no objection to the subpoena had been made.

In *Chineme*, Judge Doory found that Mixter had facilitated the alteration and destruction of important evidence by his client. Judge Doory explained that when Mixter represented the defendant landlord in a mold case, the plaintiff's expert had attempted to inspect the premises, but Mixter blocked the expert from doing so. The plaintiff, according to Judge Doory, then filed a motion to compel, which was granted by the Circuit Court for Baltimore City, providing that the plaintiff's expert was to be allowed on the premises to conduct his testing. Judge Doory found, however, that, when the expert returned to the

40

property, the items the expert had previously intended to sample had been removed, thereby thwarting any testing, for which Judge Doory found that Mixter had facilitated his client's alteration and destruction of evidence:

> In *Chineme*, the Respondent represented the defendant, landlord Chineme in a mold case. The Plaintiff hired an expert, Robert K. Simon, Ph.D., an industrial hygienist-chemist to inspect the property on January 8, 2008. There was prior bad history between Respondent and Dr. Simon based on experience in *Garnett*.
>
> Prior to January 8, 2008, the third scheduled attempt to inspect the property, Dr. Simon received a subpoena to be deposed on January 7, 2008. Respondent claims it was only a records deposition but it still predates Dr. Simon's inspection, the commencement of his participation in this case.
>
> Dr. Simon went to 3706 Hillsdale Ave. and met plaintiff Shaneise Smith, Respondent and the Defendant on January 8, 2008. Dr. Simon testified that Respondent impaired his ability to inspect the property. Respondent allowed Dr. Simon to photograph some areas, take air samples and to do swipe testing. He did not allow access to the basement door area. Respondent did not allow Dr. Simon to do any "destructive testing." Dr. Simon, in his expert opinion, felt it necessary to take carpet samples under a formerly leaking radiator; to take a section of wallboard inside a closet; to take a two-inch by two-inch section of water damaged 1950's knotty pine paneling in the basement. Respondent testified that he was not at liberty to allow Dr. Simon to "tear apart" the property for testing. Respondent, in his experience felt this testing was unnecessary.
>
> Later in the day on January 8, 2008, Plaintiff's attorney Gary F. Stern filed a motion to compel to allow Dr. Simon access to do this testing. He argues that the requested inspection, testing and sampling of said property would not be burdensome to the Defendant, intrusive or outside the ambit contemplated by the rules of discovery and Plaintiff would be prejudiced in presenting their case without the expert's report. Further Stern argues that any delay in allowing Plaintiff's expert to gather samples for the purpose of testing would allow the Defendant to alter, destroy or otherwise conceal critical evidence in this case.
>
> On January 28, 2008, Respondent filed a response. In his response, Respondent offers: "The Plaintiff also argues that delaying this process will prejudice the plaintiff's case by allowing the defendant to alter, destroy or otherwise conceal critical evidence. That argument is rather disingenuous given that the plaintiff has not resided at the defendant's premises for almost two years, and knew that she was going to assert this claim when she resided there or shortly thereafter."

41

After a great amount of wrangling over the setting of depositions and sharing of discovery documents; after Dr. Simon hired his own attorney, Steve Stine, Esq., to represent him in dealings with Respondent, on June 23, 2008, the Court granted a Motion to Compel Entry Upon the Premises. In June of 2008, Dr. Simon returned to the property to find that the carpet had been replaced and the knotty pine paneling had been replaced by painted wallboard. Dr. Simon's inspection had been thwarted. Respondent testified that at no time did he authorize his client to make alterations. It should be noted that this client was not called to testify and no evidence was presented to support the contention that the alterations were part of a beautification plan by the landlord on his own initiative.

The case dragged on through a series of embattled depositions. It was settled in November of 2008. In late December Dr. Simon was still hoping to be paid by Respondent for his depositions after a prolonged fee dispute. The Court finds the testimony of Dr. Simon on these points to be more credible than the testimony of the Respondent. The Court finds that without legitimate justification, Respondent facilitated his client in the alteration and destruction of important evidence.

Judge Doory found that Mixter had also made a knowing misrepresentation to the Court of Special Appeals in *Keener*. Judge Doory observed that the Circuit Court for Charles County, after a hearing, had found Mixter in contempt for failure to comply with a previous court order. After a subsequent hearing, Judge Doory continued, the Circuit Court had awarded attorney's fees to Mixter's opposition. According to Judge Doory, Mixter appealed both of the Circuit Court's orders to the Court of Special Appeals, asserting that the rulings had been made without a hearing. When apprised of this misrepresentation, Judge Doory found that Mixter had filed an errata sheet alleging that the misrepresentation was a "typographical error"; Judge Doory found that the error was not "typographical", because it provided the basis for an argument and, therefore, the errata sheet was itself a misrepresentation to the Court of Special Appeals:

In *Keener*, the Plaintiff filed a motion to compel based on the Respondent's failure to adequately respond to requests for production of documents. Over

42

the Respondent's opposition, the court ordered the Respondent to produce "all documents requested by the Plaintiff, less those to which a claim of privilege is attached, at 3:00 p.m. on December 14, 2010 or 9:00 a.m. on December 16, 2010 at the offices of counsel for the Plaintiff." On December 15, 2010, the Respondent, in defiance of the court order, asserted that by tendering medical records obtained through records depositions over the past year, he did not need to produce any documents. The Plaintiff filed a Motion for Finding of Contempt and on January 20, 2011, the court issued a show cause order directed at the Respondent. After being fully briefed, a hearing was held on March 22, 2011. Following the hearing, the Honorable Helen Ina Harrington found the Respondent in contempt for failure to comply with the court's order of December 8, 2010.

Following the finding of contempt, the Plaintiff requested they be paid their attorneys' fees for filing the various motions involving the contempt issue. The request was denied. The Plaintiffs filed a motion for reconsideration of the request for attorneys' fees and, on November 20, 2011 a hearing was held on the motion for reconsideration. After the hearing, the court awarded attorney's fees against the Respondent personally in the amount of $3,287.00.

The Respondent appealed both the finding of contempt and the award of attorneys' fees to the Court of Special Appeals. In his brief he stated: "[o]n March 22, 2011, without a hearing, the Circuit Court for Charles County granted the Plaintiff's Motion for Contempt, finding that defense counsel was in contempt 'for failure to comply with the Court's Order of December 8, 2010.'" The statement was a misrepresentation. The Respondent repeated the misrepresentation a second time in his brief, arguing to the Court of Appeals: "on March 22, 2011, the Circuit Court for Charles County inexplicably (and without a hearing) granted the Plaintiff's Motion for Contempt, finding the defense counsel was in contempt 'for failure to comply with the Court's Order of December 8, 2010.'" In support of his argument that an order of contempt was improper the Respondent cited Maryland Rule 15-206(c)(2) which states "Unless the court finds that a petition for contempt is frivolous on its face, the court shall enter an order providing for (i) a prehearing conference, or (ii) a hearing, or (iii) both. The scheduled hearing date shall allow a reasonable time for the preparation of a defense and may not be less than 20 days after the prehearing conference." The Respondent then argues that "the trial court erred in failing to set the above-captioned matter in for a hearing on the plaintiff's motion for contempt."

When the Plaintiff brought the misrepresentation to the Court of Special Appeals, the Respondent, rather than withdraw the argument and acknowledge that he had misrepresented the procedural posture of the case to the Court of Special Appeals, filed an errata sheet in which he alleges the

misrepresentation on page 10 of his brief was a "typographical error". The Court finds that the errata sheet was a misrepresentation to the Court of Special Appeals – the error was not typographical as it provided the basis for an argument.

In *Koontz*, Judge Doory observed that Respondent had wrongfully represented to health care providers that the opposing party had not objected to disclosure of their medical records, in an effort to obtain confidential medical records. The parties in *Koontz*, according to Judge Doory, had, in fact, stipulated to the entry of a Protective Order to maintain the confidentiality of the plaintiffs' medical and financial records. Judge Doory found that Mixter violated the Order when he filed a Motion for Sanctions and/or Motion to Compel Supplemental Discovery to which he attached some of the confidential records at issue. Judge Doory noted that Mixter, after the plaintiffs had filed a Motion for Protective Order, issued subpoenas to nineteen of the plaintiffs' health care providers asserting that the plaintiffs had not objected to the disclosure of their medical information:

> At the request of the Plaintiffs in *Koontz*, the court ordered that, before the Plaintiff was required to produce sensitive financial and medical information to the Respondent, the parties execute "an appropriate protective order to maintain confidentiality of medical and financial records. Such order will provide that the information may not be viewed or disclosed except to parties, counsel and their expert witnesses." On October 8, 2009, the Respondent forwarded an executed Stipulation and Protective Order regarding confidentiality to the Plaintiffs. The Stipulation included, *inter alia*, that "any document (including discovery responses and transcripts of testimony) containing confidential or proprietary information shall be stamped with the legend "CONFIDENTIAL" or otherwise identified by the party disclosing such information as confidential information, and the information contained therein shall not be disclosed except as provided in paragraph 3 above." Paragraph Three (3) provided, that documents marked "Confidential" shall not be disclosed to anyone other than counsel, parties, court reporters and transcribers, expert witnesses and the court.
> On December 17, 2009, the Respondent filed a Motion for Sanctions and/or Motion to Compel Supplemental Discovery and, in violation of the

44

protective order, attached thereto, the Plaintiffs' answers to interrogatories that had been marked "Confidential." On May 12, 2010, the Respondent filed an Opposition to Plaintiffs Motion for Protective Order and attached thereto the Plaintiffs medical reports.

On or about April 21, 2010, the Respondent issued subpoenas to nineteen (19) of Plaintiff's healthcare providers in *Koontz*. On May 5, 2010, the Plaintiffs filed a motion for protective order to quash and/or limit the subpoenas. On May 21, 2010, while the motion for protective order was pending, the Respondent sent 30-assurance letters to the healthcare providers subject to the motion for protective order. In the letters, the Respondent misrepresented that the Plaintiff had "not objected to the disclosure of the requested medical records" and asked that the records be forwarded at the earliest convenience. The court finds that the Respondent's statements to the healthcare providers were intentionally false.

On July 1, 2010 and July 16, 2010, while the motion for protective order was still pending, the Respondent filed two Motions to Compel directed at records custodians subject to the protective order. The Motion to Compel filed July 16, 2010 was sent to the custodian of records with a cover letter from the Respondent which stated: "Enclosed is a motion to compel discovery which we are filing in the case but which we would withdraw if we receive the records within five days. Furthermore, if you received a letter from opposing counsel (Ober, Kaler, Grimes & Shiver) indicating that there was a protective order issued in this case, it was false. In fact, not only was a protective order not obtained, but none was sought." The Court finds the Respondent's statements in the letters of July 16, 2010 were intentionally false.

Judge Doory found that, in *Pearson*, Respondent had "in bad faith" made "an intentional effort to obstruct the defendants' access to information and to circumvent [a] court order". According to Judge Doory, a judge of the Circuit Court for Prince George's County had granted an order permitting the defendants to speak with the plaintiff's health care providers without the presence of opposing counsel. Judge Doory found that Mixter, subsequently, wrote letters to the nine health care providers admonishing them not to speak to the defense attorneys, in an attempt to circumvent the court order and obstruct the defense's access to evidence:

45

In *Pearson*, the Respondent represented the Plaintiffs, a husband and wife, in a medical malpractice claim. The Defendants sought a court order to allow them to discuss the Plaintiff's healthcare with her healthcare providers, without the presence of opposing counsel. The Defendants listed the nine healthcare providers that they wanted to interview. By Order dated May 18, 2012, the court granted the defendants the relief they sought and ordered "that the attorneys for the parties to this lawsuit are permitted to engage in *ex parte* discussions with [the nine healthcare providers identified]." On May 21, 2012, the Respondent wrote to the nine healthcare providers and stated:

> "Please be advised that I represent <u>your patient</u>, Gina Pearson in the above-captioned case. This case alleges medical malpractice on the parts of Dr. Lyles and Dr. Barson and their treatment of Ms. Pearson. Today, Judge Geter of the Circuit Court for Prince George's County signed the enclosed order permitting the lawyers representing [the defendants] to contact you directly to discuss your treatment of Ms. Pearson. The order does not compel or mandate that you speak to these lawyers. Furthermore, neither Ms. Pearson or myself wish to have you speak to these lawyers unless we are present. Therefore, it would be appreciated that in the event you are contacted by a representative of the two law firms that represent [the defendants], that you politely refuse to discuss Ms. Pearson's treatment with that individual . . . . We would also urge you to make sure that if you are contacted by anyone who wants to speak to you about your treatment of Ms. Pearson and they are from any law firm other than mine, that you simply indicate that you are not willing to talk to them informally."

The defendants filed a motion for sanctions and the Respondent filed an opposition. A hearing was held on August 17, 2012 at which the Honorable Melanie Shaw Geter found that while the Respondent's letters to the healthcare providers "thwarts the spirit of the order" they did not directly violate the order. This Court finds the Respondent's May 21, 2012 letters were sent, in bad faith, in an intentional effort to obstruct the defendants' access to information and to circumvent the court order.

Judge Doory also determined that Mixter had maintained the *Railey* litigation "in bad faith and without substantial justification. Not only did the Respondent bring and pursue the case in bad faith but he engaged in abusive, harassing and frivolous discovery

practices throughout the entire case".  Judge Doory found that Respondent had represented

Nancy Railey, plaintiff, before the Circuit Court for Washington County against, *inter alia*,

a group known as the "Cochran Defendants."  According to Judge Doory, after Ms.

Railey's deposition, it became clear that there was no legal basis for Ms. Railey's claims.

Judge Doory observed that, nevertheless, Mixter had frivolously and in bad faith continued

the action against the Cochran Defendants and had refused to dismiss a named defendant

unless the defense counsel drafted the line of dismissal:

> In *Railey* the Respondent, on behalf of the plaintiff Nancy Railey, filed suit against a number of Defendants alleged to have been involved in the Plaintiffs' purchase of nursery stock at an auction.  Included among the defendants were the auction company, the auctioneer and an employee of the company, the "Cochran Defendants."  The Plaintiffs, through the Respondent, sued the Cochran Defendants for fraud, breach of contract, breach of fiduciary duty and assault.  Summary judgment was eventually granted to all defendants on all grounds.  During discovery the Cochran Defendants deposed Ms. Railey whose testimony undermined the factual basis for all of the counts against the Cochran Defendants.  Despite the "devastating" deposition, the Respondent continued to pursue the case in bad faith and without substantial justification.  Not only did the Respondent bring and pursue the case in bad faith but he engaged in abusive, harassing and frivolous discovery practices throughout the entire case.
>
> Following Ms. Railey's deposition in which she exonerated the Cochran Defendants, the Respondent unilaterally noted the depositions of ten non-party witnesses, six of whom were Cochran employees.  The deposition notices served no legitimate purpose and were aimed solely at harassing the Cochran defendants.
>
> Special note should be made of the Defendant Leo Cline.  He was a named party among the "Cochran Defendants" because the Plaintiff represented by the Respondent believed he had a managerial position at the auction.  It was learned during discovery that he was primarily involved in manually setting up the auction site.  On April 7, 2011 [defendants' attorney] Alfred Scanlon urged respondent to dismiss Leo Cline from the case based upon the unquestioned testimony of everyone deposed that it would be impossible for him to be involved in any of Respondent's theories of liability.  Respondent replied that he would be willing to dismiss Mr. Cline, without prejudice, only if Mr. Scanlon would prepare the line of dismissal.  Mr.

> Scanlon quite credibly described this as a "tit for tat" attitude. The Respondent never filed the Line of Dismissal.
>
> At an August 24, 2011 motions hearing, Respondent refused to even orally dismiss this meritless claim. Mr. Cline remained an active defendant until the granting of summary judgment on September 8, 2011.

During the hearings in the instant case, Judge Doory also had received "substantial testimony . . . with regards to the [misleading] use of [a trial court's action in a case titled] *Greater Washington Orthopaedic Group, PA v. Varner and Miles & Stockbridge* (Case No. 88899)" (Hereinafter "*Varner*"). In *Varner*, according to Judge Doory, "on April 9, 1993, the Honorable Peter J. Messitte, then of the Circuit Court for Montgomery County, Maryland, issued a 'Revised Order'" in which Judge Messitte explained "that the treating physician for a plaintiff cannot charge a fee for deposition or trial that is greater than the fee charged to the physician's usual and customary office practice." Judge Doory found that Mixter routinely mailed to expert witnesses for the opposing side a copy of Judge Messitte's interlocutory order in *Varner* along with a cover letter stating, "I have also enclosed a copy of the decision in the case of Greater Washington Orthopedic Group, P.A. v. Varner, et al., which sets forth the method of payment for your time spent testifying."

At the hearing, Judge Doory received testimony from Mixter's expert witness, Alan Feld, as an expert in the field of civil litigation, who "testified that the *Varner* opinion provides a proper guideline to be used in determining what a reasonable fee would be for an expert's time." Judge Doory, despite Mr. Feld's testimony, found that "Respondent's statement to the non-lawyer witnesses that the *Varner* opinion governs 'the method of

48

payment' is misleading":[43]

Respondent's statement to the non-lawyer witness that the *Varner* opinion governs "the method of payment" is misleading. While the *Varner* opinion *may* provide some guidance to a court in determining what a reasonable fee is pursuant to Maryland Rule 2-402(g)(3), it is of questionable value to send to a non-lawyer witness of the opponent. The Honorable Judge Lawrence P. Fletcher-Hill, for the Circuit Court for Baltimore City, in denying one of Respondent's motions to hold an expert in contempt and to set the expert's fee, opined:

> As discussed, Defendants rely heavily on the Revised Order in *Greater Washington Orthopaedic Group, P.A. v. Varner*. The very short answer to Defendants' reliance on this order as controlling in this case is that it is a non-binding order of another Circuit Court issued almost twenty years ago. It is persuasive authority at most. In addition, it was limited by its terms to treating physicians who are called upon to testify in that capacity. More important, it pre-dates *Kilsheimer*, which is binding on this Court and the revisions to what is now Maryland Rule 2-402(g)(3).
> * * *

The Respondent's practice of including the *Varner* opinion in his correspondence with expert witnesses raises the question of motive. Respondent claims that this is done to control excess fees and save money for his clients, although considering filing and litigation costs no net savings were shown. Petitioner contends that this is primarily a ploy by Respondent to increase his billable hours. The Court cannot accept either theory.

The Court finds that Respondent uses the *Varner* opinion as part of an opening salvo to indicate that depositions and discovery involving expert witnesses will be conducted on the terms he dictates. It is an attempt by Respondent to upset expert witnesses and create fee and discovery disputes with an aim to take an unfair advantage for his clients by having witnesses fail to cooperate and potentially be excluded from trial. Including the *Varner* opinion in opening correspondence is an announcement to opposition that, as Lee Salteberg, Esq., testified, it's time to "buckle up and hold on."

In the twelfth section of the findings of fact entitled "Motions for Contempt:

---

[43] Judge Doory also observed that "Respondent's reliance on the *Varner* opinion varies with his client's interests", and would take positions in direct contradiction to *Varner* in an attempt to raise experts' fees for depositions of his own experts.

Harassment and Intimidation", Judge Doory found that Mixter would routinely file motions to hold medical professionals, who had been noted as expert witnesses by the other side, in contempt, based upon their alleged failure to appear for their deposition. The motions, however, omitted the fact that there were disputes as to payment of the experts:

> The Respondent routinely filed motions to hold expert witnesses and lay witnesses in contempt of court based on their alleged failure to appear for deposition in disregard of a validly issued and properly served subpoena. The record reveals the inescapable truth: all of the motions as they related to medical professionals are based on an alleged dispute as to the method and amount the professional will be paid for their deposition testimony. Rather than file an appropriate motion with the court – a motion to set the experts' fees – the Respondent filed to hold the doctors in contempt and within those motions made substantial misrepresentations to the court. The Court finds that this practice is disingenuous and most assuredly aimed at harassing and intimidating opposing parties and expert witnesses by threatening an order of contempt in an attempt to force the expert to appear at deposition on terms, often unreasonable, set by the Respondent or be excluded from testifying at trial. Despite the duplicative nature of many of the motions that are discussed below, a review of each is important to understand how the Respondent casually made misrepresentations to the court that potentially have real and lasting impact on non-parties. All of the motions related to all of the witnesses are based on material misrepresentations: that the witnesses were properly served with a valid subpoena and failed to appear for deposition.

Judge Doory determined that the motions within the Petitioner's exhibits related to Joshua Aaron, M.D., Ian M. Weiner, M.D., Douglas M. Shepard, M.D., Clifford T. Solomon, M.D., Mark Danziger, M.D., William Tham, M.D., Kevin Lurie, M.D., Curtis Colbert, Thomas M. Weschler, Richard Thompson, Paul R. Cooper, Robert H. Hillman, Douglas Barnes, D.D.S., Shaheer Yousaf, M.D., Mathew Mulqueen and Victor Wowk, M.D., were all "based on material misrepresentations: that the witnesses were properly served with a valid subpoena and failed to appear for deposition" and were "most assuredly aimed at harassing and intimidating opposing parties and expert witnesses".

As an example, the circumstances in which Dr. Shepard was involved are typical of the entire group of experts. Judge Doory found that Mixter had noted the deposition of Dr. Shepard and had included the *Varner* opinion with the notice of deposition. When Dr. Shepard's employer requested advance payment of his fees, Judge Doory noted that Mixter cancelled the deposition, refused to pay Dr. Shepard's fee and called Dr. Shepard to threaten contempt if Dr. Shepard did not appear at the deposition. Judge Doory found that Mixter subsequently filed a Motion to Hold Dr. Shepard in Contempt in which he misrepresented to the court that Dr. Shepard had been properly served; the circuit court, subsequently, in reliance on Mixter's misrepresentation, issued a Show Cause Order directed at Dr. Shepard that Mixter was to serve on the doctor by October 10, 2009. Judge Doory found that Mixter, then, on October 19, 2009, filed a false Affidavit of Service which misrepresented that Dr. Shepard had been served on October 6, 2009:

> On June 17, 2009, Respondent noted the deposition of Douglas M. Shepard M.D., the Plaintiff's treating physician, for August 7, 2009, in *Gnip*. Enclosed with the subpoena and notice of deposition was a copy of the *Varner* opinion. MedStar Health, Dr. Shepard's employer, requested Dr. Shepard's fees be pre-paid in the amount of $750.00 per hour. On August 6, 2009, Respondent cancelled the deposition and refused to pay Dr. Shepard's fee. On or about August 6, 2009, the Respondent called Dr. Shepard, used colorful language, told him that he would not pay his fee and threatened to hold him in contempt of court if he did not appear at deposition.
>
> On or about September 25, 2009, the Respondent filed a Motion to Exclude and/or Motion to Hold in Contempt Douglas M. Shepard, M.D. In the motion the Respondent misrepresents to the court that Dr. Shepard "was served on June 17, 2009" and directs the court to the attached green card. The green card is signed, not by Dr. Shepard but by "N. Flavers." On September 30, 2009, in reliance on the Respondent's misrepresentation, the court issued a Show Cause directed at Dr. Shepard. The Show Cause Order required Dr. Shepard be served on or before October 10, 2009. On October 19, 2009, the Respondent filed an Affidavit of Service in which he falsely certified that the Show Cause Order was served on Dr. Shepard "on or about

51

October 6, 2009 by evidence of the signature on the return receipt attached to this affidavit as Exhibit 'A'". The return receipt attached shows that the certified mail was not sent restricted delivery as required by Rule 2-121 and was not signed for by Dr. Shepard. On October 19, 2009, the case settled. On October 20, 2009, Dr. Shepard's Attorney, Shannon M. Marshall, Esquire filed Non-Party Douglas Shepard, M.D.'s Response to Defendant's Motion to Hold Dr. Shepard in Contempt.

## III. Judge Doory's Conclusions of Law

After delineating these comprehensive findings of fact, Judge Doory then determined the following conclusions of law:

### Rule 3.1. Meritorious Claims and Contentions.

The Court finds that each of the frivolous motions the Respondent filed as discussed herein is a violation of Rule 3.1. Additionally the Court finds that the Respondent's bringing and pursing the *Railey* litigation violates Rule 3.1. Failure to promptly dismiss the Defendant Leo Cline is particularly egregious.

### Rule 3.2. Expediting litigation.

The Court finds the Respondent's pattern of practice as demonstrated in the cases at issue herein violates Rule 3.2. Specifically, the Court finds the Respondent's filing of frivolous motions, requesting hearings on every motion and opposition filed, generally acting in an obstructionist manner and failing to cooperate with opposing counsel in the orderly taking of discovery including exchanging written discovery and taking depositions, creating protracted fee disputes with experts and causing confusion for opposing parties, witnesses and the courts all knowingly and purposefully delays litigation and cannot be said to be in the best interest of the client.

### Rule 3.3. Candor Toward the Tribunal.

The Court finds that the Respondent routinely made false statements of material fact to the courts in violation of Rule 3.3(a)(l) and (a)(4). In addition to the specific misrepresentations to the court outlined in the section entitled "Misrepresentations and Disregard for Court Orders and Directives," the Respondent routinely misrepresented that out-of-state witnesses were subject to the jurisdiction of Maryland courts, valid subpoenas were issued and properly served, dates of service, that he made good faith efforts to

resolve discovery disputes prior to filing motions and that opposing parties or non-party witnesses had refused to respond to his efforts to resolve discovery disputes.

### Rule 3.4. Fairness to Opposing Party and Counsel.

The Court finds the Respondent violated Rule 3.4(a) by obstructing Dr. Simon's access to evidence and thereby facilitating his client in the destruction of evidence in the *Chineme* case. The Respondent and his client were present during Dr. Simon's initial inspection and learned the specific areas that would be subject to testing. When Dr. Simon returned months later to conduct his inspection and gather samples, the property had been repaired. The Respondent took no steps to preserve the evidence that the Plaintiff needed to pursue her claim although the attorneys discussed this very possibility.

In addition to knowingly disobeying the rules of procedure as outlined, the Court finds that the Respondent knowingly and intentionally disobeyed specific court orders and directives as stated in the section entitled "Misrepresentations and Disregard for Court Orders and Directives" in violation of Rule 3.4(c).

The Court finds that the Respondent abused his authority, as an officer of the court, to issue frivolous subpoenas and make frivolous discovery requests and demands in violation of Rule 3.4(d).

The Court finds that the Respondent, in requesting the Plaintiffs' doctors to not speak with defense counsel in *Pearson* violated Rule 3.4(f).

### Rule 4.1. Truthfulness in Statements to Others.

In addition to the false statements made to the courts as discussed under Rule 3.3, the Court finds the Respondent made false statements of material facts to opposing parties and witnesses as described in the section entitled "Misrepresentation and Disregard for Court Orders and Directives."

The Court finds that the Respondent violated Rule 4.1(a) in that he made a false statement of law to third persons including: (1) stating, either directly or by way of motion, to witnesses that they could be held in contempt of court or subject to other sanctions for failing to appear at deposition where the witnesses were never properly served with a valid subpoena; (2) stating to non-party out-of-state witnesses that they were required to comply with a Maryland subpoena; (3) stating to parties or witnesses that they were compelled to appear for deposition at a location in violation of Rule 2-413.

### Rule 4.4. Respect for Rights of Third Persons.

The Court finds that the Respondent knowingly abused his authority, as an officer of court, to routinely attempt to do discovery that has no substantial purpose other than to embarrass, delay or burden the witnesses and/or opposing party. The Court finds that the Respondent, knowingly and intentionally sought medical records in violation of the HIPAA requirements and/or the Health-General Article by failing to properly serve medical providers with valid subpoenas and failing to send the required assurances that no objection to the subpoenas had been made. Seeking psychiatric records contrary to court orders and seeking lifelong traffic histories would have no purpose other than to embarrass.

### Rule 5.3. Responsibilities Regarding Non-lawyer Assistants.

In view of Respondent's testimony in trial and at deposition that he takes complete responsibility for any and all product by his office, the Court is not convinced by clear and convincing evidence that Respondent violated Rule 5.3(c).

### Rule 8.1. Bar Admission and Disciplinary Matters.

In view of extensive records and documents provided by Respondent and counsel, the Court is not convinced by clear and convincing evidence that Respondent violated Rule 8.1.

### Rule 8.4. Misconduct.

The Court, as discussed herein, having concluded that Respondent violated multiple Rules, concludes that Respondent has also committed misconduct in violation of Rule 8.4(a). *See Att'y Griev. Comm'n v. Foltz*, 411 Md. 359, 411, 983 A.2d 434, 465 (2009) (internal citations omitted).

As discussed herein the Respondent's ordinary and usual pattern of practice was laden with deceit and consistent misrepresentations to the courts, parties and witnesses of both fact and law in violation of Rule 8.4(c).

Most assuredly, the Respondent's conduct was prejudicial to the administration of justice in violation of Rule 8.4(d). The Respondent's pattern of practice is to bend and break the rules to bully, harass and attempt to intimidate both parties and witnesses. . . . The Respondent conducts discovery and pretrial depositions by bludgeoning his opponents and witnesses with unreasonable demands, frivolous motions and unnecessary acrimony. The effect of the Respondent's conduct is clear: his opponents

and witnesses are forced to spend time and money and expend emotional energy defending against his frivolous requests and demands, the court dockets are clogged and the ordinary and proper resolution of claims is delayed.

This is not a case of walking up to the line in the name of zealous representation. This is a case of consistent knowing and intentional violation of the Maryland Lawyers' Rules of Professional Conduct. The Respondent's argument that his actions are defensible in the name of "zealous representation" is rejected. Although zealousness is a standard of proper representation, zealousness without the counterbalance of reasonableness amounts to obstreperousness and unfairness. While the vigorous representation of client's interests is laudable, the Court cannot condone the Respondent's conduct which, without question, brings the profession into disrepute.

## Mitigation

Judge Doory did find that Mixter had proven that during the relevant time period he had suffered from increased stress as a result of his mother's death and his wife's treatment for cancer, and that Mixter had modified his office procedures regarding his interactions with witnesses, but did not accept other offered mitigation:

### Care Issues Involving Respondent's Wife and Mother

From January through July of 2010, Respondent was attending to his mother during her fatal bout with cancer. In April, May and June of 2012, Respondent was quite involved in his wife's diagnosis, treatment and convalescence from a brain tumor. Dr. Larry Carroll testifies that these situations increased the pressure Respondent was feeling and exacerbated Respondent's competitive personality. The Court accepts that this mitigation has been proven by a preponderance of the evidence.

### Respondent's Health Problems

In 2008 through 2009, Respondent was dealing with Atrial Fibrillation which is now primarily controlled by medication. In 2012 through 2013, Respondent was dealing with prostate cancer. The conditions each complicated Respondent's work circumstances to the extent that he would be hampered from making appearances and meeting deadlines. The Court accepts that this mitigation has been proven by a preponderance of the

evidence. The Court cannot accept mitigation as to active decisions made during these periods.

## Consultation with Larry Carroll, Ph.D.

At the suggestion of his trial counsel, Respondent met with Dr. Carroll, a Clinical Psychologist, seven times beginning in late 2012. It is Dr. Carroll's policy to take no notes and file no reports but he opines that Respondent does not have any mental health issues. While he finds Respondent to be normal, he does note that Respondent is ultra-competitive. For the sessions he did have with Dr. Carroll, Respondent was engaged in what Dr. Carroll called Cognitive Behavioral Therapy. Respondent told Dr. Carroll that he has modified his office procedures to communicate better with opposing counsel and potential witnesses. To deal with Respondent's ultra competitive personality, Dr. Caroll suggested the technique of "pausing" before responding to his initial instinct.

The Court finds the results of Respondent's limited contact with Dr. Carroll to be very minor and cannot accept this as mitigation proven by a preponderance of the evidence.

## Modification of Office Procedures

Respondent testified, and discussed with Dr. Carroll, that he has modified the procedure in his office to require additional calls and letters to witnesses and waiting well beyond thirty (30) days before reacting to failures to provide information. These changes seem minor and do not involve working with opposing counsel to solve problems; but they are an improvement. The Court will accept that this mitigation has been proven by a preponderance of the evidence.

## Limited Number of Cases and Minor Nature of Violations

Respondent estimates that his firm has handled over thirty five hundred cases. Between six and seven hundred cases would be involved in the time covered by this investigation. Twenty-two cases would represent approximately three-percent of his firm's workload. It is a minor but significant percentage. It is also argued that the infractions are each quite venial. If the number of cases and the number of infractions within each case were substantially less, this argument would hold more weight. The Court cannot accept this as mitigation proven by a preponderance of the evidence.

## Court Imposed Deadlines

Both the Respondent and his expert Mr. Fell testified about the increased pressure on attorneys involved in the discovery process generated by court imposed deadlines pursuant to the new case management policies. All attorneys are subject to this and the Maryland Rules still apply. The court does not accept this as mitigation.

**Devotion of his Clients**

Respondent presents the testimony of five of his many clients as a sampling of the high regard with which he is held by his clients. There is no question he is well respected by those he represents. The question for this Court is how he is recognized by all of the parties in the system. Review of the extensive documents submitted by Petitioner and Respondent disclose that he has been admonished, sanctioned or scolded by at least sixteen different judges during this period. The Court cannot accept the devotion of his clients as mitigation.

## IV. Discussion

"This Court has original and complete jurisdiction over attorney discipline proceedings in Maryland." *Attorney Grievance v. O'Leary*, 433 Md. 2, 28, 69 A.3d 1121, 1136 (2013), quoting *Attorney Grievance v. Chapman*, 430 Md. 238, 273, 60 A.3d 25, 46 (2013). "[W]e accept the hearing judge's findings of fact as prima facie correct unless shown to be clearly erroneous." *Attorney Grievance v. Fader*, 431 Md. 395, 426, 66 A.3d 18, 36 (2013), quoting *Attorney Grievance v. Rand*, 429 Md. 674, 712, 57 A.3d 976, 998 (2012). We conduct an independent, de novo review of the hearing judge's conclusions of law, pursuant to Maryland Rule 16-759(b)(1).[44]

---

[44] Maryland Rule 16-759(b) provides, in pertinent part:
(b) **Review by Court of Appeals.** (1) Conclusions of law. The Court of Appeals shall review de novo the circuit court judge's conclusions of law.

Mixter noted over one hundred and fifty exceptions to Judge Doory's findings, as well as an exception to each of Judge Doory's conclusions of law. Bar Counsel noted no exceptions to Judge Doory's findings and conclusions.

**A. Mixter's Exceptions to Judge Doory's Findings of Fact**

Mixter excepts to Judge Doory's general finding that "the sixty-two (62) motions for relief described in the attached Appendix Two (2), incorporated by reference herein, filed by the Respondent and directed at non-party witnesses were frivolous. The motions were frivolous because . . . the subpoena was ineffective as of the date of service because it did not provide the witness the requisite 30 days to produce documents as required by Maryland Rule 2-412(c)." Mixter asserts that even though he had served subpoenas which provided less than thirty days for the recipient to produce documents, that this error was "harmless". We disagree and overrule this exception, because Maryland Rule 2-412(c), which requires thirty days' notice prior to a documents deposition, is written in mandatory nomenclature of "shall". *See Dove v. State*, 415 Md. 727, 738, 4 A.3d 976, 982 (2010). When the term "shall" is used in a Maryland Rule it "'denotes an imperative obligation inconsistent with the exercise of discretion.'" *Gaetano v. Calvert Cnty.*, 310 Md. 121, 124-25, 527 A.2d 46, 47-48 (1987), quoting *City of College Park v. Cotter*, 309 Md. 573, 588 n.23, 525 A.2d 1059, 1066 n.23 (1987). We disagree with Mixter.

Mixter also asserts, within the same exception, that he could move to compel compliance with subpoenas for which he had provided less than thirty days' notice for the production of documents, because the motions had not been filed until after thirty days elapsed from service. Maryland Rule 2-412(c), again, requires thirty days' notice in order

58

to secure subpoena enforcement. That a motion to compel was filed beyond thirty days after service is, therefore, irrelevant, because the time for the party's appearance, or for raising objections to the subpoena,[45] had already occurred, with less time than required by the Rule. We, accordingly, overrule this exception.

Mixter notes numerous exceptions based on the fact that Judge Doory did not find credible his testimony as well as that of some of his witnesses. We, however, generally, "defer to the credibility findings of the hearing judge." *Attorney Grievance v. Agbaje*, 438 Md. 695, 93 A.3d 262 (2014). "[T]he hearing judge is in the best position to evaluate the credibility of the witnesses and to decide which one to believe and, as we have said, to pick and choose which evidence to rely upon." *Attorney Grievance v. DiCicco*, 369 Md. 662, 683-84, 802 A.2d 1014, 1026 (2002), quoting *Attorney Grievance v. Monfried*, 368 Md. 373, 390, 794 A.2d 92, 101 (2002). *See also Attorney Grievance v. Sheridan*, 357 Md. 1, 17, 741 A.2d 1143, 1152 (1999) (stating that the hearing judge is "in the best position to assess first hand a witness's credibility."). As we have stated, a hearing judge "is free to disregard the testimony of Respondent if the judge believed the evidence was not credible." *Monfried*, 368 Md. at 390, 794 A.2d at 101.

Mixter excepts to all of Judge Doory's findings that he knowingly and intentionally engaged in misconduct. He initially argues that Judge Doory erred because there was no direct evidence to support that his impropriety was both knowing and intentional. We have

---

[45] Maryland Rule 2-510(e) provides that objections to subpoenas are to be made, "at or before the time specified in the subpoena for compliance".

said, however, that intent "may be inferred from circumstantial evidence", (*Attorney Grievance v. Jarosinski*, 411 Md. 432, 452, 983 A.2d 477, 489 (2009)), and that, even without an express disclosure of intent, "the sum of the circumstantial evidence" can demonstrate the Respondent's mental state. *Attorney Grievance v. Goodman*, 426 Md. 115, 131, 43 A.3d 988, 997 (2012).

Mixter initially takes exception that Judge Doory did not find credible his testimony that he had, in fact, attempted to resolve discovery disputes by telephoning opposing parties to resolve issues before he filed motions to compel. We defer to Judge Doory's credibility findings and also note that in Mixter's twenty-two case files, introduced into evidence and comprising thirty-two volumes, he did not include any notation nor preserve any documentation in any file, with respect to any such telephone conversations or attempted resolution of discovery disputes.[46] We overrule this exception.

Judge Doory found also that Mixter knowingly and intentionally misrepresented to various tribunals that he had engaged in good faith attempts to resolve discovery disputes as part of his Maryland Rule 2-431 certificates attached to the fifty-three motions listed in Appendix 6 and contained in Mixter's files. According to Judge Doory's findings, Mixter had attached to every one of his certificates of good faith, as evidence of his attempts to resolve the discovery disputes, a copy of his cover letter accompanying the original subpoenas mandating the production of documents and depositions. For example, within

---

[46] Interestingly, when a telephone call from a paralegal in Mixter's office had been made, it was actually noted in Mixter's files and in his certificate of good faith compliance.

Petitioner's Exhibit 18, which is comprised of Mixter's files from the *Mixter* litigation, was such a cover letter sent to Stephen Shechtel,[47] an attorney in Rockville, which stated:

> Enclosed please find a Notice of Deposition and Subpoena Duces Tecum, which is being served upon you via certified mail. If you would please forward copies of all documents requested by the date of the deposition it will not be necessary for you to testify or appear. **Please note that we are not authorizing the use of a record copy service. Additionally, we will not pay for any such services without written approval.**

(emphasis in original).

Judge Doory found that the cover letters were not representative of good faith attempts to resolve discovery disputes, because not only were they sent to witnesses before any dispute actually could have existed, but excusing a witness's presence if all documents are produced is not within the contemplation of the Maryland Rules for resolution of discovery disputes. The file reflects, moreover, that after Mr. Shechtel received the subpoena, he responded by letter objecting to it, asserting that: "the Subpoena was served not in accordance with Maryland Rules"; the documents sought were "outside of the Maryland Rules"; the documents deposition was scheduled "without the courtesy of an advance telephone call . . . on a date and at a time that [Mr. Shechtel was] unavailable; the request was "far too broad"; and the documents demanded "may constitute attorney work product and accordingly are not discoverable."

---

[47] Mr. Shechtel had represented the Cochran Defendants against Mixter in the *Railey* litigation, which was a precipitate to his being served with a subpoena in Mixter's individual case.

61

Without responding to Mr. Shechtel's letter, Mixter subsequently filed a Motion to Compel in which he asserted that Mr. Shechtel "did not comply with any of the terms of the subpoena", attaching to it his original cover letter, and in which he failed to mention Mr. Shechtel's letter or any documentation of true good faith efforts at conciliation of the dispute. Ultimately, the Circuit Court quashed the subpoena, based upon the objections Mr. Shechtel had sent to Mixter, which Mr. Shechtel included with his subsequent Motion for Protective Order. Upon a review of the record that Judge Doory had before him, just as in the *Mixter* case and Mr. Schechtel's interactions, for all the motions listed in Appendix 6, there was clear and convincing evidence from which the hearing judge could find that Mixter had knowingly and intentionally certified that he acted in good faith to resolve discovery disputes when, in fact, he had not. We, accordingly, overrule Mixter's objections to Judge Doory's findings listed in Appendix 6.

Judge Doory also had before him, listed in Appendix 7, twelve motions authored by Mixter and contained in his files—six to compel, three for contempt, two for sanctions (one of which was, in the alternative, a motion to compel) and one for a protective order—in which Judge Doory found that Mixter had knowingly and intentionally omitted reference to letters that attorneys had sent to him attempting to conciliate the discovery disputes before he filed the motions to compel, for contempt, for sanctions and for a protective order. Exhibit 18 includes an example chosen by Judge Doory to discuss, that being a Motion to Compel the production of documents from Steven A. Markey, III, from whom Mixter sought documents embodying any statements made by Mr. Markey to other

attorneys about Mixter "at any time whatsoever."[48]  Mr. Markey responded to the subpoena

by letter, included in Mixter's files, stating, "I have done a diligent search of my computer

records and I am unable to find any documents [responsive to your subpoena]"; Mr.

Markey, though, referred to a practice of his that he would engage in if approached about

Mixter:

> It is possible that one or more of [the *Mixter* defendants] were provided with
> a copy of the Order from [the Honorable] Susan Souder, a copy of the
> Opposition to Defendant's Motion to Compel Independent Medical
> Examination and Request for Sanctions in the matter of *Lewis v. Edison
> Schools, Inc.*, or a copy of the U.S. District Court Opinion in the matter of
> *Higgenbotham v. KCS International, Inc.*[49]  I have enclosed copies of these
> documents for your convenience.  If and when I receive inquires about Mark
> T. Mixter, these are the documents I would possibly provide.

Subsequently, Mixter filed a Motion to Compel the deposition and production of

documents from Mr. Markey, in which he entirely omitted any reference to Mr. Markey's

letter; instead, the motion included only an identical version of the cover letter, discussed

---

[48] Judge Doory also included the broad request directed at Mr. Markey as an example of
Mixter's abuse of the subpoena power.

[49] In *Higgenbotham v. KCS Int'l, Inc.*, 202 F.R.D. 444, 446-47 (D.Md. 2001), while
Mixter, representing Higgenbotham, was deposing an expert for KCS, KCS's attorney
incorrectly authorized the deponent to leave before the deposition was through.  Three
weeks later, in an act found by the magistrate judge to be "an express act of retaliation, Mr.
Mixter directed his expert witness to walk out in the midst of his deposition, over the
objection of [opposing counsels]."  *Id.*  The magistrate sanctioned Mixter for his "lack of
professionalism" and for conduct that "was purely retaliatory, entirely knowing and
purposeful and thus utterly out-of-bounds."  *Id.*

*supra*.[50] Upon a review of the record, there are no instances in which Mixter included either the substance of material correspondence from opposing counsel regarding a discovery dispute or the correspondences themselves in his discovery motions, just as with Mr. Markey. We overrule Mixter's exception to Judge Doory's finding in each instance listed in Appendix 7.

Judge Doory also found that that Mixter had intentionally and knowingly misrepresented to the Circuit Court for Anne Arundel County, in the *Koontz* litigation, that the custodian of records for Dr. Eckel had been served with a subpoena for a documents deposition, "on or about 21st day of April, 2010". To his Motion to Compel documents from Dr. Eckel, Mixter had attached a United States Postal Service "Track & Confirm" receipt for the subpoena which revealed that it had not been delivered until April 27, 2010, six days after Mixter had claimed service had been accomplished and had actually been returned to Mixter's office on April 29, 2010. The problems with service on Dr. Eckel, however, had not been revealed in the Motion filed by Mixter. We, accordingly, overrule Mixter's exception to Judge Doory's finding that he knowingly and intentionally misrepresented to the Circuit Court judge in *Koontz* that Dr. Eckel had properly been served.

---

[50] Mixter withdrew the original Motion to Compel after he issued, for a second time, a subpoena to Mr. Markey. Mr. Markey had objected to the original subpoena and filed a motion for a protective order. Mixter filed a second Motion to Compel, as to the second subpoena, together with his response to Mr. Markey's motion for a protective order. Judge Doory found that the forgoing demonstrated that Mixter's "purpose was to harass Mr. Markey".

64

Judge Doory found, as well, that, in the *Mixter* litigation, Mixter had intentionally and knowingly attempted to enforce an unserved subpoena commanding the personal appearance of, and the production of documents from, the custodian of records for Dr. Michael Conte. Judge Doory's finding was premised on Mixter's files, which reflect not only that, on March 8, 2012, Mixter had mailed a documents subpoena to Dr. Conte, but that the subpoena had been returned to Mixter's office and, on April 18, 2012, he had resent the subpoena to Dr. Conte by first-class mail, which our Rules do not contemplate as adequate service. On April 18, 2012, Mixter, however, filed a Motion to Compel in which he asserted that the subpoena had been served "on or about March 6, 2012", but he must have known the subpoena had not been served by the very fact that he had resent it. We, accordingly, overrule Mixter's exception to Judge Doory's determination that he had intentionally and knowingly attempted to enforce an unserved subpoena on Dr. Conte in the *Mixter* litigation.

Judge Doory found that Mixter had knowingly and intentionally attempted to enforce twenty-four Maryland subpoenas to out-of-state witnesses, which are identified in Appendix 3, without having followed the protocols for issuing enforceable out-of-state subpoenas. Maryland Rule 2-413(a)(2) mandates that a nonparty may only be "required to attend a deposition outside of this State in accordance with the law of the place where the deposition is held." Mixter, however, issued the twenty-four subpoenas, and attempted to enforce them, without having acted "in accordance with the law of the place" where the various out-of-state witness were located.

Judge Doory specifically identified, in the *Mixter* files, an instance in which Mixter had intentionally misrepresented to a witness that he had complied with Maryland Rule 2-413(a)(2). Judge Doory observed that Mixter had mailed to TrialSmith, Inc., located in Austin, Texas, a notice of deposition, a Baltimore City subpoena for a documents deposition and an unsigned Commission to Take Foreign Deposition. According to Judge Doory, the inclusion of an unexecuted commission was an intentional misrepresentation by Mixter to TrialSmith that he had complied with Section 20.002 of the Texas Civil Practice and Remedies Code. After a review of the record accompanying each subpoena listed in Appendix 3, in every instance, as with TrialSmith, Mixter had attempted to enforce subpoenas for documents depositions served on out-of-state fact-witnesses in which he had failed to follow the rubric for issuance of such deposition subpoenas. We, accordingly, overrule Mixter's exception to Judge Doory's finding that he had knowingly and intentionally attempted to enforce the subpoenas identified in Appendix 3.

Judge Doory also found that Mixter had intentionally and knowingly misrepresented to non-party witnesses residing in other states that they could be compelled to appear and produce documents in Maryland. Judge Doory found that Mixter knew that every one of the thirty-five subpoenas listed in Appendix 4 was directed at a witness outside of Maryland, but did not comport with the proper procedures for the issuance of subpoenas to non-party witnesses outside of Maryland. While Mixter knew an out-of-state witness could not be compelled to attend a deposition in Maryland, as discussed *supra*, the subpoenas, in emphasized print, stated "you are liable to body attachment and fine for failure to obey this

66

subpoena."[51]  Mixter, in his cover letter included with the subpoenas, which we also have

discussed *supra*, stated to the recipients that their attendance could be compelled by

informing them that, "if [they] would please forward copies of all documents . . . it will not

be necessary for [them] to testify or appear", thereby implying that the appearance of out-

of-state witness could otherwise be compelled.[52]  We overrule Mixter's exception to Judge

Doory's finding that he intentionally and knowingly misrepresented to non-party, out-of-

state witnesses, in connection with each subpoena identified in Appendix 4, that their

appearance could be compelled at a documents deposition in Maryland.

Judge Doory, also, found that in seven subpoenas in Mixter's files from five cases,

Mixter had intentionally and knowingly misrepresented to non-party residents of Maryland

that they could be compelled to appear and produce documents outside of their counties of

residence or employment,[53] in contradiction to the mandate of Maryland  Rule 2-

413(a)(1).[54]  As with the subpoenas directed to out-of-state witnesses, discussed *supra*, the

---

[51] While the subpoenas from various circuit courts differ in their manner of emphasizing the body-attachment warning, all subpoenas did include such a warning.

[52] In fact, Judge Doory observed that Mixter acknowledged that out-of-state, non-party witness cannot be compelled to appear in Maryland where, in Mixter's files from the *Garnett* litigation, there is a letter he had written to opposing counsel in which he averred, "the notice of deposition and [Maryland] subpoena are ineffectual for a Pennsylvania witness."

[53] Judge Doory noted that Mixter had attempted to enforce four of the seven subpoenas when the putative deponent challenged its enforceability.

[54] Interestingly, Judge Doory noted that Mixter knew Maryland Rule 2-413(a)(1), because, within Mixter's files from the *Garnett* litigation, is a Motion to Hold in Contempt in which he emphasized that witnesses located in Cecil and Baltimore Counties could not be compelled to travel to Baltimore City for a deposition.

subpoenas directed to in-state residents had contained the same highlighted language notifying the recipients that they could be subject to body attachment for non-appearance at the deposition and Mixter had included the same cover letters indicating that he would take action to compel the witnesses' appearance.

For example, Mixter's files from the *Mixter* litigation contain a subpoena, served on the Maryland Association for Justice, a non-party with its principal office in Howard County, commanding the personal appearance of, and production of documents from, its representative at Mixter's office in Baltimore City. The Association objected to the subpoena on the grounds that, *inter alia*, it was unenforceable, because it violated Maryland Rule 2-413. Mixter, in response, however, asserted that the Maryland Rule 2-413 violation "does not render the subpoena unenforceable." Upon a review of the record pertinent to the other six subpoenas, Mixter had included the same subpoenas and cover letters which put the recipients on notice that their physical appearance could be compelled, so that we overrule Mixter's exception to Judge Doory's finding that Mixter had intentionally and knowingly misrepresented to non-party residents of Maryland that they could be compelled to appear and produce documents in violation of Maryland Rule 2-413(a)(1).

Judge Doory found, as well, that Mixter had knowingly and intentionally misrepresented to Judge J. Frederick Motz of the United States District Court for the District of Maryland, during the *Byrne-Egan* litigation, that the third-party defendant had admitted to a failure to timely respond to discovery requests. Mixter's files from the *Byrne-Egan* litigation, which had been admitted into evidence as Petitioner's Exhibits 3 and 4, contain a Motion to Compel the third-party defendant's answers to interrogatories and

production of documents, filed on December 2, 2011. The third-party defendant's Response, filed on December 19, 2011, included within Mixter's files, contained only three affirmations, none of which admitted to a failure to timely respond to Mixter's discovery requests:

1. This case was removed to Federal Court by Empire after it filed a Third Party Complaint against Seay in State Court and she filed a counterclaim.
2. Seay avers that this court has no jurisdiction in this matter and she has filed a Motion to Remand to State Court which has yet to be ruled upon.
3. In any event, Seay intends to respond to Empire's discovery requests within ten days.

In Mixter's letter to Judge Motz the very next day Mixter asserted, however, that the third-party defendant had "admit[ed] to the plaintiff's failure to timely answer my client's discovery requests", which was not reflective of the state of affairs. We, accordingly, overrule the exception.

Judge Doory also found that Mixter had attempted to obtain the opposing parties' health care records during the *Byrne-Egan* and *Koontz* litigations by knowingly and intentionally misrepresenting to the health care providers that no objection had been made to the disclosure of such records. Mixter's files from *Byrne-Egan* show that, on February 21, 2012, the third-party defendant filed a Motion for a Protective Order to "bar the inquiry into and the disclosure of the unrelated mental health history of Emily Seay" and that, on March 5, 2012, Mixter filed a response to the motion for a protective order. Mixter, despite having responded to the motion for a protective order as to Ms. Seay's health care records, sent a letter to her health care providers that stated, "Emily Ann Seay . . . has not objected

69

to the disclosure of the requested medical records." Accordingly, we overrule this exception.

In *Koontz*, Judge Doory also found that Mixter had attempted to obtain the plaintiff's medical records by knowingly and intentionally misrepresenting to the plaintiff's health care providers that no objections to such disclosure had been made. Mixter's files from the *Koontz* litigation show that Mixter had issued subpoenas to nineteen of the plaintiff's healthcare providers on April 21, 2010, requesting the plaintiff's medical records and that, on May 5, 2010, the plaintiff filed an "Emergency Motion" for a protective order or to quash or limit those nineteen subpoenas. Sixteen days later, Mixter sent a letter to the health care service providers, a sample of which is contained in his files, wherein he disregarded the existence of the Emergency Motion and informed the providers that, "[the plaintiff] and her attorney have not objected to the disclosure of the requested medical records. Please forward the responsive records at your earliest convenience." Mixter's files support Judge Doory's finding that Mixter had made intentional misrepresentations to the plaintiff's health care providers. We overrule this exception.

Judge Doory also found that Mixter had knowingly and intentionally misrepresented to Judge Deborah K. Chasanow of the United States District Court for the District of Maryland, in the *Davis* litigation, that the defendants had been properly served with the complaint. Mixter's records, contained in Petitioner's Exhibit 7, include return receipts from the mailed complaints that were that were signed on March 12, 2010. The receipts, however, were not signed by the defendants, as Judge Doory observed and as Mixter himself testified at the hearing before Judge Doory. Mixter, nonetheless, had included the

70

return receipts as exhibits to affidavits he had executed under oath in which he affirmed to Judge Chasanow "that a complaint was duly served upon [the defendants] on or about March 12, 2010 by evidence of the signature on the return receipt attached to this affidavit". The record supports the finding that Mixter had made an intentional misrepresentation to Judge Chasanow; we, therefore, overrule this exception.

Judge Doory found that Mixter had knowingly and intentionally obstructed his opposition's access to evidence in *Pearson* by sending a letter to his client's physicians requesting that they not speak to opposing counsel, despite a court order authorizing such communication. Mixter's files from the *Pearson* litigation, received into evidence as Petitioner's Exhibit 21, include an Order from a Judge on the Circuit Court for Prince George's County, issued May 18, 2012, permitting the parties to "engage in *ex parte* discussions with treating healthcare providers" and allowing "any third-party who is provided with a subpoena requesting the production of documents or commanding attendance at deposition or trial to disclose Protected Health Information in response to such request or subpoena." Mixter's files also contain a letter he had sent to one health care provider, dated just three days after the order, in which he told the physician, after acknowledging the Order, to "refuse to discuss Ms. Pearson's treatment" with the opposition. We overrule Mixter's exception to Judge Doory's finding that Mixter had intentionally attempted to prevent opposing counsel from speaking to his client's physicians in *Pearson*.

Judge Doory, thus, had clear and convincing evidence that had been contained within Mixter's own files from which he could find that Mixter had acted knowingly and intentionally in making the various misrepresentations to courts, as well as to witnesses.

Mixter also notes exceptions to Judge Doory's findings that various Maryland subpoenas had been improperly served on out-of-state witnesses, because, Mixter argues, Bar Counsel had not presented proof that the various deponents had not consented to a waiver of the Rules. As we have discussed, however, the Maryland Rules and statutes of the various other states in issue require additional protocols for an out-of-state witness to be compelled to attend a deposition.

For example, Mixter asserts that, regarding the *Alemu* litigation, "Petitioner also failed to produce any evidence that Maharishi University, while located [in Iowa], is not subject to Maryland's subpoena powers for other reasons or that an agreement had been entered into between the parties regarding requests for documents from out-of-state witnesses." The University is located in Iowa and only would have been subject to the authority of the Maryland courts, once Mixter complied with the strictures of Maryland Rule 2-413(a)(2), which would have required adherence to Section 622.84 of the Iowa Code, discussed *supra*. There was no documentation in Mixter's files that he had attempted to properly serve a subpoena on Maharishi University according to Iowa law or of an agreement waiving service, so that we overrule this exception. We overrule, as well, each of Mixter's similar exceptions premised on the assertion that Bar Counsel had failed to prove that the opposing party in each of the ten cases had not waived the Maryland Rules,

because, upon a review of the record, there are no such documents regarding waiver included in any of the relevant files that were maintained by Mixter.

Mixter also excepts to six specific findings that Maryland subpoenas had contained misrepresentations to six non-party, out-of-state recipients, that their attendance could be compelled in Maryland.[55] Mixter's exceptions are premised on the theory that the six witnesses became subject to jurisdiction in Maryland by allowing their designation as witnesses in Maryland courts.

We disagree, because Maryland Rule 2-413(a)(2) is explicit that a non-party witness outside of Maryland only may be required to attend a deposition in accordance with the laws of the State where the witness resides. By failing to follow the protocols of the various states in which the witnesses resided, Mixter issued unenforceable subpoenas and the recipients could not be compelled to appear in Maryland. Accordingly, we overrule these exceptions.

Mixter also excepts that Bar Counsel could not have proven that ten subpoenas, from five cases, had not been properly served, because no proof of service was presented

---

[55] The six findings by Judge Doory are that: the *Alemu* defendants' motion to exclude Dr. Mark Danzinger, a Washington D.C. resident, was frivolous, because the underlying subpoena did not properly compel the attendance of an out-of-state witness; the Maryland subpoena to the custodian of records for Joseph Cammarata, in *Alemu*, was improperly directed at a non-Maryland resident seeking the production of documents; the Maryland subpoena directed to Bartley Eckhardt, in *Alemu*, was improper, because the expert lived outside of Maryland; the Maryland subpoena to the custodian of records for Capital Reporting, a Washington D.C. entity, in *Alemu*, improperly sought documents from a non-Maryland citizen; the Maryland subpoena to Larry Dinoff, an expert in *Alemu*, was improperly directed at a non-Maryland resident; and the Maryland subpoena for Thomas Grogan, a non-Maryland expert in *Pearson*, was improper.

73

to Judge Doory. For example, Mixter argued that "Respondent excepts to the court's finding that the [Motion to Compel custodians of records of Blake Construction and Cunningham Contracting in *Koontz*] was frivolous as no evidence was presented regarding how or when the witness was served." Proper service of a subpoena by mail, in compliance with Maryland Rule 2-121(a)(3), discussed *supra*, necessarily would generate a return receipt as proof of proper service signed by the party to be served or his or her authorized agent; Maryland Rule 2-126(a)(3) manifests that an original return receipt so signed is required for proof of service by mail. There were no return receipts evidencing proper service signed for by a proper party within any of the five files at issue. We, accordingly, overrule Mixter's exception that Bar Counsel could not prove there had not been proper service due to a lack of proof of service.

Mixter also excepts to Judge Doory's findings that various motions to compel the production of records from health care providers were frivolous, because valid subpoenas had been served upon the providers. Judge Doory found, however, that in six instances from four cases Mixter had not complied with additional steps for obtaining health care records provided by Section 4-306 of the Health-General Article of the Maryland Code, discussed *supra*. The record reflects that Mixter had not complied with Section 4-306, because he had either failed to send a 30-day assurance letter altogether to the medical provider, or he had mailed the letter less than one week before he certified service of a motion to compel the records, thereby providing insufficient time for the production of documents. We, therefore, overrule this exception.

74

Mixter also excepts to Judge Doory's finding that, "Respondent had a pattern and practice of knowingly and intentionally noting depositions in the wrong venue". According to Mixter, Judge Doory erred because every subpoena for the production of documents in his files had included a cover letter stating that the witness would not have had to appear so long as the documents were produced. Judge Doory found, however, that every subpoena required personal appearance of the witness, because in every subpoena, in those same files, Mixter always had selected the option on the subpoena form that required the witnesses to "personally appear and produce documents or objects", rather than checking the option which provided, "produce documents and or objects only".[56] In so doing, Judge Doory found that Mixter had misrepresented to the witnesses that they could be compelled to appear in improper venues. Upon a review of the record, there are no instances in which Mixter issued a subpoena requesting only the production of documents, instead, he had sought the personal appearance of the recipient of his subpoenas. We, accordingly, overrule this exception.

Mixter also excepts to Judge Doory's finding that his "Motion to Hold in Contempt Various Custodians of Records" for absence at trial, filed in *Alemu*, was frivolous, because, according to Judge Doory, Mixter sought to hold non-party witnesses in contempt for their absence at a trial that had not taken place and that Mixter had moved to continue. Mixter asserts that Judge Doory erred in finding that it was he who had filed the motion to continue

---

[56] The subpoena forms for the various Maryland venues include three options: for personal appearance of the witness; for only the production of documents or objects from the witness; and for the personal appearance of the witness along with the production of documents or objects from the witness.

the trial date.  We sustain this exception, because the docket sheet in *Alemu* reflects that the motion for a continuance had been filed by one other than Mixter.

Whether Mixter had filed the motion to continue, however, was not dispositive with regard to Judge Doory's finding that the motion to hold the non-party witnesses in contempt was frivolous, because "there was no basis in fact or law to file a motion to hold non-party witnesses in contempt of court for failure to appear at a trial that did not take place."  Mixter's file containing the docket sheet from *Alemu* reflects that the Circuit Court Judge had granted a postponement, on June 17, 2010, while Mixter had filed his motion for contempt, within the subsequent month, on July 8, 2010.  We, accordingly, overrule Mixter's exception to Judge Doory's finding that the "Motion to Hold in Contempt various custodians of records" was frivolous.[57]

Mixter also excepts to Judge Doory's finding that the Motion to Compel the Custodian of Records of Maryland Dental Board to produce documents, filed in the *Canby* litigation on November 2, 2011, was frivolous.  As Mixter recognized in his exception, he sent notice of the deposition on October 20, 2011 for a deposition to be held on October

---

[57] We also note that Judge Doory found the motion was frivolous as the subpoena had been served on out-of-state witnesses, Bally's Total Fitness Corporate Office, California and Amgolf, Virginia, without a record that the proper protocols for those jurisdictions were followed.  Additionally, Judge Doory found that subpoena served on United Healthcare and the Worker's Compensation Commission were without compliance with Section 4-306 of the Health-General Article of the Maryland Code, and subsequent motions to compel were, therefore, frivolous.

31, 2011, which did not comport with the thirty-day requirement of the Maryland Rules.[58] We overrule this exception.

Mixter excepts to Judge Doory's finding that the Motion to Compel the custodian of records of CSC-Layers to produce documents in *Dunston* was frivolous for being untimely, because, Mixter argues, Judge Doory could not rely upon the Circuit Court's order denying the Motion to Compel to conclude that the motion itself, also included in the record, was frivolous. In the Order, which was included with Mixter's files from *Dunston* in Petitioner's Exhibit 8, Judge Audrey Carrion of the Circuit Court for Baltimore City denied the Motion to Compel as untimely, because it was filed "in violation of the discovery deadline defined in the Scheduling Order." This exception is overruled.

Mixter notes an exception to Judge Doory's finding that the Motion to Compel Custodian of Records of GEICO to produce documents in *Dunston* was frivolous, on the basis that the Motion to Compel was not part of the record before Judge Doory. Judge Doory could not have found that the motion to compel was frivolous, because that motion was not included in the *Dunston* files. We sustain this exception.

Judge Doory found, as well, that the Motion to Hold in Contempt the records custodian of GEICO was a frivolous motion directed at a non-party. Mixter also excepts

---

[58] The *Canby* defendant filed an opposition to the Motion to Compel in which she asserted that Mixter's motion was frivolous for a number of reasons, including that "the purported Notice of Deposition does not afford the Dental Board the requisite thirty (30) days required by Maryland Rule 2-412(c)." The Dental Board also filed a motion to quash the subpoena on the grounds that the documents requested were statutorily-protected, confidential records. At the trial in *Canby*, the Circuit Court Judge ultimately denied Mixter's request that a representative of the Dental Board be permitted to testify.

77

to this finding, on the basis that the Motion to Hold in Contempt was proper because GEICO had not complied with the order granting the previous motion to compel. Mixter's records from *Dunston* reveal, however, that the Motion to Hold in Contempt was untimely, because, according to an Order from the Circuit Court for Baltimore City denying the Motion to Hold in Contempt, "The Motion was filed in violation of the discovery deadline defined in the Scheduling Order." We, accordingly, overrule this exception.

Mixter next excepts to Judge Doory's finding that the Motion to Compel the custodian of records of Washington Hospital Center, located in Washington, D.C., to produce documents in the *Fitzgerald* litigation was frivolous, because, he asserts, he had properly complied with the District's rules for service, as evidenced by a Washington D.C. subpoena in his files from the *Fitzgerald* litigation. As we explained *supra*, however, in 2008, when the subpoena was issued, the District of Columbia required that a commission and notice be issued by the Circuit Court for Prince George's County. *See* D.C. Code § 14-103 (2008). We overrule this exception.

Mixter also notes an exception to Judge Doory's finding that the Motion to Compel production of documents from the Maryland Association of Justice filed in *Mixter* was frivolous. Mixter asserts that "the Maryland Association for Justice concedes that it was served a subpoena from Respondent". Service was not the issue, however, because the Association objected to enforcement of the subpoena on the grounds that the deposition

was mandated to be taken in the wrong county, in Mixter's office in Baltimore City.[59]  The

Association, ultimately, had secured a protective order.  We overrule this exception.

Mixter excepts to Judge Doory's finding that the Motion to Compel the production

of documents from the custodian of records for Dr. Rosenbaum contained a

misrepresentation to the Circuit Court for Prince George's County in the *Byrne-Egan*

litigation.  Mixter affirmed to the Circuit Court in the Motion to Compel that the witness

was served "on or about August 25, 2011".  Judge Doory observed, however, that "[t]he

green card is clearly from something else as it was dated August 16, 2011, more than a

week before the relevant subpoena was issued."  Mixter, however, urges that "while it

appears that the green card is dated '8/16/11' it is more likely that the green card is actually

dated '8/**26**/11'".  A review of the green card in Mixter's files that had been received into

evidence reflects the date as "8/16/11".  We, therefore, overrule this exception.

Mixter also excepts to Judge Doory's finding that he misrepresented to the Circuit

Court for Charles County in a Motion to Compel in *Keener* that an enforceable subpoena

for the production of documents had been served upon the Civista Medical Center.  Mixter,

in his exception, asserts that the subpoena was enforceable, because it was served on

Civista, located in Charles County, on September 21, 2009, and he sought production of

---

[59] Paragraph 2 of the Association's filing states, in pertinent part:

> The Subpoena improperly states the location of the deposition is the offices
> of the Mark T. Mixter, 20 South Charles Street, 9th Floor, Sun Life Building,
> Baltimore, Maryland 21201.  However, the M[aryland] A[ssociation for]
> J[ustice] is not a party to the matter and resides and engages in business only
> in Howard County, Maryland.  Therefore, pursuant to Md. 2-413, the
> Subpoena is invalid and unenforceable.

documents at his office in Baltimore City on October 19, 2009.  Furthermore, Mixter excepts on the basis that he had sent thirty-day assurance letters to Civista, in compliance with Section 4-306 of the Health-General Article of the Maryland Code, on October 22, 2009.

The subpoena directed at Civista, however, was unenforceable, because it sought the production of documents from a non-party witness in the wrong jurisdiction, as mandated by Maryland Rule 2-413, discussed *supra*.  Furthermore, under Maryland Rule 2-412(c), Civista had thirty days within which to produce documents, but the subpoena for the production of documents called for fewer days.  Under Section 4-306 of the Health-General Article of the Maryland Code, finally, Civista could not have produced the documents on October 19, before it had received the 30-day assurance letters on October 22.  We, therefore, overrule Mixter's exception.

Mixter notes an exception to Judge Doory's finding that the Motion to Compel the production of medical records from the United States Department of Health and Human Services in *Fitzgerald* was frivolous, because the Department had been properly served at its Maryland office.  Judge Doory's finding that the Motion to Compel was frivolous, however, was based on the fact that Mixter had misrepresented to the Circuit Court for Prince George's County that he had complied with Maryland Rule 2-431, discussed *supra*.  Mixter in fact, however, had not engaged in good faith efforts to resolve the dispute, and he had omitted from the motion relevant correspondence from the Department, such as letters he received notifying him that he was required to first obtain consent from Ms.

Fitzgerald for the release of the requested documents. We accordingly overrule his exception.

Mixter excepts to Judge Doory's finding that, in *Koontz*, the Motion to Compel the production of documents from the custodian of employment records for the United States Internal Revenue Service was frivolous, because he had properly served an enforceable subpoena on the Internal Revenue Service in Annapolis. Judge Doory had found, however, that the Motion to Compel was frivolous, because there had been no proof of service of the subpoena, which is supported by a review of Mixter's files in *Koontz*. We overrule this exception.

Mixter also excepts to Judge Doory's finding that the Motion to Compel supplemental answers to interrogatories from the plaintiff, filed in the Circuit Court for Prince George's County in *Byrne-Egan*, was a frivolous motion, because there had been no good faith attempts at resolution of the discovery dispute. We sustain this exception, because the record contains a copy of the opposing party's Answer to Motion to Compel in which they admit to having submitted incomplete answers to interrogatories.[60]

Mixter excepts as well to Judge Doory's finding as frivolous the Motion in Limine to preclude Ms. Emily Seay from testifying as to her alleged emotional distress in the *Byrne-Egan* litigation. Mixter argues that the Motion in Limine was proper "as it sought to preclude the Third-Party Defendant from introducing evidence of mental or psychological damages after a protective order had been entered precluding Respondent

---

[60] The docket from *Byrne-Egan*, included in Mixter's files, shows no attempt by Mixter to pursue sanctions against the plaintiff.

from obtaining medical records relating to said damages." Judge Doory's finding was based on the fact that Ms. Seay stipulated that, "[she] is making no claim of psychiatric injuries as a result of this accident."[61] As a result, Mixter's Motion in Limine was frivolous, and we overrule the exception.

Mixter also notes an exception to Judge Doory's finding that the Motion for Contempt filed in *Canby* to preclude Douglas Barnes from testifying and for sanctions was frivolous, because, he argues, "[t]his motion was directed at an expert witness for Defendant. Therefore, Respondent excepts to the court's use of this motion to support its claim that Respondent filed frivolous motions directed at opposing parties." Mixter also excepts, with regards to Judge Doory's use of the Motion for Contempt to preclude Dr. Barnes, "to the trial court's finding that the filing of a Motion [for Contempt][62] against Dr. Barnes was a material misrepresentation to the Court."

Judge Doory, however, had only made two findings with regards to the Motion for Contempt to preclude Dr. Barnes: that the motion contained a false certification of good faith efforts at resolution of a discovery dispute, (*see* Appendix 6 ("Vol. 6, tab 31")), and that the motion exemplified Mixter's use of motions for contempt in order to "harass[] and intimidat[e] opposing parties and expert witnesses by threatening an order of contempt in an attempt to force the expert to appear at a deposition on terms, often unreasonable, set by

---

[61] In three separate paragraphs in Ms. Seay's Motion for a Protective Order she repeated that psychiatric damages were not being sought.

[62] In his exceptions, Mixter refers to the Motion for Contempt as a Motion to Compel. Judge Doory, however, made no findings with regards to a Motion to Compel Dr. Barnes and we conclude that Mixter had intended to refer to the Motion for Contempt.

the Respondent or be excluded from testifying at trial." With respect to Dr. Barnes

specifically, Judge Doory found:

Douglas Barnes, D.D.S.

       On July 21, 2011, the Respondent filed Plaintiff's Motion for Contempt and to Preclude Douglas Barnes, D.D.S., from Testifying as a Witness on Behalf of the Defendant and for Sanctions in *Canby*. In the motion, the Respondent did not even allege that a subpoena was issued or served. Nonetheless, he requested the court hold Dr. Barnes in contempt for failing to voluntarily change the start time of the second day of his deposition from 10 a.m. to 9 a.m. to accommodate the Respondent's schedule. On August 3, 2011, the Circuit Court for Anne Arundel County denied the motion.

(internal record citations omitted). Mixter's files from *Canby* do not show any subpoena

related to the Motion for Contempt and the exhibits included with the Defendant's Answer

to Plaintiff's Motion for Contempt reveals the truth, that Mixter had filed the Motion for

Contempt in an attempt to force Dr. Barnes's deposition to move forward on Mixter's own

terms.[63] We, accordingly, overrule Mixter's exception.

---

[63] The *Canby* defendant presented the following timeline in its Opposition to Plaintiff's Motion for Contempt, as supported by documentation attached to the Opposition and included in Mixter's files:

       Dr. Barnes first appeared, ***and was deposed***, on May 24, 2011 but that deposition was suspended by ***Plaintiffs' counsel*** because of an error by the court reporter who arrived late. It was agreed, at that time, that Plaintiffs' counsel would conduct the deposition via telephone. . . .

    a. On June 22, 2011, [Mixter] forwarded a correspondence indicating he was available the morning of July 15, 2011 for the second part of Dr. Barnes' deposition.

    b. On June 28, 2011, [Defense] counsel spoke with [Mixter's assistant], to advise that the defense was still trying to clear dates with Dr. Barnes' office for his deposition. . . .

    c. On June 30, 2011, unaware of the unilateral scheduled "Resumed" Notice of Deposition, [defense] counsel emailed [Mixter] to advise that Dr.

(continued . . . )

Mixter excepts to Judge Doory's finding that the Motion to Compel answers to interrogatories and the production of documents from the opposition in the *Greenstein* litigation was frivolous, because Judge Doory had improperly relied upon "an order entered by Judge Fader in reference to Respondent's motion to compel". The Fader Order, contained in Mixter's files from *Greenstein* received into evidence as Petitioner's Exhibit 14, in emphasized print, denied the Motion to Compel because, "**There is no satisfactory**

---

(continued . . . )

Barnes was available for deposition at 10:00 or 11:00 on July 15th. . . .

d. On July 14, 2011, staff from [Mixter's] office began calling defense counsel inquiring as to the timing of the July 15th deposition. During those conversations, [defense counsel's] assistant advised that [their] office had the deposition calendared to start at 10:00 a.m., but offered to try and move it earlier, to 9:30 a.m. . . .

e. On the morning of July 15th . . . [Mixter] called [defense] counsel's office several times to confirm a 9:30 a.m. start time for the deposition. . . .

f. [Defense] counsel, Dr. Barnes, and the court reporter were set up and ready to begin Dr. Barnes' deposition at 9:30 a.m. Shortly after that time . . . we called [Mixter's] office to learn that he was not in the office but there was apparently an AT&T teleconference scheduled so counsel could participate from an undisclosed location. . . . [S]hortly before 9:45 a.m. all parties were joined on the AT&T conference call, at which time [Mixter] refused to go forward citing some undisclosed conflict. . . .

g. Later that same day, [defense] counsel faxed [Mixter] a correspondence confirming the above and requesting payment for the actual costs associated with the aborted deposition . . .

h. On July 18, 2011, [Mixter] faxed the defense a unilateral demand that Dr. Barnes' reappear for a deposition.

i. . . . [Defense] counsel offered to reproduce Dr. Barnes for a third deposition provided Plaintiffs would pay the actual costs associated with the aborted second deposition. . . . [Mixter] made no further attempt to avoid this dispute but, rather, filed the instant motion.

(emphasis in the original, internal citations omitted). At a motions hearing on a number of open discovery motions before the Circuit Court, the hearing judge set the deposition date for Mixter to complete his examination of Dr. Barnes.

**certificate of good faith efforts to resolve the discovery dispute as required by the Maryland Rules.**" We, accordingly, overrule this exception.

Mixter also notes an exception to Judge Doory's finding that the Motion to Dismiss and/or for Sanctions for Plaintiff's Complete Failure to Provide Discovery in the *Koontz* litigation was a frivolous motion directed at the opposing party. Judge Doory found that Mixter had not acted in good faith by creating the discovery dispute, because Mixter had made unreasonable demands of his opposition, attempted to enforce those demands without any good faith effort at conciliation and, further, that Mixter had not presented evidence that the opposition refused to agree to his demands:

> The Respondent propounded discovery on the Plaintiffs, the discovery requested sensitive medical and financial information. The Plaintiffs asked the Respondent to enter into a confidentiality agreement which would not in any way preclude his receipt of discoverable information but rather limit the disclosure or redisclosure of sensitive information. The Respondent refused to enter into a confidentiality agreement and the Plaintiffs filed a Motion for Protective order on August 11, 2009. On August 25, 2009, the Respondent filed a motion to compel discovery. By Order entered September 18, 2009, the court denied the Respondent's motion to compel and ordered that the Plaintiffs "shall provide the requested discovery upon execution of an appropriate protective order to maintain confidentiality of medical and financial records." On September 28, 2009, the Respondent filed a motion for reconsideration of the order. On October 8, 2009, the Respondent forwarded an executed Stipulation regarding confidentiality to the Plaintiffs and demanded that the outstanding discovery be provided "within 5 business days." Less than two weeks later, the instant motion was filed. In addition to being filed prematurely, without allowing the Plaintiff time to produce the requested information, the motion was filed without any good faith efforts to resolve the discovery dispute and the relief sought, dismissal and sanctions, is not contemplated under the Maryland Rules. Where there has been a response to discovery, albeit incomplete, the only remedy is a motion for an order compelling discovery. *See* Rule 2-432. In the Motion, the Respondent states that the Plaintiffs "refuse to produce the discovery." There is no evidence that, once the confidentiality agreement was signed, the Plaintiffs refused to produce the information and documentation requested.

Mixter's assertion, however, is that he had submitted the confidentiality agreement "nearly two weeks before the motion to dismiss was filed" and that "[t]he plaintiffs should have been prepared to provide discovery responses upon receipt of the executed confidentiality agreement sought at their request." Mixter's files reflect that, contrary to Mixter's assertions, the plaintiffs had provided the requested discovery on October 26, 2009, which he believed to be inadequate. There is no documentation in the file, however, that demonstrates Mixter had acted in good faith to resolve the myriad of discovery issues. We overrule Mixter's exception to Judge Doory's finding that the Motion to Dismiss was a frivolous motion directed at the opposing party.

Mixter notes an exception to Judge Doory's finding that the Motion to Compel answers to interrogatories and the production of documents from the defendant filed in *Presbury* was frivolous, because, he argues, the motion was not premature. Judge Doory had found that the Motion to Compel was frivolous, because it was filed with a false certification that good faith efforts had been made to resolve the discovery dispute. Mixter's files from *Presbury* indicate that only one letter had been sent from Mixter to the opposition in an attempt to resolve the dispute, to which the opposition replied in an effort to address the outstanding issues. Mixter's files show that he had neither conciliated further nor described nor referenced the "letter from opposing counsel informing him that, due to the fact the defendant was an out-of-state corporation, the discovery responses were not yet due", in his Motion to Compel, as required by Maryland Rule 2-431. We, accordingly, overrule this exception.

Mixter also excepts to Judge Doory's finding that the Motions to Compel Supplemental Discovery, to Compel Supplemental Answers to Interrogatories, for Default Judgment and Other Sanctions and to Compel Supplemental Discovery Concerning Expert Witnesses, all filed against the defense in *Railey*, were frivolous, because Judge Doory had improperly based his finding upon an opinion by the Circuit Court for Washington County in the case. The opinion, within Mixter's files from *Railey* that had been received into evidence as Petitioner's Exhibit 25, provided, with regard to all four motions, that "Mixter and the Plaintiff proceeded in this case in bad faith and without substantial justification". We overrule Mixter's exception.

Mixter notes an exception to Judge Doory's finding that he had omitted material correspondences in the Motion to Hold in Contempt Whole Foods Market, filed on July 23, 2010, during the *Alemu* litigation, because "[t]he correspondence between Respondent and Whole Foods are set forth as exhibits to the motion." In an internal memorandum, included in Mixter's files, written from "Donna" to Mixter on May 18, 2010, she explained that "[Whole Foods's Attorney] is very cooperative and wants to do everything she can to comply with the subpoenas/orders." The phone call is mentioned only in an exhibit attached to the Motion to Hold in Contempt, but without its substance or a description of Whole Foods's concerns, despite the requirements of Maryland Rule 2-431. We, accordingly, overrule this exception.

Mixter excepts as well to Judge Doory's finding that the Motion for Protective Order to preclude the *Alemu* plaintiff from taking a de bene esse deposition of Dr. Danziger, included a misrepresentation by omission. Judge Doory had found that Mixter had made

87

the misrepresentation by omission by not attaching to the Motion for Protective Order, or otherwise describing, correspondences from opposing counsel, as required by Maryland Rule 2-431. Mixter's records from *Alemu* show that the Motion for a Protective Order included only Mixter's letters to opposing counsel, without inclusion of the return correspondence, which indicated that attempts had been made to resolve the dispute. We overrule this exception.

Mixter notes an exception to Judge Doory's finding that the Motion to Compel production of documents from the custodian of records of Neil J. Fagan, an attorney and putative deponent in *Gonzales*, contained a misrepresentation by omission to the Circuit Court for Montgomery County and that the motion was frivolous. Judge Doory found that Mixter had requested documents from Mr. Fagan that Mr. Fagan had previously turned over to the plaintiff's attorney in *Gonzales* and that Mixter had omitted that Mr. Fagan had notified Mixter that he was no longer in possession of the requested documents before Mixter filed the motion on November 19, 2009. Mixter argues in his exception, however, that "[i]t was immaterial that Mr. Fagan provided the documents responsive to Respondent's requests to [plaintiff's counsel] because the simple fact remains that the requested documents were not provided to Respondent in accordance with the subpoena." A review of Mixter's files, however, shows that, according to a letter written by Mixter on November 30, 2009, to both Mr. Fagan and the plaintiff's attorney, Mixter acknowledged that he had, on November 11, 2009, received documents responsive to the subpoena from

88

the plaintiff's attorney.[64]  We, accordingly, overrule Mixter's exception as to a material omission having been made to the Circuit Court for Montgomery County.

Mixter's records, furthermore, contain only the standard cover letter, discussed *supra*, as what he purported represented a good faith attempt at resolution of the dispute with Mr. Fagan prior to filing the Motion to Compel, but without any mention of the assurance from Mr. Fagan that he no longer had the documents nor any reference to Mixter's having received any documents responsive to the subpoena.  We, accordingly, overrule this exception.[65]

Mixter excepts to Judge Doory's finding that he had "misrepresented a Court's Order when he filed a Motion for Sanctions", while representing the plaintiff in *Canby*.  In *Canby*, a dispute arose regarding whether the defendant's insurance representative had to be present at various pre-trial proceedings.  Judge Doory found that Mixter had acted in derogation of a court order exempting the insurance representative's personal appearance at one such proceeding.  Upon review, the defendant conceded that no order exempting the insurance representative's appearance had yet been entered at the time Mixter filed the Motion for Sanctions.  We sustain this exception.

Mixter next excepts to Judge Doory's finding that, in the *Pearson* litigation, he had obstructed access to evidence by sending to Ms. Pearson's medical providers letters telling

---

[64] In the November 30, 2009 letter, Mixter asserted that he could not accept the documents from plaintiff's counsel, despite the fact that they were admittedly "responsive to the enclosed subpoena."

[65] The Circuit Court Judge ultimately denied the Motion to Compel, according to an entry on the docket sheet for *Gonzales* included in Mixter's files.

them not to speak to opposing counsel. Mixter argues that, technically, his actions did not violate the Circuit Court's order allowing ex parte communications. However, as Judge Melanie Shaw Geter found during the *Pearson* litigation and Judge Doory observed, "the Respondent's letters to the healthcare providers 'thwarts the spirit of [the] order'". Further, as discussed above, Judge Doory properly found that Mixter had intentionally sought to prevent the physicians from speaking to opposing counsel. We, therefore, overrule this exception.

Mixter also notes an exception to Judge Doory's finding that he had brought and pursued the *Railey* litigation in bad faith, because opposing counsel "had no idea as to what information Ms. Railey had presented to Respondent prior to the filing of the lawsuit." Mixter also excepts to Judge Doory's finding that pursuing the *Railey* litigation against Leo Cline had been in bad faith, because it was defense counsel's "refus[al] to draft the Line of Dismissal" that kept Mr. Cline in the litigation. We sustain Mixter's exception as far as the record does not show he had brought the litigation in bad faith.

The basis for Judge Doory's finding, however, was that the Circuit Court Judge had determined that the deposition of Ms. Railey, Mixter's client, had been "devastating" to her claim against the Cochran Defendants and that, after her deposition, Mixter should have dismissed the Cochran Defendants from the suit. Judge Doory had relied upon an unreported opinion from the Court of Special Appeals, included in Mixter's records from the *Railey* litigation, in which the intermediate appellate court vacated the Circuit Court's denial of the Cochran Defendants' motion for sanctions against Mixter. In the opinion, the Court of Special Appeals noted that "in her deposition, Ms. Railey appeared to undermine

the factual bases for many of the counts in the complaint" and that the Cochran Defendants had appeared "to generate a genuine issue as to the frivolous nature of some of [the] various motions, notices of deposition, and subpoenas advanced by [Mixter]."

Furthermore, Mixter does not contend that there was any good faith basis to continue to maintain a suit against Mr. Cline, but, rather, that it was opposing counsel's responsibility to draft the line of dismissal that Mixter would file. Mixter's letter regarding dismissal of Mr. Cline was included in Petitioner's Exhibit 24, which is one of the two volumes of Mixter's files from the *Railey* litigation. The letter shows that Mixter was aware that the action against Mr. Cline was baseless, but that he would only dismiss the action were opposing counsel to write the line of dismissal, as retribution for opposing counsel's threat to request costs and attorneys' fees for Mixter's bad faith pursuit of the *Railey* litigation:

> While I am willing to dismiss Mr. Cline from the litigation, you should know that we based our assertions against Mr. Cline based on information gleaned from your client that Mr. Cline had conducted a part of the auction held on June 28, 2008. Furthermore, I don't appreciate your Rule 1-341 threat. If you want to prepare the paperwork vis-à-vis Mr. Cline, I will agree to a dismissal (without prejudice) and we can proceed.[66]

---

[66] Maryland Rule 1-341 provides, in pertinent part:
**Rule 1-341. Bad faith – Unjustified proceeding**
(a) **Remedial Authority of Court.** In any civil action, if the court finds that the conduct of any party in maintaining or defending any proceeding was in bad faith or without substantial justification, the court, on motion by an adverse party, may require the offending party or the attorney advising the conduct or both of them to pay to the adverse party the costs of the proceeding and the reasonable expenses, including reasonable attorneys' fees, incurred by the adverse party in opposing it.

We, accordingly, overrule Mixter's exception to Judge Doory's finding that pursuing the *Railey* litigation was frivolous.

Mixter notes an exception to Judge Doory's finding that he used the *Varner* opinion issued in 1993 by Judge Messitte, at the time a Judge of the Circuit Court for Montgomery County, to create discovery disputes and rattle witnesses. Judge Doory found that the *Varner* opinion "explains that the treating physician for a plaintiff cannot charge a fee for deposition or trial that is greater than the fee charged for the physician's usual and customary office practice." Mixter testified at length before Judge Doory about his practice of regularly including the *Varner* opinion with his subpoenas to opposing experts. When asked by Bar Counsel whether it was his "intention to tell anyone, especially an expert witness, that the *Varner* decision was an appellate decision that was controlling", Mixter replied that he had not. Mixter agreed, however, that he regularly included the *Varner* opinion with letters to opposing experts informing them that it would control the method by which their fees would be determined, even though it was twenty years old and issued by one circuit court judge, prior to *Kilsheimer v. Dewberry & Davis*, 106 Md. App. 600, 665 A.2d 723 (1995), an opinion issued by the Court of Special Appeals, which was

controlling at all relevant times that Mixter had sent the *Varner* opinion to opposing experts.[67] We do not disturb Judge Doory's finding that Mixter had intentionally used the *Varner* opinion to mislead experts and attempted to gain an unfair advantage, because we defer to his credibility determinations. *Agbaje*, 438 Md. at 722, 93 A.3d at 277. We, therefore, overrule this exception.

Mixter excepts to Judge Doory's finding that the Circuit Court Judge in *Byrne-Egan* had granted Mixter's "Motion for Contempt and for Show Cause Order, or, in the Alternative, Motion in Limine to Preclude Matthew Mulqueen from Testifying at Trial", filed on March 16, 2012, based upon misrepresentations made by Mixter in the motion that Mr. Mulqueen had been properly served with subpoenas for depositions scheduled for October 12, 2011: Mixter asserted that Mr. Mulqueen had "been properly served with a

---

[67] Mixter's files from *Dunston* contain a memorandum opinion by the Judge Lawrence P. Fletcher-Hill for the Circuit Court for Baltimore City in which Judge Lawrence, in denying one of Mixter's motions to hold an expert in contempt and to set the expert's fee, identified the flaws with Mixter's use of *Varner*:

> As discussed, Defendants rely heavily on the Revised Order in *Greater Washington Orthopaedic Group, P.A. v. Varner*. The very short answer to Defendants' reliance on this order as controlling in this case is that it is a non-binding order of another Circuit Court issued almost twenty years ago. It is persuasive authority at most. In addition, it was limited by its terms to treating physicians who are called upon to testify in that capacity. More important, it pre-dates *Kilsheimer*, which is binding on this Court, and the 2003 revisions to what is now Maryland Rule 2-402(g)(3) [which provides that experts are to be paid a "reasonable fee"]. Those authorities require the Court to examine reasonableness more broadly.

(footnote omitted).

93

subpoena and notice of deposition, [but] failed to appear for his October 12, 2011 deposition in this matter." In fact, however, the subpoena called for Mr. Mulqueen's attendance on November 14, 2011, rather than October 12, 2011.[68] Mr. Mulqueen did not appear on October 12, 2011, which precipitated Mixter sending a notice to take deposition on October 26, 2011, which he asserts was sufficient to establish a deposition on January 12, 2012, although the date on the notice was blank:

> We previously scheduled your deposition in the above-captioned case (in which you have been identified as a potential witness by Ms. Byrne-Egan) for October 12, 2011. . . . Thus, you are in violation of the subpoena and notice of deposition which was previously served upon you.
> Accordingly, we have rescheduled your deposition for [blank]. Please call me to confirm your attendance at the deposition on that date and time.

On December 9, 2011, Mixter issued a subpoena for a deposition on January 17, 2012, at which Mr. Mulqueen did not appear. Mixter's files contain two undated green cards, which Mixter asserts were returned from the two subpoenas at issue in the Motion for Contempt. These facts do not show by clear and convincing evidence that Mixter made a material misrepresentation that Mr. Mulqueen had been properly served with deposition subpoenas. We sustain this exception.

With the exception of the four exceptions alleged by Mixter to the findings of fact that have been sustained, we determine that Judge Doory's findings were based on clear

---

[68] Mixter, as reflected in his files, had attached to his Response to the Answer to the Motion for Contempt a subpoena commanding Mr. Mulqueen to appear at Mixter's office on November 14, 2011 at 12:30 p.m. Mixter had also included, in his response, a letter allegedly faxed from his office to opposing counsel dated October 11, 2011, requesting Mr. Mulqueen's telephone number so that Mixter could contact him "and find out if [he is] going to be present on [the following day] for the deposition."

94

and convincing evidence and now turn to the exceptions Mixter filed with respect to Judge Doory's conclusions of law.

## B. Mixter's Exceptions to Judge Doory's Conclusions of Law

Mixter excepts to Judge Doory's conclusion that he violated Rule 3.1, which requires that "[a] lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis for doing so that is not frivolous", by filing each of the one hundred and twenty-seven motions listed in Appendices 2, 3 and 5, as well as pursuing the *Railey* litigation. Judge Doory concluded:

> The Court finds that each of the frivolous motions the Respondent filed as discussed herein is a violation of Rule 3.1. Additionally the Court finds that the Respondent's bringing and pursuing the *Railey* litigation violates Rule 3.1. Failure to promptly dismiss the Defendant Leo Cline is particularly egregious.

Mixter alleges that he did not violate Rule 3.1, because the motions were only inaccurate, rather than frivolous, under Maryland Rule 1-341. Mixter concedes, however, that "some of his motions to compel did not have the appropriate documentation attached or in some instances failed to reference the full extent of the additional good faith efforts Respondent took to obtain his discovery before filing the motion," but maintains that, "this was through inadvertence and not with the intention to mislead any court". He also posits that the motions were not frivolous, because they raised meritorious claims.

With respect to sixty-one of the motions identified by Judge Doory in Appendix 2 as "Frivolous Motions Directed at Non-Party Witnesses", for which the evidence was clear and convincing, Judge Doory found that they "were frivolous because no valid subpoena was ever served on the witness; there was either no proof of service of the subpoena, or the

95

subpoena was ineffective as of the date of service because it did not provide the witness the requisite 30 days to produce documents as required by Maryland Rule 2-412(c)." Mixter had filed and pursued the motions by misrepresenting to the various courts that the underlying subpoenas had been served or that the subpoenas provided sufficient time for the production of documents that were being compelled.

Judge Doory also identified the twenty-four motions contained in Appendix 3 as frivolous, based on clear and convincing evidence, because they were directed at out-of-state witnesses and "the court in which they were filed had no jurisdiction over the non-party witness and their failure to comply with a Maryland subpoena, as such, the grounds for each of the motions was without merit." Judge Doory found that, in order to support enforcement of the subpoenas, Mixter misled the various circuit courts by omitting the states of residence of the parties under compulsion, knowing that they were out-of-state witnesses, to avoid notifying the Maryland judges that additional protocols were required. According to Judge Doory, Mixter, in the subpoenas he had issued, also had misrepresented to the out-of-state recipients that their appearance could be compelled in Maryland, even though under our Rules, their appearance could not be.

With respect to forty-one of the motions listed in Appendix 5, Judge Doory relied on clear and convincing evidence that they "were frivolous because the Respondent either failed to make any good faith efforts to resolve the discovery disputes or the filings were filed prematurely or otherwise [did] not comply with the Maryland Rules." Under Maryland Rule 2-431, Mixter—like any other attorney—was required to engage in good

96

faith efforts to resolve discovery disputes prior to filing motions to compel or for sanctions, which he failed to do, coupled with misrepresentations that he had done so.

Mixter had attempted to enforce over one-hundred and twenty unenforceable subpoenas through meritless motions to compel in order to, as Judge Doory found, coerce his opposing parties into compliance with his excessive discovery requests by "bludgeoning [them] with . . . frivolous motions". Mixter's behavior was violative of Rule 3.1. *See Attorney Grievance v. Gisriel*, 409 Md. 331, 356-57, 974 A.2d 331, 346 (2009) ("The legal process should never be used as the Respondent did here, i.e., merely a device to apply pressure to the other parties . . . .").

Judge Doory also found, based upon clear and convincing evidence, with respect to the *Railey* litigation, that Mixter had pursued the suit "in bad faith and without substantial justification", because Mixter knew that his client's deposition undercut the asserted claims. Rule 3.1 requires that attorneys "inform themselves about the facts of their clients' cases and the applicable law and determine that they can make good faith arguments in support of their clients' positions." *Gisriel*, 409 Md. at 355, 974 A.2d at 345, citing Rule 3.1 cmt.2. Mixter violated Rule 3.1, by continuing to pursue the *Railey* litigation after it became clear that there was no good faith basis for doing so. Accordingly, we overrule Mixter's exceptions with respect to Rule 3.1.

Mixter excepts to Judge Doory's conclusion that he had violated Rule 3.2, which requires that an attorney "make reasonable efforts to expedite litigation consistent with the interests of the client", because:

97

> filing of frivolous motions, requesting hearings on every motion and opposition filed, generally acting in an obstructionist manner[,] failing to cooperate with opposing counsel in the orderly taking of discovery including exchanging written discovery and taking depositions, creating protracted fee disputes with experts and causing confusion for opposing parties, witnesses and the courts all knowingly and purposefully delays litigation and cannot be said to be in the best interest of the client.

"The effect of the Respondent's conduct", Judge Doory found, is that "the court dockets are clogged and the ordinary and proper resolution of claims is delayed."

Mixter argues that Judge Doory erred, because "there is no evidence [that] Respondent's conduct delayed the litigation in any of the 22 cases at issue." He further contends that, "It is without merit to critique Respondent for routinely requesting a hearing on the motions he filed", because it was for the courts to determine if the hearings were warranted. Mixter asserts that Rule 3.2 only applies upon a finding that a case was delayed, citing *Attorney Grievance Commission v. Hermina*, 379 Md. 503, 842 A.2d 762 (2004), or only "to scenarios where either counsel did very little to advance his own client's claim or totally failed to participate in discovery", citing *Attorney Grievance v. Steinberg*, 395 Md. 337, 910 A.2d 429 (2006).

We have interpreted Rule 3.2 violations to include a situation in which an attorney pursued "unwarranted motions . . . thereby frustrating the opposing party's attempt to obtain rightful redress." *Attorney Grievance v. McClain*, 406 Md. 1, 14, 956 A.2d 135, 142 (2008). In *McClain,* the hearing judge found, based upon clear and convincing evidence, that McClain had engaged in tactics that were not geared towards expediting litigation, such as filing meritless motions in order to hinder the partition sale of his client's property. We determined that McClain violated Rule 3.2, because his motivation for filing

98

the unwarranted motion was "to prevent the sale of the property, thereby frustrating the opposing party's attempt to obtain rightful redress." *Id.* We also have indicated that Rule 3.2 may be the basis for discipline when an attorney files meritless recusal motions. *See Surratt v. Prince George's County*, 320 Md. 439, 468, 578 A.2d 745, 759 (1990) ("[A] motion that turns out to be totally without basis in fact . . . could be the subject of lawyer disciplinary proceedings", citing Rule 3.2).

Delay is not the dispositive issue under Rule 3.2,[69] unlike what Mixter asserts. Judicial resources squandered on unnecessary motions, with the attendant waste of time and money experienced by opposing parties, are within the purview of Rule 3.2, as some of our sister courts have recognized.

In *Obert v. Republic Western Ins. Co.*, 264 F. Supp. 2d 106, 110 (D.R.I. 2003), two of the attorneys for Republic Western Insurance Company had been admitted *pro hac vice* and subsequently were ordered to show cause why that status should not be revoked "based

---

[69] In *Hermina*, the hearing judge determined that Hermina violated Rule 3.2 "by effectively failing to participate in the pre-trial conference" even though such failure "had no real effect on the trial." *Hermina*, 379 Md. at 519, 842 A.2d at 771. We sustained Hermina's exception that he did not violate Rule 3.2, because the hearing judge explicitly found that there had been no delay. On the contrary, here, Judge Doory found that Mixter's practice regularly delayed litigation. As a result, *Hermina* is inapplicable.

In *Steinberg*, the attorney "engaged in a pattern of delay" by failing to return phone calls and letters and cited "cryptic excuses for [his] lack of communication," causing "the scheduling of hearings or meetings without Steinberg's cooperation or input." 395 Md. at 365, 842 A.2d at 446. Steinberg also "displayed an unwillingness to comply with discovery", by cancelling depositions the evening before they had been scheduled. *Id.* at 366, 842 A.2d at 446. Steinberg's failure to communicate and unwillingness to comply with discovery violated Rule 3.2.

on their actions in pursuit of an unsuccessful motion to recuse that they filed on behalf of their client" in the District Court. The District Court referred the matter to a magistrate judge who concluded that the attorneys had impermissibly diverted the court's resources when they "filed an untruthful affidavit in support of the frivolous motion to disqualify" in violation of Rule 3.2 of the Rhode Island Rules of Professional Conduct.[70] *Id.* at 116. The District Court accepted the magistrate's recommendation and revoked the attorneys' *pro hac vice* status. *See also In re Disciplinary Action against Murrin*, 821 N.W.2d 195, 210 (Minn. 2012) (Murrin violated Minnesota Rules of Professional Conduct 3.2[71] and 8.4(d),[72] by engaging "in a pattern of seemingly endless pleadings that contained frivolous claims and were unnecessarily burdensome in length, violated court orders, wasted courts' resources, delayed litigation, and prejudiced the administration of justice."); *State ex rel. Okla. Bar Ass'n v. Godlove*, 318 P.3d 1086, 1090 (Ok. 2013) (Godlove violated Rule 3.2[73] of the Oklahoma Rules of Professional Conduct by not expediting litigation when she

---

[70] Rule 3.2 of the Rhode Island Rules of Professional Conduct provides:
   A lawyer shall make reasonable efforts to expedite litigation consistent with the interests of the client.

[71] Rule 3.2 of the Minnesota Rules of Professional Conduct provides:
   A lawyer shall make reasonable efforts to expedite litigation consistent with the interests of the client.

[72] Rule 8.4(d) of the Minnesota Rules of Professional Conduct provides, in relevant part:
   It is professional misconduct for a lawyer to . . . engage in conduct that is prejudicial to the administration of justice.

[73] Rule 3.2 of the Oklahoma Rules of Professional Conduct provides:
   A lawyer shall make reasonable efforts to expedite litigation consistent with the interests of the client.

pursued "at least six cases and at least twenty-four pleadings" frivolously attacking a court order and by not adhering to the rules of procedure on at least seventeen occasions in which she sought recusal of an assigned judge).

Mixter violated Rule 3.2 by filing over one hundred and twenty frivolous motions, which wasted valuable resources of the courts and the parties. His reliance on *Steinberg* is unavailing.

Mixter also excepts to Judge Doory's conclusion that he had violated Rules 3.3(a)(1) and (a)(4). Rule 3.3(a)(1) requires that a lawyer not knowingly "make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer". Rule 3.3(a)(4), similarly, requires that a lawyer shall not knowingly "offer evidence that the lawyer knows to be false", and, that if a lawyer offers "material evidence and comes to know of its falsity, the lawyer shall take reasonable remedial measures."

Judge Doory concluded Mixter violated Rules 3.3(a)(1) and (4) by regularly making "false statements of material fact to the courts", as well as with "the specific misrepresentations to the court outlined in the section entitled 'Misrepresentations and Disregard for Court Orders and Directives'" and by "routinely misrepresent[ing] that out-of-state witnesses were subject to the jurisdiction of Maryland courts, valid subpoenas were issued and properly served, dates of service, that he made good faith efforts to resolve discovery disputes prior to filing motions and that opposing parties or non-party witnesses had refused to respond to his efforts to resolve discovery disputes."

Mixter urges that he did not violate Rules 3.3(a)(1) and (4) because the record is devoid of any false statement of fact that he made to the courts. Mixter also argues that "where the documentation attached to Respondent's motions to compel were inaccurate, the fact the documentation was attached proves Respondent did not intend to mislead the court and certainly establishes that there was not the requisite scientor [sic] to deceive the court when filing these motions."

Judge Doory found, in any event, by clear and convincing evidence, that Mixter had knowingly and intentionally made misrepresentations to various courts, to include: falsely asserting in the twenty-four motions listed in Appendix 3 that the opposing parties were properly served with subpoenas outside of Maryland; falsely certifying in the fifty-three certifications listed in Appendix 6 that he had engaged in good faith efforts at resolving discovery disputes; willfully omitting material information in connection with the twelve motions listed in Appendix 7; in the *Byrne-Egan* litigation, writing a letter to Judge Motz, in the United States District Court for the District of Maryland, in which he "knowingly and intentionally mischaracterized and misrepresented" the content of the opposition's motion; in the *Byrne-Egan* litigation, also failing to inform the court, in his response to the court's Show Cause Order for Contempt, that a motion for a protective order as to the third-party defendant's mental health records was pending when he sought those same records; in the *Davis* litigation, filing a false affidavit in the United States District Court for the District of Maryland in which he asserted that the defendants had been properly served with copies of the complaint; in *Green*, writing letters to the clerk of the court demanding that hearings on at least five motions were required while omitting that the opposition had

102

requested that the motions be ruled on without hearings and that some of the motions were not yet ripe; in the *Johnson* litigation, sending a letter to the clerk of the court "informing the Clerk that his Motion to Compel was unopposed, though he knew that the plaintiff had filed a timely opposition to Respondent's Motion to Compel"; in *Keener*, misrepresenting to the Court of Special Appeals that it was only due to a typographical error that he had falsely framed the procedural history of the suit; in *Mixter*, asserting that a witness's discovery responses were overdue when, in fact, the witness had been served only three days prior to the date the motion was filed; and, in *Mixter*, also alleging that Dr. Conte had been properly served with a subpoena for documents when Mixter had filed the motion to compel on the same day he had mailed the subpoena underlying the motion to compel the production of documents from Dr. Conte.

As Judge Doory found, Mixter knew that he was making misrepresentations to numerous courts, parties and witnesses. We, accordingly, overrule Mixter's exception to Judge Doory's conclusion that he had violated Rules 3.3(a)(1) and (4).

Mixter also excepts to Judge Doory's conclusions that he had violated Rules 3.4(a), (c), (d) and (f). Rule 3.4(a) requires that an attorney not "unlawfully obstruct another party's access to evidence". Judge Doory concluded that "the Respondent violated Rule 3.4(a) by obstructing the [plaintiff's expert's] access to evidence [for testing] and thereby facilitating his client in the destruction of evidence in the *Chineme* case." Mixter, however, posits that he did not violate Rule 3.4(a) because, "There is absolutely no evidence on this record that Respondent instructed his client to modify the property in question in any way".

103

We overrule Mixter's exception. Judge Doory had before him clear and convincing evidence that, in the *Chineme* litigation, Mixter's opposition filed a Request for Entry upon the Premises and the parties, thereafter, agreed to allow the expert to enter the premises to take the necessary samples and, that once the expert entered the premises, Mixter blocked the expert from gathering specimens required for testing. Mixter, therefore, obstructed access to evidence and, thereby, its preservation, in violation of Rule 3.4(a).

Judge Doory concluded also that Mixter violated Rule 3.4(c), which requires that an attorney not "knowingly disobey an obligation under the rules of a tribunal", by "knowingly disobeying the rules of procedure as outlined" and by "knowingly and intentionally disobey[ing] specific court orders and directives as stated in the section entitled 'Misrepresentations and disregard for Court Orders and Directives'". Mixter knowingly and intentionally: issued Maryland subpoenas to out-of-state witnesses, in violation of Maryland Rule 2-413(a)(2), while simultaneously violating the rules of various foreign jurisdictions, on the more than fifty occasions listed in Appendices 3 and 4; failed to follow the proper protocol per Section 4-306 of the Health-General Article of the Maryland Code in order to obtain medical records from health care providers; submitted the fifty-three Maryland Rule 2-431 certificates listed in Appendix 6 without having engaged in good faith attempts at resolving discovery disputes; issued subpoenas that provided less than thirty days for document production as required by Maryland Rule 2-412(c); delivered subpoenas by first-class mail, in violation of Maryland Rule 2-121(a)(3); attempted to prove service with falsified green cards, or without green cards altogether,

contrary to Maryland Rule 2-126(a)(3); and noted depositions of in-state witnesses in improper counties as delineated by Maryland Rule 2-413(a)(1).

Mixter excepts to Judge Doory's conclusion that he had violated Rule 3.4(c) on the same bases as his factual exceptions, that being that he did not knowingly disobey court orders or Maryland Rules, which we have already overruled. As a result, we overrule Mixter's exception.

Under Rule 3.4(d), it is professional misconduct to "make a frivolous discovery request". Judge Doory concluded that Mixter violated Rule 3.4(d), because he "abused his authority, as an officer of the court, to issue frivolous subpoenas and make frivolous discovery requests and demands". Mixter excepts on the basis that Judge Doory improperly found that the various subpoenas and discovery requests were frivolous.

We already have recognized that Judge Doory had before him, clear and convincing evidence, that: sixty-one of Mixter's discovery motions directed at non-party witnesses listed in Appendix 2 were frivolous, because "no valid subpoena was ever served on the witness; there was either no proof of service of the subpoena, or the subpoena was ineffective as of the date of service because it did not provide the witness the requisite 30 days to produce documents as required by Maryland Rule 2-412(c)"; the twenty-four motions listed in Appendix 3 were frivolous discovery motions, because they sought to enforce Maryland subpoenas improperly served on out-of-state, non-party witnesses, through misrepresentations that the witnesses were properly served; the thirty-five subpoenas listed in Appendix 4 were frivolous, because they sought documents depositions of out-of-state, non-party witnesses, without complying with the applicable procedures, yet

105

misrepresented to the recipients that their attendance could be compelled; forty-two of the discovery motions listed in Appendix 5 were frivolous, "because the Respondent either failed to make any good faith efforts to resolve the discovery disputes or the filings were filed prematurely or otherwise do not comply with the Maryland Rules"; and the motions he had filed to compel the attendance of a witness at a deposition in the wrong county were frivolous, because they violated Maryland Rule 2-413.

In ruling on the applicability of Rule 3.4(d) the Oklahoma Supreme Court faced a similar situation in *Godlove*, 318 P.3d at 1092, with respect to their Rule 3.4(d).[74] Underlying attorney Godlove's case was a final order from an Oklahoma trial court naming the trustees for the Lorice T. Wallace trust. *Id.* at 1089. Despite the final order, Godlove "abused discovery by proceeding as if there had been no final determination of the trustees." *Id.* at 1091. The Oklahoma Supreme Court determined that Godlove violated Rule 3.4(d) by filing numerous and irrelevant discovery requests. Mixter, similarly, violated Rule 3.4(d) by filing nearly one-hundred motions to compel that were based upon invalid subpoenas or contained false certifications to the various courts that he had complied with Maryland Rule 2-431 and we, therefore, overrule his exception.

Mixter then excepts to the conclusion that he violated Rule 3.4(f). Rule 3.4(f) requires that an attorney not "request a person other than a client to refrain from voluntarily

---

[74] Rule 3.4 of the Oklahoma Rules of Professional Conduct provides, in relevant part:
    A lawyer shall not:
                                      * * *
    (d) in pretrial procedure, make a frivolous discovery request or fail to make
    reasonably diligent effort to comply with a legally proper discovery request
    by an opposing party;

giving relevant information to another party", with narrow exceptions, not applicable here. Judge Doory found that Mixter violated Rule 3.4(f) by "requesting the plaintiff's doctors to not speak with defense counsel in *Pearson*" after the Circuit Court Judge, Judge Shaw Geter, filed an Order allowing "that the attorneys for the parties to this lawsuit are permitted to engage in *ex parte* discussions with [the healthcare providers]." According to Judge Doory, based upon clear and convincing evidence, Judge Shaw Geter "found that while the Respondent's letters to the healthcare providers 'thwarts the spirit of [the] order' they did not directly violate the order".

Mixter asserts, in conclusory fashion, that he did not violate Rule 3.4(f), because Judge Doory's conclusion was "in correct [sic] on the facts and the law. Even [the Circuit Court Judge in *Pearson*] found the letters did not violate her Order."

With respect to Judge Doory's conclusion that Rule 3.4(f) was violated when Mixter sent the letter to the *Pearson* physicians, we recognize that the Health Insurance Portability and Accountability Act (HIPAA), Pub. Law 104-191, 110 Stat. 1936 (1996), codified as amended in scattered sections of Titles 18, 26, 29 and 42 of the United States Code, may have been implicated. *See Strayhorne v. Caruso*, No. 11-15216, 2014 WL 916814, at *2 (E.D. Mich. Mar. 10, 2014) (collecting cases) ("The parties recognize, and other courts have observed, that HIPAA neither permits nor prohibits such ex *parte* communications."). The record is not developed as to the HIPAA issue, however, because it was not raised by Bar Counsel nor Mixter, as it was not before us. The sanction against Mixter remains the same regardless of whether we overrule or sustain Judge Doory's conclusion that Mixter violated Rule 3.4(f). *See Attorney Grievance v. Snyder*, 368 Md. 242, 261, 793 A.2d 515,

526 (2002) (electing not to address an exception the merits of which were not argued before the hearing judge, because "it would not bear on the attorney's other violations and would not affect the sanction to be imposed"). Therefore, we elect not to address the Rule 3.4(f) violation.

Rule 4.1(a)(1) requires that the attorney not knowingly "make a false statement of material fact or law to a third person". Judge Doory concluded that Mixter violated Rule 4.1(a)(1) by making false statements of law to third parties regarding the enforceability of Maryland subpoenas:

> The Court finds that the Respondent violated Rule 4.1(a) in that he made a false statement of law to third persons including: (1) stating, either directly or by way of motion, to witnesses that they could be held in contempt of court or subject to other sanctions for failing to appear at deposition where the witnesses were never properly served with a valid subpoena; (2) stating to non-party out-of-state witnesses that they were required to comply with a Maryland subpoena; (3) stating to parties or witnesses that they were compelled to appear for deposition at a location in violation of Rule 2-413.

Mixter asserts that he did not violate Rule 4.1, because he did not knowingly make misrepresentations to third parties. Judge Doory had before him clear and convincing evidence that Mixter knowingly had misrepresented to the recipients of the over fifty subpoenas listed in Appendices 3 and 4 that their appearance could be compelled in Maryland. Mixter also, as Judge Doory found, had misrepresented to numerous non-party witnesses, located in Maryland, that they could be compelled to attend a deposition in a county other than that in which they resided. Mixter, therefore, violated Rule 4.1(a)(1) on more than fifty occasions, and we overrule this exception.

108

Mixter asserts that he did not violate Rule 4.4(a), which states that an attorney "shall not use means that have no substantial purpose other than to embarrass, delay, or burden a third person, or use methods of obtaining evidence that the lawyer knows violate the legal rights of such a person", because his attempts to obtain medical records of various parties only failed for want of Rule compliance, and they were not done with the purpose of embarrassing, delaying or burdening a third person. Judge Doory concluded that Mixter did violate Rule 4.4(a), because he had attempted to obtain medical records, mental health records and driving records of opposing parties, in defiance of court orders and statutory restrictions, when such information served no substantial purpose in the litigation:

> The Court finds that the Respondent knowingly abused his authority, as an officer of court, to routinely attempt to do discovery that has no substantial purpose other than to embarrass, delay or burden the witnesses and/or opposing party. The Court finds that the Respondent, knowingly and intentionally sought medical records in violation of the HIPAA requirements and/or the Health-General Article by failing to properly serve medical providers with valid subpoenas and failing to send the required assurances that no objection to the subpoenas had been made. Seeking psychiatric records contrary to court orders and seeking lifelong traffic histories would have no purpose other than to embarrass.

In *McClain*, 406 Md. at 15, 956 A.2d at 143, we determined that McClain had violated Rule 4.4(a), even though "there was no suggestion that Respondent's tactics were intended to injure [the third party] nor that he or his client bore any ill-will towards [the third party]", because McClain's actions "were pursued in total disregard for their substantial cost to [the third party], were intentionally dilatory and were without legal basis." In the instant case, similarly, Judge Doory had before him clear and convincing evidence that, during the litigation in his own case, Mixter had attempted "to harass and

109

intimidate the defendants" by requesting their entire driving histories under "a multitude of disingenuous arguments". As the Circuit Court Judge in *Mixter* stated, the driving records "had absolutely nothing to do with the pending claim for defamation and that the subpoena was aimed solely at harassing the defendant[s]." Mixter intentionally pursued the defendants' driving records without basis, causing his opposition to use time and resources to obtain protective orders as to their driving records, and delaying litigation, thereby violating Rule 4.4(a). *See id.*

Judge Doory also had before him clear and convincing evidence that, in *Byrne-Egan*, Mixter attempted to obtain the third-party defendant's mental health records, despite knowing that a motion for a protective order as to those records was pending. Even after the protective order was granted, Mixter filed a motion to compel production of the third-party defendant's mental health records in which he misrepresented to the health care provider that there had been no objection to the production of said records. Mixter's acts caused a useless waste of time and resources, in violation of Rule 4.4(a).

Judge Doory, finally, had clear and convincing evidence before him that, in *Koontz*, Mixter had issued subpoenas and filed motions which delayed discovery and burdened the opposition. Mixter had issued subpoenas to nineteen of the plaintiffs' health care providers, causing the plaintiffs to move for protective orders or to quash the subpoenas. While the motion for protective order was pending, Mixter misrepresented to the medical providers that there had been no objection to release of the records and filed motions to compel against two health care providers. None of Mixter's motions had any legal basis and only served to delay litigation because they unnecessarily required the plaintiffs to

110

expend time and resources in addressing the motions and, therefore, violated Rule 4.4(a). We overrule this exception.

Judge Doory also determined that Mixter violated Rule 8.4(c), which prohibits "conduct involving dishonesty, fraud, deceit or misrepresentation", because of Mixter's "usual pattern of practice . . . laden with deceit and consistent misrepresentations to the courts, parties and witnesses of both fact and law". Mixter, however, urges he did not violate Rule 8.4(c), because there was not clear and convincing evidence that his actions were "designed to bend or break the rules".

Judge Doory found, by clear and convincing evidence, that Mixter had knowingly and intentionally made many misrepresentations to the various courts, to include: falsely asserting in the twenty-four motions listed in Appendix 3 that the oppositions were properly served with subpoenas outside of Maryland; falsely certifying in the fifty-three certifications listed in Appendix 6 that he had engaged in good faith efforts at resolving discovery disputes; willfully omitting material information in connection with the twelve motions listed in Appendix 7; in *Alemu*, by omitting from a Motion for Protective Order to preclude the opposition from taking a de bene esse deposition of an expert, return correspondence from opposing counsel indicating that attempts had been made to resolve the dispute; in the *Byrne-Egan* litigation, writing a letter to Judge Motz, in the United States District Court for the District of Maryland, in which he "knowingly and intentionally mischaracterized and misrepresented" the content of the opposition's motion; in the *Byrne-Egan* litigation, also failing to inform the court, in his response to the court's show cause order for contempt, that a motion for a protective order as to the third-party defendant's

111

mental health records was pending when he sought those same records; in the *Davis* litigation, filing a false affidavit in the United States District Court for the District of Maryland in which he asserted that the defendants had been properly served with copies of the complaint; in *Fitzgerald*, by omitting from his Motion to Compel medical records from the United States Department of Health and Human Services letters he had received from the Department notifying him that he was required to first obtain the patient's consent for the release of the documents; in the *Gonzales* litigation, by omitting from his Motion to Compel the production of documents from Mr. Fagan correspondences from Mr. Fagan indicating that he had previously turned the requested documents over to Mixter's opposition; in *Green*, writing letters to the clerk of the court demanding that hearings on at least five motions were required while omitting that the opposition had requested that the motions be ruled on without hearings and that several of the motions were not yet ripe; in the *Johnson* litigation, sending a letter to the clerk of the court "informing the Clerk that his Motion to Compel was unopposed, though he knew that the plaintiff had filed a timely opposition to Respondent's Motion to Compel"; in *Keener*, misrepresenting to the Court of Special Appeals that it was only due to a typographical error that he had falsely framed the procedural history of the suit; in *Mixter*, asserting that a witness's discovery responses were overdue when, in fact, the witness had been served only three days prior to the date the motion was filed; and, in *Mixter*, also alleging that Dr. Conte had been properly served with a subpoena for documents when Mixter had, in fact, filed the motion to compel on the same day he had mailed the subpoena underlying the motion to compel the production of documents from Dr. Conte.

Mixter engaged in dishonest and misrepresentative actions in violation of Rule 8.4(c), and we overrule his exception.

Mixter, finally, excepts to Judge Doory's conclusion that he violated Rule 8.4(d), which requires that an attorney not "engage in conduct that is prejudicial to the administration of justice", because, he asserts, "There is no clear and convincing evidence that Respondent's actions are designed to bend or break the rules, nor are they designed to bully, harass or intimidate both parties and witnesses."

Judge Doory concluded that Mixter violated Rule 8.4(d), because his conduct "without question, brings the profession into disrepute":

> Most assuredly, the Respondent's conduct was prejudicial to the administration of justice in violation of Rule 8.4(d). The Respondent's pattern of practice is to bend and break the rules to bully, harass and attempt to intimidate both parties and witnesses.
>
> * * *
>
> The Respondent conducts discovery and pretrial depositions by bludgeoning his opponents and witnesses with unreasonable demands, frivolous motions and unnecessary acrimony. The effect of the Respondent's conduct is clear: his opponents and witnesses are forced to spend time and money and expend emotional energy defending against his frivolous requests and demands, the court dockets are clogged and the ordinary and proper resolution of claims is delayed.
>
> This is not a case of walking up to the line in the name of zealous representation. This is a case of consistent knowing and intentional violation of the Maryland Lawyers' Rules of Professional Conduct. The Respondent's argument that his actions are defensible in the name of "zealous representation" is rejected. Although zealousness is a standard of proper representation, zealousness without the counterbalance of reasonableness amounts to obstreperousness and unfairness. While the vigorous representation of a client's interests is laudable, the Court cannot condone the Respondent's conduct which, without question, brings the profession into disrepute.

113

Conduct that is prejudicial to the administration of justice is that which "'impacts negatively the public's perception or efficacy of the courts or legal profession.'" *Attorney Grievance v. Dore*, 433 Md. 685, 696, 73 A.3d 161, 167 (2013), quoting *Attorney Grievance v. Rand*, 411 Md. 83, 96, 981 A.2d 1234, 1242 (2009). We have said that "'conduct prejudicial to the administration of justice'" should not be given a "'restricted meaning'" and that "'the duty rests upon the courts, and the profession as a whole, to uphold the highest standards of professional conduct and to protect the public from imposition by the unfit or unscrupulous practitioner.'" *Attorney Grievance v. Robertson*, 400 Md. 618, 640-41, 929 A.2d 576, 589 (2007), quoting *Rheb v. Bar Ass'n of Baltimore City*, 186 Md. 200, 205, 46 A.2d 289, 291 (1946). An attorney, finally, engages in conduct prejudicial to the administration of justice when he or she files "frivolous motions," engages in "intentionally dilatory tactics" and makes repeated misrepresentations to the courts. *McClain*, 406 Md. at 16, 956 A.2d at 144.

Mixter impugned the efficacy of the courts and the legal profession by making over one hundred and twenty misrepresentations in twenty-two cases before numerous courts. As an officer of the court, Mixter was expected to manifest integrity, but, instead, he repeatedly made misrepresentations to various tribunals in an effort to abuse and browbeat his opponents into complying with his excessive and unnecessary discovery requests.

Mixter, additionally, was abusive towards his colleagues at the Bar. In his own case, Mixter pursued an action for defamation in an effort to harass opposing counsel from previous suits, as well as those who had complained to Bar Counsel about his misbehavior.

Mixter, also, sullied the reputation of the courts, the profession and the legal system with the public as a result of his interactions with third parties. Mixter has conceded that, "There certainly are examples where the person on the receiving end of Respondent's conduct may have felt harassed or even that Respondent was attempting to intimidate him or her." He also, regularly and unscrupulously attempted to obtain medical records irrelevant to the various cases, (as with Ms. Seay's mental health records in *Byrne-Egan*), purely to harass members of the public. Rule 8.4(d) clearly prohibits such behavior. *See id.* at 16, 956 A.2d at 144.

Finally, subsection (a) of Rule 8.4 states that it is professional misconduct to violate the Rules; consequently, a Rule violation is itself sufficient to support a violation of Rule 8.4(a). *Attorney Grievance v. Nelson*, 425 Md. 344, 40 A.3d 1039 (2012). As stated above, Mixter had repeatedly violated a copious number of Rules and had, therefore, violated Rule 8.4(a). In summary, Respondent violated Rules 3.1, 3.2, 3.3(a)(1) and (a)(4), 3.4(a), (c) and (d), 4.1(a)(1), 4.4(a) and 8.4(a), (c) and (d).

## C. Sanction

When determining appropriate sanctions, it is well settled that the purpose of attorney discipline is to protect the public, not punish the attorney. *Attorney Grievance v. Coppola*, 419 Md. 370, 19 A.3d 431 (2011). Attorney discipline is also directed at deterring other lawyers from violating the Maryland Lawyers' Rules of Professional Conduct and to maintain the integrity of the legal profession. *Attorney Grievance v. Zuckerman*, 386 Md. 341, 872 A.2d 693 (2005). We evaluate an attorney grievance matter on its own merits and impose sanctions "that are commensurate with the nature and gravity

115

of the violations and the intent with which they were committed." *Attorney Grievance v. Gore*, 380 Md. 455, 472, 845 A.2d 1204, 1213 (2004). Therefore, we consider the nature of the ethical duties violated in light of any aggravating or mitigating circumstances. *Attorney Grievance v. Sweitzer*, 395 Md. 586, 911 A.2d 440 (2006).

With regard to aggravating factors, we often consult Standard 9.22 of the American Bar Association Standards for Imposing Lawyer Sanctions. *Attorney Grievance v. Hodes*, Misc. Docket AG No. 61, Sept. Term, 2013, slip op. at 66 (Dec. 23, 2014):

> (a) prior disciplinary offenses;
> (b) dishonest or selfish motive;
> (c) a pattern of misconduct;
> (d) multiple offenses;
> (e) bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency;
> (f) submission of false evidence, false statements, or other deceptive practices during the disciplinary process;
> (g) refusal to acknowledge wrongful nature of conduct;
> (h) vulnerability of victim;
> (i) substantial experience in the practice of law;
> (j) indifference to making restitution;
> (k) illegal conduct, including that involving the use of controlled substances.

*Standard 9.22 of the American Bar Association Standards for Imposing Lawyer Sanctions* (1992).

Here, aggravating factors (a), (c), (d), (g) and (i) are present, because Mixter had previously been reprimanded for abusive discovery tactics, some of which have been replicated in this case, which include acts after 2008, when Mixter was previously sanctioned. Mixter has also evidenced a clear pattern of misconduct over twenty-two cases, has refused to acknowledge the wrongful nature of any of his actions and has substantial

116

experience in the law, having represented thousands of clients since being admitted to the Bar of this Court thirty-four years ago.

Factor (a), "prior disciplinary offenses", is present here, because Mixter received a reprimand, by consent, from this Court for Rule 3.2 and 8.4(d) violations in 2008. *Attorney Grievance v. Mixter*, 403 Md. 463, 943 A.2d 615 (2008). Bar Counsel summarized the reprimand as follows, to which Mixter does not except:

> By Order of the Court of Appeals dated March 7, 2008, Respondent received a reprimand for violating Maryland Lawyers' Rules of Professional Conduct, Rule 3.2 and 8.4(d). Specifically, Respondent during the course of representing a defendant in a civil matter, failed to cooperate with counsel for the other parties with respect to scheduling depositions, failed to timely answer requests for his availability for depositions, and scheduled depositions without input. Additionally, Respondent filed motions that, at least in part, caused delay and prevented the expeditious conclusion of discovery.

Factor (c), "pattern of misconduct", is evidenced when an attorney's actions constitute the same course of conduct. *See Attorney Grievance Comm'n v. Kerpelman*, 292 Md. 228, 244, 438 A.2d 501, 509 (1981) ("If we could conclude that this was a pattern of conduct we would not hesitate to disbar."). Mixter's misrepresentations to courts include: falsely asserting in the twenty-four motions listed in Appendix 3 that the oppositions were properly served with subpoenas outside of Maryland; falsely certifying in the fifty-three certifications listed in Appendix 6 that he had engaged in good faith efforts at resolving discovery disputes; willfully omitting material information in connection with the twelve motions listed in Appendix 7; as well as numerous specific cases, including, in the *Davis* litigation, filing a false affidavit in the United States District Court for the District of Maryland in which he asserted that the defendants had been properly served with copies of

117

the complaint; and, in *Mixter,* alleging that Dr. Conte had been properly served with a subpoena for documents when Mixter had filed the motion to compel on the same day he had mailed the subpoena underlying that motion.

Mixter's misrepresentations to witnesses and third parties include: threatening the recipients of the over fifty subpoenas listed in Appendices 3 and 4 that their appearance could be compelled in Maryland, when it could not; informing numerous non-party witnesses, located in Maryland, that they could be compelled to attend a deposition in a county other than that in which they reside, when they could not; and notifying several health care providers that the subjects of the medical records Mixter had requested had not objected to disclosure of the records, when they, in fact, had.

From the copious number of misrepresentations made with respect to the papers listed in each Appendix, as well as the numerous additional misrepresentations found by Judge Doory, it is clear that Mixter engaged in several "pattern[s] of misconduct", to include: misrepresenting proper service to courts; misrepresenting to courts that good faith attempts at resolving discovery disputes had been attempted; misrepresenting the law to third parties regarding compelling discovery; and misrepresenting to health care providers that there had been no objections to the release of certain records.

Factor (d), "multiple offenses", is implicated when an attorney violates multiple disciplinary rules. *See Hodes*, slip. op. at 68, citing *Attorney Grievance v. Bleecker*, 414 Md. 147, 994 A.2d 928 (2010) (aggravating factor (d) is implicated when a lawyer violates multiple disciplinary rules). We have concluded that Mixter violated Rule 3.1, 3.2,

118

3.3(a)(1) and (a)(4), 3.4(a), (c) and (d), 4.1(a)(1), 4.4(a) and 8.4(a), (c) and (d), therefore, aggravating factor (d) is included here.

Factor (g), "refusal to acknowledge wrongful nature of conduct", is also implicated. Mixter has not once acknowledged that he had committed any improper act and, even when he has recognized that "[t]here certainly are examples where the person on the receiving end of Respondent's conduct may have felt harassed", Mixter asserts that those feelings are "subjective" and, seemingly, irrelevant, because, he argues, no one was "intimidated to the point that he or she changed their course of action". Out of Mixter's one-hundred and six pages of exceptions, he only asserts, in one sentence, that he is "sincerely remorseful", without elaboration. Factor (g) is clearly relevant. *See Hodes*, slip. op. at 68 ("[Respondent's] remorselessness further intensifies the nefariousness of his conduct.").

Factor (i), "substantial experience in the practice of law", finally, is applicable. Mixter has been a member of the Maryland Bar for over thirty-four years.

With respect to mitigating factors, we have considered:

> "Absence of a prior disciplinary record; absence of a dishonest or selfish motive; personal or emotional problems; timely good faith efforts to make restitution or to rectify consequences of misconduct; full and free disclosure to disciplinary board or cooperative attitude toward proceedings; inexperience in the practice of law; character or reputation; physical or mental disability or impairment; delay in disciplinary proceedings; interim rehabilitation; imposition of other penalties or sanctions; remorse; and finally, remoteness of prior offenses."

*Attorney Grievance v. O'Leary*, 433 Md. 2, 31, 69 A.3d 1121, 1138 (2013), quoting *Attorney Grievance v. Brown*, 426 Md. 298, 326, 44 A.3d 344, 361 (2012).

Judge Doory determined that Mixter had proven, by a preponderance of the evidence, various mitigating factors, to include: attending to his mother during her fatal bout with cancer from January through July of 2010; caring for his wife in April through June of 2012 during her diagnosis, treatment and convalescence from a brain tumor; dealing with his, now controlled, Atrial Fibrillation[75] in 2008 through 2009; and modifying his office procedure to require additional calls and letters to witnesses to resolve discovery issues, but, as Judge Doory noted, without working with opposing counsel to solve problems.

Judge Doory found that Mixter did not prove, by a preponderance of the evidence, other purported mitigation, to include: consulting with Dr. Carroll, at the behest of trial counsel, to find better ways to deal with what Dr. Carroll described as Mixter's "ultra competitive personality"; that the twenty-two cases here at issue are a mere three percent of Mixter's caseload and, therefore, insignificant; that Mixter had to work within court imposed deadlines which was a source of additional stress; and that Mixter's clients hold him in high regard. Mixter excepts to the failure to find these circumstances as mitigation, as well as to the failure to find that he cooperated with Bar Counsel and that he did not misrepresent any facts to them.

---

[75] "Atrial fibrillation is an irregular and often rapid heart rate that commonly causes poor blood flow to the body." *Atrial fibrillation*, Mayo Clinic, http://www.mayoclinic.org/ diseases-conditions/atrial-fibrillation/basics/definition/con-20027014 (last visited January 29, 2015)

With respect to Mixter's cooperation with Bar Counsel, Judge Doory noted that Mixter provided "extensive records and documents" and did not interfere with Bar Counsel's investigation and, therefore, we consider this as mitigation.

Regarding Mixter's work with Dr. Carroll, Judge Doory found that Mixter failed to prove, by a preponderance of the evidence, that he sincerely attempted to change his abusive and misrepresentative practices, because Mixter had met with Dr. Carroll "seven times beginning in late 2012", four years after his reprimand in 2008 and then only at the behest of trial counsel. We agree with Judge Doory that Mixter did not prove sincere attempts to change his practice by a preponderance of the evidence, and we overrule his exception.

Judge Doory made no findings that Mixter recognized the wrongfulness of his actions. Mixter's lack of remorse is an aggravating factor, in light of his grudging one-liner that acknowledged any regret out of over one hundred pages of exceptions. We, accordingly, overrule Mixter's exception that he had proven his remorsefulness by a preponderance of the evidence.

Mixter repeatedly has urged that he was only acting as a zealous advocate for his clients, which Judge Doory should have considered a mitigating factor. We have addressed the role of zealous advocacy in the context of Rules violations in *McClain*, 406 Md. 1, 956 A.2d 135. McClain argued that a sanction less than disbarment was appropriate for actions

violative of Rules 1.1,[76] 3.1, 3.2, 3.3(a), 4.4(a), 8.2(a)[77] and 8.4(c) and (d), "because he was not motivated by personal gain, but rather an overzealous desire to protect his client's interests." *Id.* at 18, 956 A.2d at 145. We rejected that McClain's intent "to further his client's interests . . . is compelling enough for us to impose less of a sanction than disbarment". *Id.* at 20, 956 A.2d at 146.

In *Attorney Grievance v. Culver*, 381 Md. 241, 282, 849 A.2d 423, 447-48 (2004), we reiterated that zealous advocacy is important to representing a client, but that it neither excuses nor mitigates Rule violations:

> To be sure, "the American lawyer's professional model is that of zeal . . . ." C. Wolfram, *Modern Legal Ethics*, § 10.3.1, Nature of the Principle of Zeal, at 578 (1986). But zeal is not boundless and some limits are acknowledged by all, although the limits are not always clear. *Id.* at 579 . *See Little v. Duncan*, 14 Md.App. 8, 15, 284 A.2d 641, 644 (1971) (stating that "[z]eal in advocacy is commendable, but zeal, even in advocacy, without bounds may be contemptuous and disruptive"); *In re Hockett*, 303 Or. 150, 734 P.2d 877, 884 (1987) (noting that "[z]ealous representation is limited by more than the criminal law"). Judge Arrie Davis, writing for the Court of Special Appeals, commented on the duty of an attorney to exercise zealous advocacy. He noted:
>> "Lest there be any doubt that we favor—indeed believe an adversary system demands no less—zealous advocacy, we reiterate unequivocally that it is an advocate's duty to use legal procedure for the fullest benefit of the client's cause, but it is

---

[76] Rule 1.1 provides:
  A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.

[77] Rule 8.2(a) provides:
  A lawyer shall not make a statement that the lawyer knows to be false or with reckless disregard as to its truth or falsity concerning the qualifications or integrity of a judge, adjudicatory officer or public legal officer, or of a candidate for election or appointment to judicial or legal office.

> also a duty not to abuse legal procedure. *See* Maryland Rules
> of Professional Conduct, Comment to Rule 3.1."

*Reed v. Baltimore Life*, 127 Md.App. 536, 552-53, 733 A.2d 1106, 1114-15 (1999).

Accordingly, we overrule Mixter's exception that his alleged zealous advocacy should be considered a mitigating factor.

Mixter excepts to Judge Doory's failure to find his high volume practice as a mitigating factor, pointing to *Dore*, 433 Md. 685, 73 A.3d 161 and *Attorney Grievance v. Geesing*, 436 Md. 56, 80 A.3d 718 (2013), for support. *Dore* and *Geesing*, in fact, support Judge Doory's finding that Mixter's high volume practice was not a mitigating factor.

In *Dore*, the attorney had "authorized his employees to sign his name on affidavits filed in foreclosure actions" and the employees "notarized the bogus signatures" to expedite Dore's firm in handling as many as 1,200 foreclosure filings per month. 433 Md. at 689, 690, 73 A.3d at 163, 164. Dore urged, for purposes of mitigation, that his behavior should have been considered in light of the high volume of filings his firm was facing. We rejected Dore's argument, noting instead that "[c]ases not limited to a single violation or to one client—even when the attorney's conduct is unintentional—call for a more severe sanction". *Id.* at 723, 73 A.3d at 183.

In *Geesing*, a case in which we applied *Dore*, we suspended an attorney ninety days for "robo-signing" over 2,500 affidavits in foreclosure suits.[78] 436 Md. at 58, 80 A.3d at

---

[78] "Robo-signing", in *Geesing*, referred "to the mass-production of affidavits that the affiant did not sign." *Geesing*, 436 Md. at 58 n.1, 80 A.3d at 719 n.1, citing *Dore*, 433 Md. at 711, 73 A.3d at 176.

123

719. Despite Geesing's assertion that the high volume of his practice was a mitigating factor, we recognized that the high volume was, in fact, an aggravating factor, because Geesing had shown a pattern of misconduct and committed over 2,500 offenses. We also acknowledged that the high volume of filings required more diligence from Geesing, not less. The *Geesing* concurrence, finally, which had urged a lesser sanction, recognized that a significant sanction was still required "given the high volume of these flawed mortgage affidavits". *Geesing*, 436 Md. at 71, 80 A.3d at 727 (Adkins, J., concurring).

Mixter's attempt to find succor, then, in *Dore* and *Geesing* is unavailing, as we have recognized that a large volume practice only increases the need for diligence.[79] We, accordingly, overrule Mixter's exception on the grounds that his high volume practice should be a mitigating factor.

With the aggravating and mitigating factors in mind, we turn to determining the appropriate sanction. Bar Counsel recommends disbarment in the present case, because "Respondent engaged in intentionally dishonest, deceitful and misleading conduct." Mixter suggests that a public reprimand is appropriate, because he had made no misappropriation of funds, and "[a] reprimand will acknowledge [the] serious nature of Respondent's misconduct" as well as "serve as a permanent warning to Respondent Mixter and to other lawyers that misconduct carries serious consequences."

---

[79] During arguments before this Court, Judge Adkins posed the question, directly, whether it would be "good policy for this Court to say that we are going to consider as a mitigating factor the large volume of an attorney's practice", and Mixter's attorney acknowledged that it would not be.

"We long have held that repeated acts of dishonest, fraudulent, or misleading behavior may warrant a sanction of disbarment", even in the absence of misappropriation of client funds. *Steinberg*, 395 Md. at 373, 910 A.2d at 450. When an attorney "engage[s] in intentional dishonest conduct . . . the bar is set especially high, and disbarment will be the appropriate sanction". *Id.* at 375, 910 A.2d at 451. "Candor and truthfulness are two of the most important moral character traits of a lawyer." *Attorney Grievance Comm'n v. Myers*, 333 Md. 440, 449, 635 A.2d 1315, 1319 (1994) (the proper sanction when an attorney "exhibited an absence of [candor and truthfulness] on not one, but two, occasions" was disbarment). "'When a lawyer lies to a tribunal, he or she violates a norm that warrants disbarment.'" *Attorney Grievance v. Buehler*, Misc. Docket AG No. 12, Sept. Term, 2014, slip op. at 10 (Jan. 26, 2014), quoting *Attorney Grievance v. Fader*, 431 Md. 395, 438, 66 A.3d 18, 43 (2013).

Mixter's pattern and practice has been to intentionally and knowingly mislead courts, witnesses and parties, and his interactions have brought disrepute to the legal profession. Mixter has made hundreds of repeated misrepresentations, to include: falsely asserting in the twenty-four motions listed in Appendix 3 that the oppositions were properly served with subpoenas outside of Maryland; falsely certifying in the fifty-three certifications listed in Appendix 6 that he had engaged in good faith efforts at resolving discovery disputes; willfully omitting material information in connection with the twelve motions listed in Appendix 7; in *Alemu*, by omitting from a Motion for Protective Order to preclude the opposition from taking a de bene esse deposition of an expert, return correspondence from opposing counsel indicating that attempts had been made to resolve

125

the dispute; in the *Byrne-Egan* litigation, writing a letter to Judge Motz, in the United States District Court for the District of Maryland, in which he "knowingly and intentionally mischaracterized and misrepresented" the content of the opposition's motion; in the *Byrne-Egan* litigation, also failing to inform the court, in his response to the court's show cause order for contempt, that a motion for a protective order as to the third-party defendant's mental health records was pending when he sought those same records; in the *Davis* litigation, filing a false affidavit in the United States District Court for the District of Maryland in which he asserted that the defendants had been properly served with copies of the complaint; in *Fitzgerald*, by omitting from his Motion to Compel medical records from the United States Department of Health and Human Services letters he had received from the Department notifying him that he was required to first obtain the patient's consent for the release of the documents; in the *Gonzales* litigation, by omitting from his Motion to Compel the production of documents from Mr. Fagan correspondences from Mr. Fagan indicating that he had previously turned the requested documents over to Mixter's opposition; in *Green*, writing letters to the clerk of the court demanding that hearings on at least five motions were required while omitting that the opposition had requested that the motions be ruled on without hearings and that several of the motions were not yet ripe; in the *Johnson* litigation, sending a letter to the clerk of the court "informing the Clerk that his Motion to Compel was unopposed, though he knew that the plaintiff had filed a timely opposition to Respondent's Motion to Compel"; in *Keener*, misrepresenting to the Court of Special Appeals that it was only due to a typographical error that he had falsely framed the procedural history of the suit; in *Mixter*, asserting that a witness's discovery responses

were overdue when, in fact, the witness had been served only three days prior to the date the motion was filed; in *Mixter*, also alleging that Dr. Conte had been properly served with a subpoena for documents when Mixter had, in fact, filed the motion to compel on the same day he had mailed the subpoena underlying the motion to compel the production of documents from Dr. Conte; stating to witnesses that they could be held in contempt of court for failing to appear at depositions even though they had not been properly served with enforceable subpoenas; stating to non-party, out-of-state witnesses, that they were required to comply with a Maryland subpoena; stating to parties or witnesses that they could be compelled to appear for depositions at a location in violation of Rule 2-413; and informing health care providers that no objection had been made to the disclosure of medical information when, in fact, such objections had been made.

Contrary to Mixter's assertion, a finding of misappropriation of client funds is not a prerequisite to disbarment. In *Steinberg*, 395 Md. 337, 910 A.2d 429, the attorney violated Rules 3.3, 4.1 and 8.4(c) by making several false statements of material fact, to include: misrepresenting in a Motion to Reconsider an order granting a trustees' sale that his client had not been notified of the sale when, in fact, the client had been duly notified; misrepresenting to opposing counsel that his client refused to be deposed when the client made no such objection; and informing opposing counsel and his client, following Steinberg's discharge, that he had filed a motion to withdraw, which he had not done until months later. We disbarred Steinberg in light of his numerous misrepresentations.

Underlying *Myers*, 333 Md. 440, 635 A.2d 1315, where we also disbarred an attorney without a finding of misappropriation, were the attorney's repeated acts of

127

misrepresentation. Myers had previously been suspended from the practice of law for lying to Bar Counsel during an investigation. After his reinstatement, Myers falsely testified before a district court judge regarding his driving history. We opined that, what set Myers apart from those instances where an attorney had committed a single isolated misrepresentation and not been disbarred, was that both instances of Myers's misconduct involved misrepresentation, in violation of Rules 3.3(a)(1) and 8.4(c).

Most recently, in *Buehler*, a reciprocal discipline case, we noted that "Buehler's gravest transgressions are his repeated misrepresentations." *Buehler*, slip op. at 10. We disbarred Buehler in light of his repeated misrepresentations to the court as well has his failure to appear at scheduled hearings, his pursuit of meritless proceedings and his failure to notify Bar Counsel of disciplinary proceedings against him in another jurisdiction; there was no finding of misappropriation.

Although Mixter urges as discipline a second reprimand, in cases of dishonesty we have imposed significant "time out" from the practice of law, as acknowledged in *Dore* and *Geesing*, cases suggested by Mixter, in which significant mitigation was present. In *Dore*, we suspended the attorney for ninety days, rather than imposing a greater sanction, "because of the many mitigating circumstances", to include: Dore had "never been disciplined nor ha[d] he ever been a respondent in a case filed in the Court of Appeals by the Attorney Grievance Commission"; Dore had "decided to have his name listed in the signature block of documents filed in foreclosure cases to protect his employees from harassment . . . and threats of violence by borrowers whose homes were in foreclosure"; Dore had "immediately stopped the offending practice" upon receipt of a private

128

admonition regarding his practice from a circuit court judge; "no one ha[d] cited any inaccuracies in the[] Affidavits", demonstrating that the firm's "review of the files prior to signing them was thorough"; Dore had self-reported his misconduct to Bar Counsel; Dore had a good character and reputation in the community; and, according to the hearing judge, Dore "recognize[d] his errors and [was] truly remorseful for this conduct." *Dore*, 43 Md. at 699-702, 727, 73 A.3d at 169-71, 186.

In *Geesing*, we also recognized the existence of a number of significant mitigating factors. Once Geesing became aware that it was improper to authorize staff members to sign documents in his name in foreclosure filings, he took immediate remedial action, to include: e-mailing his entire firm to inform them he would no longer "robo-sign"; recommending that his firm, at its own expense, dismiss the foreclosure actions and re-file them with appropriate documents (at a cost of over $12,000); identifying about 2,500 actions in which he recommended that he be allowed to file a "corrective affidavit" at a cost of about $140,000; and reporting himself to the Attorney Grievance Commission. *Geesing*, 436 Md. at 60-62, 80 A.3d at 720-22. Geesing, finally, "showed remorse for his misconduct, not merely because of the attorney disciplinary proceeding, but mainly because he dishonored his profession and disappointed his partners and his family, and because others may view the judicial process negatively as a result of his misconduct." *Id.* at 62, 80 A.3d at 722.

In this case, in which Mixter has made hundreds of misrepresentations without remorse or attempt to rectify his transgressions, and has, instead, attempted to excuse his abusive discovery practices, disbarment is the appropriate sanction.

Respondent Mark T. Mixter is hereby disbarred from the practice of law in the State of Maryland.

**IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 16-761, FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST MARK T. MIXTER.**

Judge Harrell joins the judgment only.

# V. Appendices

## Appendix 1

**Findings of Fact**
**Appendix 1: Case List**

| Case | Description of Case | Respondent's Role | Record citations |
|---|---|---|---|
| *Alemu v. Lawrence Street Industry, LLC* Circuit Court for Montgomery County Case No. 307861V (Filed January 26, 2009) | Personal injury | Attorney for Defendant | Volumes 1 & 2 |
| *Byrne-Egan et al. v. Empire Express, Inc. et al.* Circuit Court for Prince George's County Case No. CAL10-37942 (Filed December 1, 2010) | Personal injury/motor tort | Attorney for Defendant Empire Express | Volumes 3 & 4 |
| *Canby et al. v. Yu et al.* Circuit Court for Anne Arundel County Case No. 02-C-10154270 (Filed July 19, 2010) | Dental Malpractice | Attorney for Plaintiff | Volumes 5 & 6 |
| *Davis v. Babcock & Brown, LP et al.* U.S. District Court, District of Maryland Case No. 8:2010cv00552 (Filed March 5, 2010) | Title VII/Discrimination | Attorney for Plaintiff | Volume 7 |
| *Denine Dunston v. Coldspring Associates, LLP et al.* Circuit Court for Baltimore City Case No. 24-C-11-006099 (Filed September 22, 2011) | Personal Injury | Attorney for Defendant | Volume 8 |
| *Fitzgerald v. MCT Charter Tours* Circuit Court for Prince George's County Case No. CAL07-14871 (Filed June 8, 2007) | Personal Injury | Attorney for Defendant | Volumes 9 & 10 |
| *Fuselier v. Cary et al.* U.S. District Court, District of Maryland Case No. 1:2006cv3327 (Filed December 12, 2006) | Personal Injury/Motor Tort | Attorney for Defendant Superior Service Transportation of Wisconsin, Inc. | Volume 7 |
| *Garnett v. Elkton Manor Corp, et al* Circuit Court for Baltimore | Mold case | Attorney for Defendant | Volume 32 |

1

131

| County Case No. 03-C-06-002669 (Filed March 10, 2006) | | | |
|---|---|---|---|
| Gnip, et alv. Annapolis Roads Apartments Co., et al Circuit Court for Baltimore County Case No. 03-C-08-000913 (Filed January 23, 2008) | Personal Injury | Attorney for Defendant | Volume 11 |
| Gonzales v. Rubio Restaurant Management Corp. Circuit Court for Montgomery Case No. 309183V (Filed February 19, 2009) | Personal Injury | Attorney for Defendant | Volume 12 |
| Green v. Council of Unit Owners of Rockland Condominium Inc., et al Circuit Court for Baltimore County Case No. 03-07-006763 (Filed June 19, 2007) | Personal Injury | Attorney for Defendant | Volume 13 |
| Greenstein, et al v. Council of Unit Owners of Avalon Court Six Condominium Inc. Circuit Court for Baltimore County Case No. 03-08-000796 (Filed January 23, 2008) | Real Estate/Builder Negligence | Attorney for Defendant | Volume 14 |
| Johnson v. Central Transport Inc. Circuit Court for Prince George's County Case No. CAL10-32493 (Filed October 5, 2010) | Personal Injury/Motor Tort | Attorney for Defendant | Volume 15 |
| King v. Abbott Enterprises Inc. Circuit Court for Prince George's County Case No. CAL11-14414 (Filed June 13, 2011) | Personal Injury/Motor Tort | Attorney for Defendants | Volume 16 |
| Thomas M. Koonz et al. v. New Summer Place North Village Condominium et al. Circuit Court for Anne | Personal Injury | Attorney for Defendant | Volume 17 |

2

| | | | |
|---|---|---|---|
| Arundel County<br>Case No. 02-C-09-139980<br>(Filed April 3, 2009) | | | |
| *Mark T. Mixter v. James Farmer, et al*<br>Circuit Court for Baltimore City<br>Case No. 24-C-11-005133<br>(Filed August 5, 2011) | Defamation | Plaintiff | Volumes 18 & 19 |
| *Pearson v. Lyles*<br>Circuit Court for Prince George's County<br>Case No. CAL11-23698<br>(Filed September 16, 2011) | Medical malpractice | Attorney for Plaintiffs | Volumes 20 & 21 |
| *Vivian Presbury v. Forest Hill Health and Rehabilitation Center, Inc.*<br>Circuit Court for Baltimore City<br>Case No. 24-C-11-008347<br>(Filed December 6, 2011) | Personal Injury/Negligence | Attorney for Plaintiff | Volumes 22 & 23 |
| *Nancy Railey, et al v. M E Burton et al.* Circuit Court for Washington County<br>Case No. 21-C-10-038512<br>(Filed July 22, 2010) | Tort action arising from the sale of nursery stock at auction | Attorney for Plaintiffs | Volumes 24 & 25 |
| *ShaneiseSmith v. Kingsley Chimeme, et al*<br>Circuit Court for Baltimore City<br>Case No. 24-C-07-004124<br>(Filed June 12, 2007) | Mold case | Attorney for Defendant | Volume 31 |
| *Kenneth Lee Smith v. James David Keener, et al.*<br>Circuit Court for Charles County<br>Case No. 08-C-09-000896<br>(Filed March 31, 2009) | Automobile accident | Attorney for Defendant | Volumes 26 & 27 |
| *Translucent Communications v. APC Wireless, et al.*<br>U.S. District Court of Maryland<br>Case No. 8:2008cv03235<br>(Filed December 2, 2008) | Trademark Infringement | Attorney for Defendant | Volumes 28 & 29 |

3

# Appendix 2

## Findings of Fact
### Appendix 2: Frivolous Motions Directed at Non-Party Witnesses

|  | Title | Case | Record Citation |
|---|---|---|---|
| 1 | Motion to Compel Custodian of Records Holy Cross Hospital | Alemu | Vol. 1, tab 2 |
| 2 | Motion to Compel Custodian of Records for Dr. Kevin Lurie | Alemu | Vol. 1, tab 5 |
| 3 | Motion to Compel Custodian of Records of Maharishi University located in Fairfield, Iowa. | Alemu | Vol. 1, tab 17 |
| 4 | Motion to Compel Custodian of Employment records of 7-11, MetroOne Loss Prevention and Rodman's Discount Drug Store | Alemu | Vol. 1, tab 18 |
| 5 | Motion to Compel Custodian of Medical Records of United Healthcare Insurance[1] | Alemu | Vol. 1, tab 27 |
| 6 | Motion to Compel Custodian of Records of Whole Foods Market to produce surveillance video.[2] | Alemu | Vol. 1, tab 29 |
| 7 | Motion to Hold in Contempt Various Custodians of Records[3] | Alemu | Vol. 1, tab 41 |
| 8 | Motion to Hold in Contempt Various Custodians of Records[4] | Alemu | Vol. 1, tab 44 |
| 9 | Motion to Compel Custodian of Records of Stephen Rosenbaum, M.D. | Byrne-Egan | Vol. 3, tab 30 |
| 10 | Motion to Exclude Dr. Rosenbaum as an Expert and Motion in Limine to Preclude him from Testifying at Trial | Byrne-Egan | Vol. 3, tab 33 |
| 11 | Reply to Answer to Motion to Exclude | Byrne-Egan | Vol. 3, tab 35 |
| 12 | Reply to Answer to Motion to Exclude | Byrne-Egan | Vol. 3, tab 36 |
| 13 | Motion to Compel Custodian of Medical Records of Park Medical Associates, University of Maryland Medical Center and Maryland General Hospital | Byrne-Egan | Vol. 4, tab 43 |
| 14 | Motion to Compel Custodian of Medical Records of Julianne Bethea, CRNP | Byrne-Egan | Vol. 4, tab 44 |
| 15 | Motion to Compel Custodian of Medical Records of Prince George's Hospital | Byrne-Egan | Vol. 4, tab 45 |

[1] The Respondent did not provide any evidence that United Healthcare was provided with a 30-day assurance letter.

[2] The subpoena issued to Whole Foods was from the Circuit Court for Charles County and included a case caption for an entirely different case. The case was pending in the Circuit Court for Montgomery County.

[3] This Motion is based on the alleged service of trial subpoenas and the non-party witness's failure to appear for trial on June 14, 2010. On May 17, 2010, the Respondent filed a Motion to Continue Trial Date and Modify Scheduling Order. (Vol. 1, tab 1, docket entry #276). Trial was continued to December 6, 2010 and there was no basis in fact or law to file a motion to hold non-party witnesses in contempt of court for failure to appear at a trial that did not take place.

[4] The Motion, as it relates to the Worker's Compensation Commission was heard on September 15, 2010 and denied by the court based on the Respondent's failure to comply with the Health General Article. (Vol. 1, tab 48 at 16-31).

| 16 | Motion to Compel Custodian of Medical Records of Overlea Radiology | Byrne-Egan | Vol. 4, tab 46 |
|----|----|----|----|
| 17 | Motion to Compel Custodian of Medical Records of MedStart Health, Prince George's Hospital Center, Dr. Thomas L. Baumgarder, American Radiology Services and Adolph Family Chiropractic | Byrne-Egan | Vol. 4, tab 47 |
| 18 | Motion to Compel Sixteen (16) Custodians of Medical Records | Byrne-Egan | Vol. 4, tab 48 |
| 19 | Motion to Compel Custodian of Medical Records of Johns Hopkins Greenspring | Byrne-Egan | Vol. 4, tab 49 |
| 20 | Motion to Compel Twelve (12) Custodian of Medical Records | Byrne-Egan | Vol. 4, tab 50 |
| 21 | Motion to Compel Custodian of Medical Records of Brajendra N. Misra, M.S. | Byrne-Egan | Vol. 4, tab 54 |
| 22 | Motion to Compel Custodian of Records of Maryland Dental Board[5] | Canby | Vol. 5, tab 13 |
| 23 | Motion to Compel Custodian of Records of CSC-Layers Incorporating Service Company[6] | Dunston | Vol. 8, tab 17 |
| 24 | Motion to Compel Custodian of Records of GEICO. | Dunston | Vol. 8, tab 18 |
| 25 | Motion to Hold in Contempt Custodian of Records of GEICO[7] | Dunston | Vol. 8, tab 19 |
| 26 | Motion to Compel Custodian of Records of Washington Hospital Center | Fitzgerald | Vol. 10, tab 35 |
| 27 | Motion to Compel Custodian of Records of Robert A. Monteleone, M.D. | Garnett | Vol. 32, tab 16 at 1555 |
| 28 | Motion to Compel Custodian of Records of PetCo | Gnip | Vol. 11, tab 10 |
| 29 | Motion to Compel Custodial of Records of Neal J. Fagan, Esquire | Gonzales | Vol. 12, tab 2 |
| 30 | Motion to Compel directed at the Custodian of Records of his opposing counsel | Green | Vol. 13, tabs 3 and 4 |
| 31 | Motion to Compel Custodian of Records of Ian Mark Weiner, M.D.[8] | Green | Vol. 13, tab 17 |
| 32 | Motion to Compel Custodian of Records of American Radiology and LabCorp[9] | Green | Vol. 13, tab 19 |
| 33 | Motion to Compel Custodian of Records of Mid- | Green | Vol. 13, tab 25 |

[5] The Motion was filed more than two months after discovery and was mailed to opposing counsel at an incorrect address.

[6] On April 3, 2013, the Circuit Court for Baltimore City denied the Respondent's Motion to Compel as untimely "in violation of the discovery deadline defined in the Scheduling Order."

[7] See FN 12____.

[8] The subpoena itself does not tell the witness what it is required to do, i.e. personally appear, produce documents and/or objects only or personally appear and produce documents or objects. Additionally, the Motion, filed on June 17, 2010, was frivolous because the documents subject to the motion had been provided to the Respondent at the doctor's deposition on June 16, 2010.

[9] The subpoenas did not tell the witnesses what it is required to do, i.e. personally appear, produce documents and/or objects only or personally appear and produce documents or objects.

| | | | |
|---|---|---|---|
| | Atlantic Neurosurgical Associates, P.A. | | |
| 34 | Motion to Compel Custodian of Records of Rosenthal &Siekanowicz, M.D. | Johnson | Vol. 15, tab 41 |
| 35 | Motion to Compel Custodian of Records of Clinton Fence Company | King | Vol. 16, tab 25 |
| 36 | Motion to Compel Custodian of Records of Mercy Medical Center[10] | Koontz | Vol. 17, tab 10 |
| 37 | Motion to Compel Custodian of Records of Jeffery Pachecho, M.D. and Allan D. Lieberman, M.D. | Koontz | Vol. 17, tab 11 |
| 38 | Motion to Compel Custodian of Records of James Bradley Haddock, M.D. | Koontz | Vol. 17, tab 12 |
| 39 | Motion to Compel Custodian of Records of the Internal Revenue Service | Koontz | Vol. 17, tab 30 |
| 40 | Motion to Compel Custodian of Records of Dr. Charles Joseph Cattano and Dr. Timothy Scott Eckel | Koontz | Vol. 17, tab 24 |
| 41 | Motion to Compel Custodian of Records of Blake Construction and Cunningham Contracting | Koontz | Vol. 17, tab 27 |
| 42 | Motion to Compel Custodian of Records of American Structural Engineering, Inc. | Koontz | Vol. 17, tab 31 |
| 43 | Motion to Compel Custodian of Records of Steve Shechtel, Esquire | Mixter | Vol. 18, tab 14 |
| 44 | Response to Opposition to Plaintiff's Motion to Compel Custodian of Records of Steve Shechtel, Esquire | Mixter | Vol. 18, tab 14 |
| 45 | Motion to Compel Custodian of Records of Stephen A. Markey, III, Esquire | Mixter | Vol. 18, tab 25 |
| 46 | Motion to Compel Custodian of Records of Michael Conte, M.D. | Mixter | Vol. 18, tab 25 |
| 47 | Motion to Compel Stephen A. Markey, III's Attendance at Deposition | Mixter | Vol. 18, tab 34 |
| 48 | Reply to Stephen A. Markey, III, Esquire's Response to Motion to Compel | Mixter | Vol. 18, tab 35 |
| 49 | Response to Daniel L. Sussman, Esquire's Motion to Quash Subpoena | Mixter | Vol. 18, tab 38 |
| 50 | Motion to Compel Daniel L. Sussman, Esquire's Attendance at Deposition | Mixter | Vol. 19, tab 39 |
| 51 | Response to Opposition to Motion to Compel the Deposition of Daniel L. Sussman. | Mixter | Vol. 19, tab 41 |
| 52 | Motion to Compel Custodian of Records of Michael Conte Ph.D | Mixter | Vol. 19, tab 46 |
| 53 | Response to Maryland Association for Justice's Objection to Subpoena | Mixter | Vol. 19, tab 54 |
| 54 | Motion to Compel Production of Documents from the Maryland Association for Justice | Mixter | Vol. 19, tab 55 |
| 55 | Reply to MAJ's Response in Opposition to Motion to | Mixter | Vol. 19, tab 58 |

[10]The motion was filed prematurely; five days after the 30-day assurance letter was mailed.

| | Compel | | |
|---|---|---|---|
| 56 | Motion for Reconsideration of the Court's June 5, 2012 Order Denying Motion to Compel | Mixter | Vol. 19, tab 60 |
| 57 | Motion to Compel Custodian of Records of CareFirst BlueCross | Keener | Vol. 27, tab 37 |
| 58 | Motion to Compel Custodian of Records of Dr. Ali Bydon[11] | Keener | Vol. 27, tab 39 |
| 59 | Motion to Compel Eight (8) Custodians of Records[12] | Keener | Vol. 27, tab 41 |
| 60 | Motion to Compel Custodian of Records of Georgetown Radiology Group | Keener | Vol. 27, tab 50 |
| 61 | Motion to Compel Custodian of Records of LabCorp of American[13] | Keener | Vol. 27, tab 52 |
| 62 | Motion to Compel Four (4) Custodians of Records[14] | Keener | Vol. 27, tab 55 |

[11] No 30-day assurance letter was sent to the witnesses. See Opposition to Motion filed by Erika A. Short, Esquire on behalf of Johns Hopkins. Vol. 27, tab 40 ("Counsel for the Defendants is more than fully aware of the requirements for obtaining medical records via subpoena. Unfortunately, despite this awareness, his office routinely files unnecessary and patently disingenuous Motions to Compel against healthcare providers in courts across this state, erroneously alleging that they have not complied with a subpoena for medical records and seeking sanctions. In each case, however, it is Defendants' counsel who is solely in error and, just as in the instant matter, the healthcare providers incur unnecessary legal fees in responding to a motion to compel for which Defendants' counsel is fully aware there is no basis.") The Respondent's notation next to the cited language is "You must be kidding."

[12] The Motion, as it relates to Johns Hopkins Bayview is additional frivolous because the requested records had been provided before the Motion was filed. See Opposition filed by Erika A. Short, Esquire requesting sanctions against the Respondent, Vol. 27, tab 42.

[13] The Motion was granted based on the Respondent's misrepresentations and led to the filing of a Motion to Hold LabCorp in Contempt. Vol. 27, tab 54.

[14] The Motion was granted based on the Respondent's misrepresentations. A frivolous Motion to Hold one of the Records Custodians in Contempt was subsequently filed by the Respondent. Vol. 27, tab 57.

**Findings of Fact**
**Appendix 3: Frivolous Motions Directed at Out-of-State Witnesses**

| | Title | Case | Record Citation |
|---|---|---|---|
| 1 | Motion to Compel Custodian of Records of Maharishi University located in Fairfield, Iowa | Alemu | Vol. 1, tab 17 |
| 2 | Motion to Preclude Helen Hoffman, a California resident, from Testifying at Trial[1] | Alemu | Vol. 1, tab 25 |
| 3 | Motion to Hold in Contempt Custodian of Records of Amgolf, located in Fairfax, Virginia | Alemu | Vol. 1, tab 41 |
| 4 | Motion to Hold in Contempt Custodian of Records of Amgolf, located in Fairfax, Virginia | Alemu | Vol. 1, tab 44 |
| 5 | Defendants' Motion to Exclude and/or Motion to Hold in Contempt Mark Danziger M.D., located in the District of Columbia | Alemu | Vol. 2, tab 51 |
| 6 | Defendants' Motion to Compel Custodian of Medical Records of Daniel F. Burian, M.D., located in Houston, Texas[2] | Davis | Vol. 7, *Fuselier* tab 4 |
| 7 | Defendants' Motion to Compel Custodian of Medical Records of Methodist Willowbrook Hospital, located in Houston, Texas[3] | Davis | Vol. 7, *Fuselier* tab 5 |
| 8 | Defendants' Motion to Compel custodian of medical records of Walmart Pharmacy, located in Spring, Texas, and Sharita Warfield, M.D., located in Philadelphia, Pennsylvania[4] | Davis | Vol. 7, *Fuselier*tab 7 |
| 9 | Defendants' Motion to Compel Employment Records of custodian of records of LandstarLigon, Inc., located in Jacksonville, Florida | Davis | Vol. 7, *Fuselier*tab 10 |
| 10 | Motion to Compel Custodian of Records of Washington Hospital Center | Fitzgerald | Vol. 10, tab 35 |
| 11 | Motion to Compel Medical Records from U.S. Department of Health and Human Services | Fitzgerald | Vol. 10, tab 53 |

---

[1] In the Motion, the Respondent acknowledges that Ms. Hoffman was never served with a valid subpoena and proffers that "the defendants have spent considerable time and money attempting to depose Ms. Hoffman. Since she lives in California, a considerable amount of more time and money would be required to properly compel Ms. Hoffman's attendance via a subpoena and it is probable that, even with a properly issued subpoena, Ms. Hoffman would not attend her deposition." Vol. 1, tab 25 at 2. A review of the record shows that rather than seek commissions to take Ms. Hoffman's deposition in accordance with the Rules, the Respondent issued seven (7) Maryland subpoenas to Ms. Hoffman. Vol. 1, tabs 19-26. Any time and money the Respondent spent attempting to depose Ms. Hoffman without success is the Respondent's responsibility. Furthermore, there is nothing in the record that supports the Respondent's bald allegation that Ms. Hoffman would fail to appear for her deposition if served with a properly issued subpoena. The record demonstrates the Respondent's true intent — not to depose Ms. Hoffman, but to have her excluded as a witness at trial.

[2] In addition to being frivolous because the U.S. District Court for the District of Maryland had no jurisdiction over the witness located in Houston, Texas, the motion was frivolous as it sought to compel compliance, not with a subpoena, but rather an authorization.

[3] See FN 2.

[4] See FN 2.

1

| 12 | Motion to Compel Custodian of Records of LabCorp, located in Herndon, Virginia | Green | Vol. 13, tab 19 |
|----|---|---|---|
| 13 | Reply to Plaintiff's Opposition to Motion to Compel Custodian of Records of LabCorp | Green | Vol. 13, tab 21 |
| 14 | Motion to Compel Documents in Possession of Plaintiff's Expert Larry Dinoff, located in Lancaster, Pennsylvania | Green | Vol. 13, tab 51 |
| 15 | Motion to Compel Answers to Questions Posed to Larry Dinoff at his Deposition and to Reconvene Deposition at his Expense | Green | Vol. 13, tab 52 |
| 16 | Reply to Response to Motion to Compel Documents in Possession of Plaintiff's Expert Larry Dinoff, located in Lancaster, Pennsylvania | Green | Vol. 13, tab 55 |
| 17 | Reply to Response to Motion to Compel Answers to Questions Posed to Larry Dinoff at his Deposition and to Reconvene Deposition at his Expense | Green | Vol. 13, tab 54 |
| 18 | Motion to Compel Custodian of Records of Allan D. Lieberman, M.D., located in North Charleston, South Carolina | Koontz | Vol. 17, tab 11 |
| 19 | Motion to Compel the Custodian of Employment of the Internal Revenue Service, located in Washington, D.C. | Koontz | Vol. 17, tab 30 |
| 20 | Motion to Compel Custodian of Records of Michael Conte, M.D., located in Phoenix, Arizona | Mixter | Vol. 18, tab 25 |
| 21 | Motion to Compel Custodian of Records of Georgetown Radiology Group, located in Georgetown, South Carolina | Keener | Vol. 27, tab 50 |
| 22 | Motion to Compel Custodian of Records of LabCorp of American, located in Burlington, North Carolina | Keener | Vol. 27, tab 52 |
| 23 | Motion to Compel Custodian of Records of Select Laboratories, located in Manning, South Carolina | Keener | Vol. 27, tab 55 |
| 24 | Motion to Compel Custodian of Records of Quest Diagnostics, located in Philadelphia, Pennsylvania | Keener | Vol. 27, tab 55 |

2

139

**Findings of Fact**
**Appendix 4: Additional Subpoenas Directed at Out-of-State Witnesses**

| | Title | Case | Record Citation |
|---|---|---|---|
| 1 | Subpoena to Custodian of Records for Joseph Cammarata, Esquire located in Washington, DC | Alemu | Vol. 2, tab 121 |
| 2 | Subpoena to Bartley J. Eckhardt, P.E. for Robson Forensic located in Lancaster, PA | Alemu | Vol. 2, tab 130 |
| 3 | Subpoena to Bartley J. Eckhardt, P.E. for Robson Forensic located in Lancaster, PA | Alemu | Vol. 2, tab 132 |
| 4 | Subpoena to Custodian of Records for Capital Reporting Company located in Washington, DC | Alemu | Vol. 2, tab133 |
| 5 | Subpoena to Brooks Rugemer for Robson Forensic located in Lancaster, PA | Alemu | Vol. 2, tab 137 |
| 6 | Subpoena to Custodian of Employment Records for Amgolf located in Fairfax, VA | Alemu | Vol. 2, tab 138 |
| 7 | Subpoena to Richard J. Lurito, Ph.D. located in McLean, VA | Alemu | Vol. 2, tab139 |
| 8 | Subpoena to Angelina Scott located in Washington, DC | Fitzgerald | Vol. 9, tab 6 |
| 9 | Subpoena to Custodian of Records for Lancaster General Hospital located in Lancaster, PA | Fitzgerald | Vol. 10, tab 46 |
| 10 | Subpoena to Social Security located in Washington, DC | Fitzgerald | Vol. 9, tab 52 |
| 11 | Subpoena to Larry Dinoff, AIA, NCARB for Robson Forensic located in Lancaster, PA | Green | Vol. 13, tab 34 |
| 12 | Subpoena to Larry Dinoff, AIA, NCARB for Robson Forensic located in Lancaster, PA | Green | Vol. 13, tab 47 |
| 13 | Subpoena to Larry Dinoff, AIA, NCARB for Robson Forensic located in Lancaster, PA | Green | Vol. 13, tab 48 |
| 14 | Subpoena to Larry Dinoff, AIA, NCARB for Robson Forensic located in Lancaster, PA | Green | Vol. 13, tab 60 |
| 15 | Subpoena to Howard University located in Washington, DC | Johnson | Vol. 15, tab 3 |
| 16 | Subpoena to Custodian of Medical Records for Hope for Life Wellness Center, Inc. located in Miami, FL | King | Vol. 16, tab 28 |
| 17 | Subpoena to Custodian of Medical Records for Chantilly Chiropractic Center located in Chantilly, VA | King | Vol. 16, tab 29 |
| 18 | Subpoena to Custodian of Records for U.S. Department of Labor located in Washington, DC[1] | Koontz | Vol. 17, tab 15 |
| 19 | Subpoena to Custodian of Records ofTrialSmith, Inc. located in Austin, TX[2] | Mixter | Vol. 19, tab 51 |

---

[1] Despite being told by his staff that a Maryland subpoena would likely not be sufficient to procure documents from the U.S. Department of Labor, the Respondent issued same. See Vol. 17, tab 14.

1

| 20 | Subpoena for Thomas F. Grogan, CFE of Victoria Business Center located in Springfield, PA | Pearson | Vol. 21, tab 48 |
|----|------------------------------------------------------------------------------------------|---------|-----------------|
| 21 | Subpoena for Jean Thomas located in Pawleys Island, SC | Keener | Vol. 27, tab 36 |
| 22 | Subpoena for Custodian of Medical Records for LabCorp of America located in Burlington, NC | Keener | Vol. 27, tab 48 |
| 23 | Subpoena for Custodian of Medical Records for Litholink Corporation located in Chicago, IL | Keener | Vol. 27, tab 48 |
| 24 | Subpoena for Custodian of Medical Records for LowCountry Vision located in Pawleys Island, SC | Keener | Vol. 27, tab 48 |
| 25 | Subpoena for Custodian of Medical Records for Dr. Stephen Silibiger located in Pawleys Island, SC | Keener | Vol. 27, tab 48 |
| 26 | Subpoena for Custodian of Medical Records for Georgetown Radiology Group located in Georgetown, SC | Keener | Vol. 27, tab 48 |
| 27 | Subpoena for Custodian of Medical Records for Select Laboratories located in Manning, SC | Keener | Vol. 27, tab 48 |
| 28 | Subpoena for Custodian of Medical Records for Dr. Martin located in Charlotte, NC | Keener | Vol. 27, tab 48 |
| 29 | Subpoena for Custodian of Medical Records for Christopher Crosby, DPM located in Pawleys Island, SC | Keener | Vol. 27, tab 48 |
| 30 | Subpoena for Custodian of Medical Records for Waccamaw Community Hospital located in Murrells Inlet, SC | Keener | Vol. 27, tab 48 |
| 31 | Subpoena for Custodian of Medical Records for Inlet Cardiopulmonary & Associates located in Pawleys Island, SC | Keener | Vol. 27, tab 48 |
| 32 | Subpoena for Custodian of Medical Records for Georgetown Health located in Georgetown, SC | Keener | Vol. 27, tab 48 |
| 33 | Subpoena for Custodian of Medical Records for Quest Diagnostics located in Philadelphia, PA | Keener | Vol. 27, tab 48 |
| 34 | Subpoena for Custodian of Medical Records for Dr. Edward S. Brumfield located in Pawleys Island, SC | Keener | Vol. 27, tab 49 |
| 35 | Subpoena for Brett Schmulian of Translucent Communications located in Miami, FL | Translucent | Vol. 28, tab 4 |

[2] Accompanying the Maryland subpoena issued to TrialSmith, Inc. located in Austin, Texas, the Respondent provided an unsigned "Commission to Take Foreign Deposition." Vol. 18, tab 51 at 44551. As of April 25, 2012, the docket entries reveal that no request for commission had been made and none granted. The Court finds the Respondent serving an unexecuted Commission to Take Foreign Deposition on an out-of-state witness was knowingly and intentionally deceitful.

2

# Appendix 5

**Findings of Fact**
**Appendix 5: Frivolous Motions Directed at Opposing Party**

|    | Title | Case | Record Citation |
|----|-------|------|-----------------|
| 1 | Motion to Compel supplemental answers to interrogatories | Byrne-Egan | Vol. 3, tab 2 |
| 2 | Motion to Dismiss for Failure to Respond to Discovery Requests | Byrne-Egan | Vol. 3, tab 7 |
| 3 | Motion to Strike Interrogatories and Request for Production of Documents[1] | Byrne-Egan | Vol. 3, tab 9 |
| 4 | Motion to Compel answers to interrogatories and requests for production of documents | Byrne-Egan | Vol. 3, tab 4 |
| 5 | Motion in Limine to Preclude Ms. Emily Seay from Testifying as to her Alleged Emotional Distress Damages[2] | Byrne-Egan | Vol. 3, tab 24 |
| 6 | Motion to Compel | Canby | Vol. 5, tab 2 |
| 7 | Motion to Compel | Canby | Vol. 5, Tabs 2, 4, 8, 15, 18 & Petitioner's Vol. 6, Tab 31 |
| 8 | Motion to Compel | Canby | Vol. 5, tab 4 |
| 9 | Motion to Compel[3] | Dunston | Vol. 8, tab 7 |
| 10 | Motion to Compel Supplemental Discovery[4] | Dunston | Vol. 8, tab 9 |
| 11 | Motion to Compel | Fitzgerald | Vol. 9, tab 2 |
| 12 | Defendant's Motion to Compel Supplemental Discovery, or in the alternative, Motion to Exclude Plaintiff's Named Experts | Fitzgerald | Vol. 10, tab 38 |
| 13 | Defendants' Motion to Compel Payment of Missed IME Fee of Dr. Stoltz | Fitzgerald | Vol. 10, tab 42 |
| 14 | Motion to Compel directed at the custodian of records of his opposing counsel | Green | Vol. 13, tabs 3 and 4 |
| 15 | Motion to Compel Supplemental Discovery. | Green | Vol. 13, tab 24 |
| 16 | Motion to Compel Answers to Interrogatories. | Greenstein | Vol. 14, tab 2 |

---

[1] This Motion was based on the premise, unsupported by any rule or other authority, that the discovery propounded by the defendant/counter-plaintiff should be struck because they were "filed under the wrong case number." The Respondent argues that because the matter had just been remanded back to the Circuit Court for Prince George's County from the U.S. District Court, there was no case number. The Motion was filed on January 17, 2012 (Vol. 3, tab 1 docket entry # 59). The docket entries show that on December 28, 2011 the case was "reopened." The motion was denied. See Vol. 3, tab 19.

[2] This motion followed the court's granting of Ms. Seay's request for a protective order prohibiting the Respondent from obtaining her mental health treatment records. *See* Vol. 3, tabs 26 and 27.

[3] On November 7, 2011, Respondent propounded discovery on the plaintiff. On November 29, 2011, the Respondent requesting discovery, although it was not yet due. On January 6, 2012, Respondent filed the instant motion without making any additional attempts to resolve the "discovery dispute."

[4] On February 14, 2012, the plaintiff provided supplemental discovery that Respondent deemed inadequate. Respondent made no additional efforts to communicate with the plaintiff between receiving the supplemental discovery and filing the instant motion on March 13, 2012.

1

| 17 | Motion to Compel Discovery[5] | Greenstein | Vol. 14, tab 5 |
|----|----|----|----|
| 18 | Motion to Compel Supplemental Discovery[6] | Greenstein | Vol. 14, tabs 13, 17 and 18 |
| 19 | Motion for Sanctions | Johnson | Vol. 15, tab 42 |
| 20 | Defendant's Motion to Compel Supplemental Discovery[7] | King | Vol. 16, tab 23 |
| 21 | Defendant's Motion to Dismiss and/or for Sanctions for Plaintiff's Complete Failure to Provide Discovery[8] | Koontz | Vol. 17, tab 2 |
| 22 | Defendant's Motion for Sanctions | Koontz | Vol. 17, tab 5 |
| 23 | Defendant's Motion for Sanctions and/or Motion to Compel Supplementary Discovery | Koontz | Vol. 17, tab 7 |
| 24 | Motion to Compel Supplemental Discovery | Mixter | Vol. 19, tabs 77, 78 and 79 |
| 25 | Motion to Compel Discovery[9] | Pearson | Vol. 20, tab 2 |

[5] On August 6, 2008, Judge Fader, in the same case, entered and order and specifically instructed the Respondent make multiple attempts to resolve discovery disputes and include the attempts in a Certification of Compliance in Accordance with Rule 2-431, Respondent failed to include a certification in the instant motion.

[6] The Respondent sought the Plaintiffs full tax returns despite having been provided with copies of her W-2s.

[7] This Motion, rather than containing a false certification, contained no certification. By Order dated December 13, 2011 the Motion was denied "for failure to file a certificate describing the good faith attempts made to resolve discovery disputes with opposing counsel, pursuant to Md. Rule 2-431."

[8] The procedural history leading up to the filing of this motion is important. The Respondent propounded discovery on the Plaintiffs, the discovery requested sensitive medical and financial information. The Plaintiffs asked the Respondent to enter into a confidentiality agreement which would not in any way preclude his receipt of discoverable information but rather limit the disclosure or redisclosure of sensitive information. The Respondent refused to enter into a confidentiality agreement and the Plaintiff's filed a Motion for Protective order on August 11, 2009. (Vol. 17, tab 1 at docket entry 54000). On August 25, 2009, the Respondent filed a motion to compel discovery. (*Id.* at 58000). By Order entered September 18, 2009, the court denied the Respondent's motion to compel and ordered that the Plaintiff's "shall provide the requested discovery upon execution of an appropriate protective order to maintain confidentiality of medical and financial records." (*Id.* at 60000). On September 28, 2009, the Respondent filed a motion for reconsideration of the order (*Id.* at 62000). On October 8, 2009, the Respondent forwarded an executed Stipulation regarding confidentiality to the Plaintiffs and demanded that the outstanding discovery be provided "within 5 business days." (Vol 17, tab 2 at 25220). Less than two weeks later, the instant motion was filed. In addition to being filed prematurely, without allowing the Plaintiff time to produce the requested information, the motion was filed without any good faith efforts to resolve the discovery dispute and the relief sought, dismissal and sanctions, is not contemplated under the Maryland Rules. Where there has been a response to discovery, albeit incomplete, the only remedy is a motion for an order compelling discovery. *See* Rule 2-432. In the Motion, the Respondent states that the Plaintiffs "refuse to produce the discovery." (Vol. 17, tab 2 at 3). There is no evidence that, once the confidentiality agreement was signed, the Plaintiffs refused to produce the information and documentation requested. (Vol. 17, tab 3).

[9] The Respondent represented the Plaintiffs in the *Pearson* matter. He initially filed the case in the Circuit Court for Prince George's County without first filing in Health Claims as required by Maryland Code, Courts & Judicial Proceedings § 3-2A-01. The Respondent served discovery along with the

2

| 26 | Motion to Compel Discovery[10] | Pearson | Vol. 20, tab 3 |
|---|---|---|---|
| 27 | Motion to Compel Supplemental Discovery | Pearson | Vol. 20, tab 9 |
| 28 | Motion to Compel Supplemental Discovery from Defendant, Phyllis K. Barson, M.D. | Pearson | Vol. 20, tab 12A |
| 29 | Motion to Strike Defendant Barson's Response to Plaintiffs' Reply to Opposition to Motion to Compel[11] | Pearson | Vol. 20, tab 15 |
| 30 | Plaintiff's Motion to Compel Discovery as to Both Defendants | Pearson | Vol. 20, tab 16 |
| 31 | Response to Opposition to Motion Compel Discovery on Behalf of Defendant Phyllis K. Barson, M.D. | Pearson | Vol. 21, tab 19 |
| 32 | Response to Opposition to Motion Compel Discovery on Behalf of Defendant Phyllis K. Barson, M.D. | Pearson | Vol. 21, tab 20 |
| 33 | Motion to Compel Discovery | Pearson | Vol. 21, tab 22 |
| 34 | Response to Defendant Robert Lyles, Jr., M.D.'s Opposition to Motion to Compel | Pearson | Vol. 21, tab 24 |
| 35 | Motion to Compel[12] | Presbury | Vol. 22, tab 14 |
| | Appellant's Motion for Reconsideration of the Court's October 2, 2012 Order Dismissing the above captioned appeal | Presbury | Vol. 23, tab 33 |
| 36 | Motion to Compel Supplemental Discovery | Railey | Vol. 24, tab 2 at 15, Vol. 25, tab 29 at 3 |

original complaint. The complaint was dismissed without prejudice by the Respondent on September 14, 2011. Once the claim was re-filed in the Circuit Court a new case number was assigned. The instant motions sought to compel responses to discovery propounded in the first lawsuit. The Respondent misrepresented to the Court that discovery had been propounded on August 15, 2011. When the defect was brought to the Respondent's attention by opposing counsel, rather than withdraw his motion and re-issue discovery, he filed a reply in which he again misrepresented to the court that discovery had been served in the instant case. See Vol. 20, tabs 4, 5, 6 and 7. Both of the motions were denied. Vol. 20, tab 8.

[10] *Id.*

[11] The Respondent argues that the Maryland Rules do not permit a response to a reply to an opposition to a motion. Seemingly without a sense of irony, on April 10, 2012, in the very same case, the Respondent files a response to the defendant's reply to plaintiff's opposition to defendants' motion for protective order. (Vol. 21, tab 28).

[12] On December 27, 2011, Respondent propounded interrogatories and a request for production of documents on the defendant, a Delaware corporation. On February 14, 2012, Respondent sent the defendant a letter requesting responses to discovery which were not yet due. On February 16, 2012, opposing counsel informed Respondent that the defendant had 75 days to respond to discovery. (Vol. 22, tab 15 at 45910). Not to be dissuaded by the Rules, on February 21, 2012, Respondent filed the instant motion.

3

144

| 37 | Motion to Compel Supplemental Answers to Interrogatories | Railey | Vol. 24, tab 2 at 16, Vol. 25, tab 29 at 4 |
|----|----|----|----|
| 38 | Motion for Default Judgment and Other Sanctions[13] | Railey | Vol. 24, tab 2 at 20, Vol. 25, tab 29 at 5 |
| 39 | Motion to Compel Supplemental Discovery Concerning Asset Interrogatories | Railey | Vol. 24, tab 2 at 21 |
| 40 | Motion to Compel Supplemental Discovery Concerning Expert Witnesses | Railey | Vol. 24, tab 2 at 22 |
| 41 | Defendant's Supplemental Motion to Compel Resumption of Deposition, Supplemental Answers to Interrogatories[14] | Translucent | Vol. 29, tab 23 |
| 42 | Defendant's Supplemental Motion to Compel Resumption of Deposition, Supplemental Answers to Interrogatories, and Documents from Flash Drive | Translucent | Vol. 29, tab 26 |

---

[13] Defense counsel informed the Respondent that one of the defendant's depositions would need to be rescheduled due to a scheduling conflict. Instead of responding and agreeing to reschedule the deposition, the Respondent filed a motion for default judgment and other sanctions. Defense counsel sent a letter to Respondent confirming that the defendant would be available for deposition on another day. Nevertheless, the Respondent refused to withdraw the motion. It was only after a second letter from defense counsel that the Respondent filed a line withdrawing the frivolous motion.

[14] On June 15, 2009, Respondent (as defense counsel) deposed Brett Schumlian (an officer of Translucent Communications) in *Translucent v. Greene*. Respondent claims that Mr. Schumulian was purposefully evasive during his deposition and therefore, Respondent could not complete the deposition on June 15, 2009. Respondent also alleged that the plaintiffs had refused to supplement responses to his interrogatories. On August 6, 2009, Respondent filed the Supplemental Motion to Resume Deposition, Supplemental Answers to Interrogatories (Vol. 29, Tab 23). Translucent responded in Plaintiff's Memorandum in Opposition to Defendant's Improperly-filed and Time-Barred Motion to Compel Discovery that Respondent ignored the Rules of Procedure by not serving its Motion upon Translucent under Rule 5. Respondent's Motion to Compel was also time-barred because it was not served within thirty (30) days receipt of Translucent's answers. (Vol. 29, Tab 25) On August 6, 2009, Respondent also filed Defendants' Supplemental Motion to Compel Resumption of Deposition, Supplemental Answers to Interrogatories and documents from Flash Drive. Respondent's second Motion to Compel was similar to the first except it deleted the section dedicated to the flash drive. (Vol. 29, Tab 26) On August 10, 2009, the United States District Court for the District of Maryland issued an order ruling on ten (10) discovery motions. (Vol. 29, Tab.27) Each of Respondent's Motions were denied in whole or in part (including the denial of the Motions to Compel at Tabs 23 and 26) and all of Plaintiff's Motions were granted.

4

**Findings of Fact**
**Appendix 6: False Certifications**

| | Title | Case | Record Citation |
|---|---|---|---|
| 1 | Motion to Compel directed at Holy Cross Hospital | Alemu | Vol. 1, tab 2 |
| 2 | Motion to Compel directed at the Custodian of Records for Dr. Kevin Lurie | Alemu | Vol. 1, tab 5 |
| 3 | Motion to Compel Custodian of Records of Maharishi University located in Fairfield, Iowa. | Alemu | Vol. 1, tab 17 |
| 4 | Motion to Compel Custodian of Employment Records of 7-11, MetroOne Loss Prevention and Rodman's Discount Drug Store | Aleum | Vol. 1, tab 18 |
| 5 | Motion to Compel Custodian of Medical Records of United Healthcare Insurance | Alemu | Vol. 1, tab 27 |
| 6 | Motion to Compel Custodian of Records of Whole Foods Market to produce "pay records" and documents related to "training" | Alemu | Vol. 1, tab 30 |
| 7 | Motion to Compel Custodian of Records of Stephen Rosenbaum, M.D. | Bryan-Egan | Vol. 3, tab 30 |
| 8 | Motion to Compel Sixteen (16) Custodians of Medical Records | Bryan-Egan | Vol. 4, tab 48 |
| 9 | Motion to Compel Custodian of Medical Records of Johns Hopkins Greenspring[1] | Bryan-Egan | Vol. 4, tab 49 |
| 10 | Motion to Compel Twelve (12) Custodian of Medical Records | Bryan-Egan | Vol. 4, tab 50 |
| 11 | Motion to Compel Custodian of Medical Records of Brajendra N. Misra, M.S. | Bryan-Egan | Vol. 4, tab 54 |
| 12 | Motion to Compel | Canby | Vol. 5, tab 2 |
| 13 | Motion to Compel | Canby | Vol. 5, tab 4 |
| 14 | Motion to Compel Custodian of Records of Maryland Dental Board[2] | Canby | Vol. 5, tab 13 |
| 15 | Motion to Compel | Canby | Vol. 5, tab 15 |
| 16 | Motion to Compel | Canby | Vol. 5, tab 18 |
| 17 | Motion to Compel | Canby | Vol. 6, tab 31 |
| 18 | Motion to Compel | Dunston | Vol. 8, tab 7 |
| 19 | Motion to Compel Supplemental Discovery | Dunston | Vol. 8, tab 9 |
| 20 | Motion to Compel Custodian of Records of CSC-Layers Incorporating Service Company[3] | Dunston | Vol. 8, tab 17 |

[1] The instant motion was filed on June 20, 2012. The 2-431 certificate include the following: "On June 19, 2012, Karen Turner, paralegal at the Law Office of Mark T. Mixter left a message for Joyce Brown of the medical records department for Bruce Copeland, M.D. and re-requested the records that had been previously subpoenaed. Her telephone call was not returned and the records have not been received." (Vol. 4, tab 49 at 52282). The Motion was filed the following day.

[2] The Motion was filed more than two months after discovery and was mailed to opposing counsel at an incorrect address.

[3] On April 3, 2013, the Circuit Court for Baltimore City denied the Respondent's Motion to Compel as untimely "in violation of the discovery deadline defined in the Scheduling Order."

1

| 21 | Motion to Compel Custodian of Records of GEICO. | Dunston | Vol. 8, tab 19 |
|----|----|----|----|
| 22 | Motion to Hold in Contempt Custodian of Records of GEICO.[4] | Dunston | Vol. 8, tab 19 |
| 23 | Motion to Compel | Fitzgerald | Vol. 9, tab 2 |
| 24 | Motion to Compel Custodian of Records of Washington Hospital Center | Fitzgerald | Vol. 10, tab 35 |
| 25 | Motion to Compel Medical Records from U.S. Department of Health and Human Services | Fitzgerald | Vol. 10, tab 35 |
| 26 | Motion to Compel Supplemental Discovery, or in the alternative, Motion to Exclude Plaintiff's Named Experts | Fitzgerald | Vol. 10, tab 38 |
| 27 | Motion to Compel Plaintiff's Physical Examination | Fitzgerald | Vol. 10, tab 39 |
| 28 | Motion to Compel Custodian of Records of PetCo | Gnip | Vol. 11, tab 10 |
| 29 | Motion to Compel Custodial of Records of Neal J. Fagan, Esquire | Gonzales | Vol. 12, tab 2 |
| 30 | Motion to Compel Custodian of Records of Ian Mark Weiner, M.D. | Green | Vol. 13, tab 17 |
| 31 | Motion to Compel Custodian of Records of American Radiology and LabCorp | Green | Vol. 13, tab 19 |
| 32 | Motion to Compel Custodian of Records of Mid-Atlantic Neurosurgical Associates, P.A. | Green | Vol. 13, tab 25 |
| 33 | Motion to Compel Documents in Possession of Plaintiff's Expert Larry Dinoff, located in Lancaster, Pennsylvania | Green | Vol. 13, tab 51 |
| 34 | Motion to Compel Answers to Interrogatories | Greenstein | Vol. 14, tab 2 |
| 35 | Motion to Compel Custodian of Records of Rosenthal &Siekanowicz, M.D. | Johnson | Vol. 15, tab 41 |
| 36 | Motion for Sanctions | Johnson | Vol. 15, tab 42 |
| 37 | Motion to Compel Custodian of Records of Clinton Fence Company | King | Vol. 16, tab 25 |
| 38 | Motion to Compel Custodian of Records of Mercy Medical Center | Koontz | Vol. 17, tab 10 |
| 39 | Motion to Compel Custodian of Records of Jeffery Pachecho, M.D. and Allan D. Lieberman, M.D. | Koontz | Vol. 17, tab 11 |
| 40 | Motion to Compel Custodian of Records of the Internal Revenue Service | Koontz | Vol. 17, tab 30 |
| 41 | Motion to Compel Custodian of Records of Dr. Charles Joseph Cattano and Dr. Timothy Scott Eckel | Koontz | Vol. 17, tab 24 |
| 42 | Motion to Compel Custodian of Records of Blake Construction and Cunningham Contracting[5] | Koontz | Vol. 17, tab 27 |

---

[4] *Id.*

[5] In addition to including the cover letters to the subpoenas as evidence of good faith efforts to resolve the alleged discovery dispute, the Motion states: "On July 15, 2010, Erin Fourhman, paralegal at the Law Offices of Mark T. Mixter contacted the custodian of records of Blake Construction and re-requested the

2

147

**Findings of Fact**
**Appendix 6: False Certifications**

| | | | |
|---|---|---|---|
| 43 | Motion to Compel Custodian of Records of American Structural Engineering, Inc.[6] | Koontz | Vol. 17, tab 31 |
| 44 | Motion to Compel Custodian of Records of Steve Shechtel, Esquire | Mixter | Vol. 18, tab 14 |
| 45 | Motion to Compel Custodian of Records of Steven A. Markey, III, Esquire and Michael Conte, M.D. | Mixter | Vol. 18, tab 25 |
| 46 | Motion to Compel Custodian of Records of Michael Conte, Ph.D | Mixter | Vol. 19, tab 46 |
| 47 | Motion to Compel | Presbury | Vol. 22, tabs 14 and 15 |
| 48 | Motion to Compel Custodian of Records of CareFirst BlueCross[7] | Keener | Vol. 27, tab 37 |
| 49 | Motion to Compel Custodian of Records of Dr. Ali Bydon[8] | Keener | Vol. 27, tab 39 |
| 50 | Motion to Compel Eight (8) Custodians of Records. | Keener | Vol. 27, tab 41 |
| 51 | Motion to Compel Custodian of Records of Georgetown Radiology Group[9] | Keener | Vol. 27, tab 50 |
| 52 | Motion to Compel Custodian of Records of LabCorp of America | Keener | Vol. 27, tab 52 |
| 53 | Motion to Compel Four (4) Custodians of Records[10] | Keener | Vol. 27, tab 55 |

records that had been previously subpoenaed and the records have not been produced." The Motion was filed the same day as the alleged telephone call.

[6] The phone call was made July 15, 2010, the same day the motion was filed.

[7] No 30-day assurance letter was sent to the witnesses. Based on the Respondent's misrepresentation that the witnesses had been properly served with a valid subpoena, the Motion was granted. See Vol. 27, tab 38.

[8] No 30-day assurance letter was sent to the witnesses.

[9] The Motion was granted based on the Respondent's misrepresentations.

[10] The Motion was granted based on the Respondent's misrepresentations.

3

Petitioner's Proposed Findings of Fact
Appendix 7: Misrepresentations by Omission

|  | Title | Case | Record Citation |
|---|---|---|---|
| 1 | Motion for Contempt and Request for Attorney's Fees and Costs directed at United Healthcare Insurance | Alemu | Vol. 1, tab 27 |
| 2 | Motion to Hold in Contempt Whole Foods Market | Alemu | Vol. 1, tab 36 |
| 3 | Motion to Hold in Contempt Worker's Compensation Commission[1] | Alemu | Vol. 1, tab 41 |
| 4 | Motion for Protective Order to preclude the plaintiff from taking a de beneesse deposition of Dr. Marc Danziger, M.D., his treating physician[2] | Alemu | Vol. 2, tab 75 |
| 5 | Motion to Compel (Medical Records from U.S. Department of Health and Human Services) | Fitzgerald | Vol. 10, tab 53 |
| 6 | Motion to Compel Custodian of Records of Neil J. Fagan, Esquire[3] | Gonzales | Vol. 12, tab 2 |
| 7 | Motion to Compel directed at the custodian of records of his opposing counsel | Green | Vol. 13, tabs 3 and 4 |
| 8 | Motion for Sanctions | Johnson | Vol. 15, tab 42 |
| 9 | Motion for Sanctions and/or Motion to Compel Supplemental Discovery[4] | Koontz | Vol. 17, tab 7 |

[1] The Respondent failed to include the Commission's response to the subpoena which clearly indicated deficiencies with the subpoena. See Vol. 1 tab 42 at 4942. The Commission filed an Opposition to the Motion and the Respondent filed a reply thereto in which he claims that he complied with the legal requirements necessary to enable the Commission to release the requested records "by including Mr. Alemu's attorney's name on the certificates of service in previous notices of depositions" and argued that the records custodian should appear with the requested documents and upon appearance the commission "would have been informed by Mr. Alemu's attorney whether there was an objection to disclosing the medical records." Notably, the response does not claim that a 30-day assurance letter had been sent and no copy of the letter was attached as an exhibit. (Vol. 1, tabs 42 and 43). The Court finds the respondent knowingly and intentionally misrepresented to the court that he had complied with the Health General Article and HIPPA and advanced a frivolous argument that is not supported by any law. Rather than withdrawing the frivolous motion directed at the Commission, the Respondent pressed on and a hearing was held on September 15, 2010. (Vol. 1, tab 48). The Respondent and an attorney for the Commission were present at the hearing. The Court finds the Respondent misrepresented to the court that a 30-day assurance letter had been sent. Id. At 17. The Court finds the Respondent misrepresented to the court that the motion to hold the Commission in contempt for failure to comply with the trial subpoena was withdrawn. Id. at 18-22.

[2] Specifically, the Respondent failed to include the correspondence and communication from opposing counsel found at Vol. 2, tabs 59, 68, 69, 70 and 72 as well as the correspondence from Dr. Danziger which directly refutes statements to the court found at Vol. 2 tabs 56 and 67.

[3] The Respondent failed to include Mr. Fagan's correspondence wherein he stated that the requested documents had been turned over to his former client's attorney. Vol. 12, tab 2

[4] The Motion omits correspondence from opposing counsel regarding the "discovery dispute." See Vol. 17, tab 8 at 30730.

1

| 10 | Motion to Compel Custodian of Records of the Internal Revenue Service[5] | Koontz | Vol. 17, tab 30 |
| 11 | Motion to Compel Custodian of Records of Steven A. Markey, III, Esquire[6] | Mixter | Vol. 18, tab 25 |
| 12 | Motion to Compel[7] | Presbury | Vol. 22, tab 14 |

---

[5] The Respondent omitted from his motion the response he received from the IRS on June 29, 2010. See Vol. 17, tab 17.

[6] The Respondent omitted from his motion Mr. Markey's letter of March 13, 2012, wherein Mr. Markey informs the Respondent that all responsive documents had been provided. See Vol. 17, tab 22.

[7] The Respondent failed to include the letter from opposing counsel informing him that, due to the fact the defendant was an out-of-state corporation, the discovery responses were not yet due. Vol. 22, Tab 15 at 45910